UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

        Debtor-in-Possession.

Case No.:  15-50792

Chapter 11

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND (III) WAIVING THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

TO: The parties-in-interest as specified in Local Rule 9013-3(a)(2).

1.     Diocese of Duluth moves the Court by this Motion for the relief requested below and gives notice of hearing.

2.     The Court will hold a hearing on this Motion at 10:30am on Thursday, December 10, 2015 **in Courtroom 8W, 300 South Fourth Street, Minneapolis, MN 55415.**

3.     Local Rule 9006-l (c) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought, the Debtor does not object to written responses being served and filed immediately prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.   This is a core proceeding. The petition commencing this chapter 11 case was filed on December 7, 2015.   The case is currently pending before this Court.

5.        This Motion arises under 11 U.S.C. §§ 105(a), 365(b), 1107, and 1108. This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 through -3.   Expedited relief is requested pursuant to Bankruptcy Rule 9006(c) and Local Rule 9006-1(d).   Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 2002(a) and Local Rules 9013-3 and 2002-1 (b).   The debtor requests an order granting expedited relief and authorizing maintenance of existing bank accounts and check stock and waiver of section 345(b) requirements.

## **BACKGROUND**

6.        On the Filing Date, the debtor filed a voluntary petition for relief pursuant to chapter 11 the Bankruptcy Code.   The debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.        Further general background information about the debtor and this case and facts related to other first day motions is set forth in the *Affidavit of the Very Reverend Father James B. Bissonette Regarding Structure and Pre-Filing History of Debtor and in Support of Chapter 11 Petition and First Day Pleadings (the "Bissonette Affidavit")..*   The facts set forth below are verified by Franz Hoefferle, as evidenced by the attached verification.

8.        Before the filing date, the debtor maintained four active bank accounts all located at Wells Fargo Bank in Duluth, Minnesota:  1) a general checking account at account number XXXXXXX7569; 2) an account entitled benefits agency account at account number

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE BANKRUPTCY CODE**- 2

XXXXXX7604, which is a segregated account of funds collected to pay accrued pension benefits

to principal financial two times per year; 3) the national collections checking account at

XXXXXX4495, which is a segregated account used collect money that is earmarked and

restricted for various campaigns and programs; and 4) a special account at XXX8486, which is

another segregated account used to hold monies for special programs. The debtor also maintains

two investment accounts at Wells Fargo Bank: Diocese Agency Funds (XXXX4700) and Short

Term Investments (XXXX6319).  A more thorough detail of these accounts, and the sources and

uses of funds within, are set forth in the *Bissonette Affidavit* at subheading F. "Funds of Other

Organizations Held by the Diocese as Agent," and Exhibits A and B to this Motion.  All of these

accounts are held at Wells Fargo Bank, 320 West Superior Street, Duluth, Minnesota 55802.

9.      Counsel for the debtor has been in contact with counsel for Wells Fargo Bank.  It

is understood that the process of Wells Fargo Bank upon obtaining notice of the debtor's filing

would be to freeze all of the debtor's accounts until an order of the Court is received allowing use

of those accounts, subject to the restrictions placed during the course of a chapter 11 bankruptcy.

The debtor believes that interruption by being denied the use of its general and special accounts,

for even a short period of time, would cause irreparable injury.  While the debtor is current on all

pre-petition expenses, day-to-day salaries and expenses must continue to be paid.  , Programs and

employees rely on these accounts for payment..

10.      It is important to note that the debtor has no secured creditors.  There is no "all

assets" security agreement, or any security documents for that matter, which claim any of the

debtor's bank accounts as collateral security.  Accordingly, there are no cash collateral issues

which require permission from a bank or lender for use of funds in the debtor's bank accounts.

However, Wells Fargo Bank requires a comfort order from the Court in order to "unfreeze" the

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF
AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK
STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE
BANKRUPTCY CODE**- 3

accounts.  The debtor believes that the relief requested here is fully warranted under the facts and

circumstances, and should be granted by the Court on an expedited basis.

## RELIEF REQUESTED

11.    The debtor seeks entry of an order  authorizing the maintenance and continued use

of its existing bank accounts, check stock and business forms and waiving certain of the

Operating Guidelines promulgated by the Office of the United States Trustee for Region 12 (the

"UST's Guidelines"),[1] including, but not limited to waiving the necessity of including the debtor-

in-possession designation on its forms and checks and designating its accounts as debtor-in-

possession accounts.  The debtor also seeks a  period of 30 days to convert any investments to

money market funds and/or certificates of deposit.

12.    The cash flow, tracking, and reconciliation practices of the debtor support the

relief requested.  Keeping those practices in place will save the debtor and  the estate the cost, in

time and money, of the operational disruptions that would inevitably accompany the wholesale

closing of the bank accounts and revision of established procedures.  Furthermore, requiring the

debtor to replace its forms and check stock is an unnecessary expense.     The relief requested

herein will therefore help ensure the debtor's smooth transition into chapter 11, avoid possible

disruptions and distractions that could divert the debtor's attention from more pressing matters

during the initial days of the case, and conserve resources, which is particularly important in a

---

[1] The UST's Guidelines require Chapter 11 debtors to, among other things:
Upon the filing of the petition, a debtor  must close existing bank accounts and establish bank accounts that identify
them as a debtor-in-possession for the making of operating disbursements.  Generally, this will require the opening of
one or more new bank accounts.  All accounts must be fully FDIC or FSLIC insured in a depository which agrees to
pledge collateral for any funds on deposit in excess of FDIC or FSLIC coverage.  The checks for each account must
bear the name of the debtor, the designation "Debtor in Possession," the bankruptcy case number, the type of account,
and must be prenumbered.  The debtor must also ensure that the depository changes the account title to reflect the
debtor's name along with the phrase "Debtor in Possession" and that the depository is aware of the collateralization
requirement.  Depositories are to be instructed that the bank account statements are to run for the period beginning on
the first day and ending on the last day of each calendar month.
**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF
AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK
STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE
BANKRUPTCY CODE**- 4

case such as this.

13.     The debtor also seeks a waiver of the requirements of section 345(b) of the Bankruptcy Code on the grounds that the debtor has taken appropriate steps to protect the safety and integrity of its accounts.  All of the debtor's pre-petition bank accounts are at Wells Fargo Bank, an institution on the United States Trustee's approved list.  As for the debtor's investment accounts, the debtor will work with the United States Trustee to make any adjustments necessary to the investments in those accounts.  It is believed that it will take 30 days in which to analyze such accounts and make necessary adjustments as appropriate.  The debtor understands that its request, if granted, will be subject to review by the Court on a motion from the United States Trustee or any other party in interest.

14.     The bank accounts held by debtor include general accounts and three segregated accounts that are comprised of both restricted and unrestricted funds, as well as funds held for others.     The debtor, as custodian, holds certain donor gifts that may only be used for specific identified purposes, as such, those funds are not estate assets.

15.     The bank accounts also include funds held for the payment of payroll, health benefits, pension obligations, and other purposes as are wholly described in the *Bissonette Affidavit*.  The bank at which the pre-petition bank accounts are held is FDIC insured.

16.     The bank accounts and the processes and procedures for tracking the funds in the accounts, and for transferring money in and out, are carefully designed to monitor different categories of funds, including restricted funds and funds held for others.  The debtor's policies and procedures further allow the debtor to coordinate transfers between the accounts and fund the mission of the Diocese of Duluth.

17.     The bank accounts are also familiar to the independent certified accountants who audit the debtor's books and records each year.  Changing over to new accounts would add expense and uncertainty to the efforts of the accountants and the preparation of the auditing financial statements.

18.     The debtor has established detailed procedures for monitoring claims and payments that allow the debtor to separate and demarcate pre-petition and post-petition payments so that each can be treated according to the Bankruptcy Code and this Court's orders.  The debtor will work closely with the bank at which the accounts are maintained to ensure that the bank only honors those payments that the debtor is authorized to make.

19.     It is believed that there will be little to no pre-petition date checks which have not cleared the debtor's bank accounts.  However, the debtor will maintain a clear line of demarcation between pre-petition date and post-petition date obligations without the necessity of closing the bank accounts.  Subject to the prohibition against honoring pre-petition checks without Court authorization, the debtor requests that all of the bank accounts be deemed debtor-in-possession accounts, and that the debtor be authorized to maintain and continue the use of these accounts in the same manner, and with the same account numbers, styles, and forms as those used pre-petition.

20.     If the relief requested herein is granted, and except as disclosed above, the debtor will not pay, and the bank will not be directed to pay, any checks drawn on the pre-petition bank accounts pre-petition, other than those specifically authorized by this Court.

21.     The debtor also holds or manages certain accounts that are used for investment. The investment accounts relating to this Motion are described on Exhibit B.  One of these

accounts hold donor restricted funds which are not estate assets. The debtor has set forth its Statement of Investment Policy in attached Exhibit C. The debtor has initiated discussions with the United States Trustee with respect to these accounts. These discussions are continuing, and the debtor anticipates making certain changes to those accounts promptly following filing, where applicable, to meet the United States Trustee and section 345(b) requirements. The debtor seeks temporary relief with regard to the investment accounts at this time to allow the debtor sufficient time to make those adjustments. It is believed 30 days will be sufficient.

<u>**EXPEDITED RELIEF**</u>

22.    The debtor requests expedited relief in this Motion and requests an expedited hearing. The debtor submits that it has complied with the requirements of Local Rule 9006-1(e) by providing the notice specified below.

23.    Pursuant to Local Rule 9013-2, this Motion is verified and accompanied by a Memorandum of Law, proposed Order, Proof of service, and Affidavit.

24.    Pursuant to Local Rule 9013-2, the debtor gives notice that it may, if necessary, call Franz Hoefferle, Chief Financial Officer of the Diocese of Duluth to testify at the hearing regarding the facts set forth herein. The witness's business address is 2830 East Fourth Street, Duluth, Minnesota 55812.

<u>**SERVICE OF THE MOTION**</u>

25.    Notice of this Motion has been giving to the parties specified on, and in the manner set forth in, the separately filed certificate of service relating to the First Day Motion. This includes the parties specified in Local Rule 9013-3, Wells Fargo Bank, the attorneys

representing the alleged victims of abuse, and all those requesting notice.  In light of the

nature of relief requested, the debtor submits that no further notice is required.

## REQUEST FOR RELIEF

WHEREFORE, the debtor requests entry of an Order as follows:

(a)     Granting expedited relief;

(b)     Authorizing the debtor in the reasonable exercise of its business judgment, to
designate, maintain, and continue to use, with the same account numbers, all of
the active demand deposit and transaction bank accounts in existence on the
petition date;

(c)     Authorizing the debtor, notwithstanding the requirements of 11 U.S.C. § 345(b),
to continue using its bank accounts, including the pre-petition bank accounts;
provided, however, that this modification is subject to review by the Court on a
motion from the United States Trustee or any other party in interest;

(d)     Authorizing the debtor to temporarily maintain its investment accounts and to
enter into a process of withdrawing its current investments in those accounts,
where applicable, and to reinvest the proceeds thereof in an orderly and
expeditious manner into obligations issued by the U.S. Government or fully
guaranteed as to principal and interest by the U.S. Government, within 30 days
of the date of this Order, or as may be specified and approved by the United
States Trustee;

(e)     Authorizing debtor to use, in their present form, checks and other documents
related to the pre-petition bank accounts; provided, however, that the debtor shall
order business forms and related materials as needed in accordance with the
requirements of the Office of the United States Trustee, and authorizing the
debtor to treat the pre-petition bank accounts for all purposes as accounts of the
debtor as "debtor in possession;"

(f)     Authorizing and directing each and every bank at which any pre-petition bank
account is maintained to continue to service and administer such pre-petition
bank account as an account of the debtor as debtor in possession without
interruption and in the usual and ordinary course;

(g)     Authorizing and directing each and every bank at which any pre-petition bank
account is maintained to receive, process, honor and pay any and all checks and
drafts drawn on the pre-petition bank account after the petition date by the
holders or makers thereof; provided, however, that such banks may not honor

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF
AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK
STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE
BANKRUPTCY CODE- 8**

and pay any check drawn or used by the debtor before the pre-petition date for which the Debtor has placed a stop payment in writing;

(h)    Authorizing each and every bank at which any pre-petition bank account is maintained to debit the debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the debtor's accounts which are cashed at the respective banks' counters or exchanged for cashier's checks by the payees thereof prior to the banks' receipt of notice of the filing of the petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the pre-petition bank accounts prior to the filing of the petition which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the debtor was responsible for such items prior to filing of the petition; and (iii) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to such banks as service charges for the maintenance of the pre-petition bank accounts;

(i)    Authorizing each and every bank at which any pre-petition bank account is maintained to rely on the representations of the debtor with respect to whether any check, item, or other payment order drawn or issued by the debtor prior to filing of the petition should be honored pursuant to this or any other order of this Court, and such banks shall not have any liability to any party for relying on such representations by the debtor as provided for herein; and

(j)    Granting such other relief as the Court deems proper.

DATED this 7th day of December, 2015.

/s/ Phillip L. Kunkel
Phillip L. Kunkel (#058981)
1010 West St. Germain, Suite 500
St. Cloud, MN  56301
Tel:(320) 202-5335
Fax:(320) 252-5626
phillip.kunkel@gpmlaw.com
Attorney for Debtor
Diocese of Duluth

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE BANKRUPTCY CODE**- 9

## VERIFICATION

I, Franz Hoefferle, am the CFO of the Debtor.  Based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Motion for Order (I) Granting Expedited Relief and (II) Authorizing the Maintenance of Existing Bank Accounts and (III) Waiving the Requirements of Section 345(b) of the Bankruptcy Code are true and correct, according to the best of my knowledge, information and belief.

Dated:  December **7** , 2015          Signed: _____
                                                Franz Hoefferle

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE BANKRUPTCY CODE- 11**

## EXHIBIT A

### Diocese of Duluth – Pre-Petition Bank Accounts

Bank Wells Fargo 230 W. Superior Street, Duluth, Minnesota  55802

| Account Name | Routing | Account Number |
|---|---|---|
| Diocese of Duluth General Account | XXXXXX019 | XXXXXX7569 |
| Diocese of Duluth Benefits Agency | XXXXXX019 | XXXXXX7604 |
| Diocese of Duluth National Collections | XXXXXX019 | XXXXXX4495 |
| Diocese of Duluth Special Accounts | XXXXXX019 | XXXX8486 |

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING  EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND (III) WAIVING THE REQUIREMENT OF SECTION 345(b) OF THE BANKRUPTCY CODE-** 1

# **EXHIBIT B**

Funds under the supervision of the Diocesan Financial Council:

- XXXX4700 – Diocese Agency Funds – Wells Fargo Bank

- XXXX6319 – Short Term Investment Brokerage – Wells Fargo Bank

EXHIBIT C

# STATEMENT OF INVESTMENT POLICY
# FOR
# DIOCESE OF DULUTH (AND COMBINED AFFILIATES)

April 2015

The following Statement of Investment Policy governs the Diocese of Duluth Investment Portfolio account and includes all funds under the supervision of the Diocesan Finance Council which include:

- 
- 
- 
- 
- XXXX4700 Diocese Agency Funds

Diocesan Pension funds and 403(b) funds are not under the supervision of the Diocesan Finance Council and are excluded from this policy

The purpose of this policy is to provide direction and guidelines to the money manager hired by the Diocese of Duluth.  This policy shall supersede the Statement of Investment Policy dated January 24, 2013.

The Diocesan Finance Council and the Diocesan Corporate Board have appointed a subcommittee, hereafter referred to as the Investment Committee, to act on its behalf in the implementation of this policy.  The Finance Council and the Diocesan Corporate Board have entrusted the Investment Committee with the authority to revise the Asset Allocation Policy subject to the approval of the President of the Diocesan Corporate Board.

I.   INVESTMENT OBJECTIVES AND GUIDELINES
   A.  Long Term Objectives
      i.   The primary objective of this account is long term growth of capital while generating income from dividends and interest.
      ii.  This account desires to maintain a balanced account approach to investments, utilizing fixed income, real assets, complementary assets and equity securities in various types and amounts over time. These investments are to be utilized to reduce portfolio volatility, provide stable cash flow and generate long term growth of capital.

iii.  Because all investments experience a certain amount of short-term fluctuation, investment time frame can have a meaningful impact on the ability to receive desired rates of return.  This account has an investment time frame of 10 to 15 years.

iv.  This account can tolerate negative performance spanning two or three quarters, understanding that this is often the trade-off for the possibility of earning higher returns.  A moderate level of risk is acceptable when it offers the opportunity to earn long term returns that are above those of short term investments such as treasury bills, but lower than returns earned by the stock market in general.  A balanced approach of fixed income and equity securities is appropriate.

v.  The money manager's performance will be compared to a benchmark performance.  Individual manager performance shall approximate 90% of the benchmark index specified below, except in the case of the Fixed Income Portfolio where it is anticipated that 95% of the index is attainable.

vi.  The fixed income investments should not include the use of tax-exempt income.

B.  Asset Allocation Policy

i.  It is the intent of the Investment Committee to monitor performance quarterly and rebalance the portfolio on an as needed basis as set forth below.

| Desc | Min | Target | Max | Benchmarks |
|------|-----|--------|-----|------------|
| Fixed Income (note 1) | 15 | 20 | 25 | Use Barclays Intermed Govt/Corp Bnd Idx, but also show the Barclay Aggregate |
| Real Assets | 0 | 10 | 15 | S&P Goldman SACS Commodity Idx & FTSE NAREIT Idx |
| Complementary Strategy | 0 | 10 | 15 | HFRI Composite Idx |
| Equity -- Domestic | 35 | 40 | 45 | Russell 1000 Idx & Russell Mid Cap Idx & Russell 2000 Idx |
| Equity -- Int'l | 15 | 20 | 25 | MSCI EAFE & MSCI Emerging Mkt Idx |
| Total Equity | 50 | 60 | 70 | None at this level |
| | | | | |
| Grand Total | | 100 | | |

Note 1: no more than 40% of the fixed income component in high yield or emerging market

C. Blended Benchmark Calculation

    i. The calculation for the blended portfolio benchmark shall be calculated according to the weights set forth below.

| Description | Benchmark | % |
|---|---|---|
| Fixed Income | Barclays Intermed Govt/Corp Bnd Idx | 20 |
| Fixed Income | Barclays Aggregate (show only) | |
| Real Assets | S&P Goldman SACS Commodity Idx | 5 |
| Real Assets | FTSE NAREIT Idx | 5 |
| Complementary Strategy | HFRI Composite Idx | 10 |
| Equity Domestic | Russell 1000 | 25 |
| Equity Domestic | Russell Mid Cap Idx | 10 |
| Equity Domestic | Russell 2000 Idx | 5 |
| Equity Int'l | MSCI EAFE | 12 |
| Equity Int'l | MSCI Emerging Mkt Idx | 8 |
| | Total | 100 |

D. Termination

    i. Failure to achieve the investment performance targets may trigger termination of a fund. A fund may also be terminated as a result of any major change in fund investment strategy, exodus of fund investment managers, or at the discretion of the Investment Committee.

E. Discretion

    i. Notwithstanding anything contained in this policy, the Investment Committee reserves the right with respect to monitoring and replacing any investment option at its sole discretion.

F. Responsible Investing

The Diocese of Duluth has the responsibility to exercise faithful, competent and socially responsible stewardship in the management of its financial resources. While a reasonable return on investments is a moral and legal fiduciary responsibility of the Diocese, these responsibilities must be coupled with the deliberate consideration of the social, ethical and moral standards of those companies in which the Diocese invests.

In implementing the investment policy set forth below, the Diocese seeks to provide true moral leadership in using its resources to promote the Church's teachings concerning moral, ethical and social principles. To assist the Diocese in this effort, investment managers will comply with the following guidelines and directives:

    i. Direct investments are to be avoided in companies

        1. Associated with the manufacture or marketing of contraceptives or abortifacients

2. Whose activities include direct participation in or support of abortion
3. Whose policies are found to be discriminatory against people of varied ethnic and racial backgrounds that have been historically disadvantaged
4. Whose policies are found to be discriminatory against women
5. Who derive a significant portion of its revenues from products or services intended exclusively to appeal to the prurient interest in sex or to incite sexual excitement
6. Involved in the manufacture, sale or use of anti-personnel landmines
7. Who engage in scientific research on human fetuses or embryos that
   a. Result in the end of pre-natal human life
   b. Make use of tissue derived from abortions or other life-ending activity
   c. Violates the dignity of a developing person

ii. Investment managers shall monitor the activities identified above to determine whether they are significant to a company's business. Significance may be determined on the basis of percentage of revenue generated by or the size of the operations attributable to such activities. Investment managers may rely upon information provided by advisory firms that provide social research data on U.S corporations.

iii. The securities of companies not in accord with the above guidelines are to be sold from the portfolios as promptly as market conditions permit.

iv. The Diocesan Investment Committee recognizes that these moral principles cannot be applied specifically to mutual funds or certain investment categories such as international equities. 100% of the fixed income assets and all individually held US equity investments will comply with these principles. When mutual funds or commingled funds are selected, the investment manager when and where possible shall endeavor to comply with these moral, ethical, and social principles, always considering the seriousness of these principles to the image of the Diocese.

v. It is the responsibility of the investment manager to comply with these guidelines. The investment manager shall confirm portfolio compliance with these principles to the Diocesan Investment Committee as part of each investment review.

II. RESPONSIBILITIES OF THE MONEY MANAGER

A. The money manager is responsible for communicating with the Diocese and/or Investment Committee regarding all substantive changes pertaining to the

investment strategy, asset mix, portfolio structure and other matters affecting the investment of assets.

B. The money managers will report to the Diocese and/or Investment Committee at least quarterly regarding account performance and values.

III.   RESPONSIBILITIES OF THE CUSTODIAN

A. The custodian will provide investment reporting on all assets to the Diocese as least quarterly. Reporting shall include account balances, sub-account balances, asset allocation summaries, and benchmark comparisons where available.

Approved by: _____   Date: May 6, 2015
             Bishop Paul D. Sirba, President

Approved by: _____   Date: 5/15/15
             David Gunderson, Senior Investment Strategist
             Wells Fargo Bank N.A.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

In re:

Diocese of Duluth,                                    Bankruptcy Case No. 15-50792

          Debtor.                            Chapter 11 Case

_____

**MEMORANDUM IN SUPPORT OF VERIFIED MOTION OF THE DIOCESE OF DULUTH FOR ORDER (I) GRANTING EXPEDITED RELIEF, (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (III) WAIVING THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

_____

## INTRODUCTION

The Diocese of Duluth submits this memorandum of law in support its accompanying verified Motion for the relief set forth herein. Terms defined in the verified Motion shall have the same meaning in this Memorandum.

## FACTS

The facts relevant to this memorandum are set forth in detail in the verified Motion and *Bissonette Affidavit*. As indicated in the verified Motion, the debtor has an immediate need to maintain its prepetition bank accounts and continue to use its prepetition business forms in order to ensure an orderly transition to chapter 11.

## DISCUSSION

**I.     DEBTOR'S REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED**

The debtor's request for expedited relief should be granted. Local Rule 9006-1(b)

provides that "Moving documents shall be filed and served . . . not later than fourteen days before the hearing date." Local Rule 9006-1(e), however, provides that a court may reduce notice where expedited relief is necessary. Cause exists to reduce notice of the hearing on the Motion. The relief sought herein is designed to provide for the debtor's smooth transition to chapter 11 and to minimize disruptions to the debtor's multi-faceted operations. Moreover, if the Court does not grant expedited relief, the debtor will be forced into an untenable situation of not having access to necessary funds to pay day-to-day expenses and fund ongoing employee, and project and program obligations. Given the critical need to continue the operations and ministry of the debtor without greater upheaval, this Court should reduce the notice of hearing on this Motion.

**II.** **THE DIOCESE OF DULUTH SHOULD BE AUTHORIZED TO MAINTAIN ITS EXISTING PREPETITION BANK ACCOUNTS AND BUSINESS FORMS**

    **A.** **The Debtor Should Be Granted Authority To Maintain The Prepetition Bank Accounts**

Bankruptcy courts have the authority to waive the strict enforcement of bank account closing requirements otherwise imposed under the guidelines adopted by the Office of the United States Trustee. Such relief is routinely granted, especially in large Chapter 11 cases. This Court has regularly waived the requirement that a debtor-in-possession close its bank accounts and replaced it with alternative procedures providing the same protections. *See, e.g., In re Antioch Company. LLC. et al.*, Case No. 13-41898, ECF No. 51 (Bankr. D. Minn. April 19, 2013); *In re Duke and King Acquisition Corp.,* Case No. 10-38652, ECF No. 45 (Bankr. D. Minn. Dec. 9, 2010); *In re Intrepid U.S.A., Inc.,* Case No. 04-40416 (Bankr. D. Minn. Mar. 24, 2004). Similar relief has been routinely granted in diocesan bankruptcy cases around the

country.  *See, e.g., In re Archdiocese of Milwaukee,* Case No. 11-20059-svk, ECF No. 27
(Bankr. E.D. Wis. Jan. 7, 2011) (authorizing, but not directing, the debtor to continue use
of bank accounts and business forms).  In general, bankruptcy courts often waive the new
bank account requirements, and permit debtors to maintain their existing bank accounts and
cash management systems, treating such a request as a relatively "simple matter".  *See. e.g.,
In re Baldwin-United Corp.,* 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

As set forth in the Motion and the *Bissonette Affidavit,* continued use of the prepetition
bank accounts and existing business forms is important for the debtor's transition to chapter
11 and the maintenance of relationships with employees, programs for which debtor
holds funds, and various other Non-Debtor Catholic Entities that operate in the region
served by the debtor.  Requiring the debtor to open new bank accounts at this early
juncture would be administratively difficult, expensive, and disruptive to operations.
Consequently, maintaining the prepetition bank accounts is also in the best interests of all
creditors and parties in interest.

If this Motion is granted, the debtor will not pay, and will direct its banks not to pay,
any prepetition checks, except as allowed by order of this Court.

**B.**     **Cause Exists for Waiving the Investment and Deposit Guidelines of
Section 345**

The debtor believes that its use of the prepetition bank accounts substantially
conforms with the approved practices identified in section 345 of the Bankruptcy Code and
that all deposits in the prepetition bank accounts are safe, prudent, and with institutions
approved by the United States Trustee's Office.  Nonetheless, out of an abundance of caution,
to the extent that such deposits do not conform with the approved practices identified in

section 345 of the Bankruptcy Code, the debtor seeks a waiver of such requirements.

Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety.

A court may, however, relieve a debtor-in-possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause." *See, In re Service Merchandise Co. Inc.*, 240 B.R., 894, 896-97 (Bankr. M.D. Tenn. 1999) (finding that cause existed to waive requirements of section 345(b) for large sophisticated debtors that had complex cash management system and internal investment monitoring mechanisms, and that failure to waive such requirements would "needlessly handcuff" the debtor's reorganization efforts). To the extent necessary, the debtor believes that "cause" exists to waive the investment and deposit restrictions under section 345(b) of the Bankruptcy Code. Similar relief has been granted in other diocese bankruptcy cases. *See, In re Catholic Diocese of Wilmington, Inc.,* Case No. 09-13560-CSS, ECF No. 42 (Bankr. D. Del. Oct. 22, 2009) (order granting waiver of deposit guidelines of section 345); *In re Diocese of Davenport*, Case No. 06-02229-lmj 11, ECF No. 22 (Bankr. S.D. Iowa Oct. 16, 2006) (temporarily waiving section 345 requirements).

The prepetition bank accounts and investment accounts are maintained at Wells Fargo Bank.  See Exhibits A and B to the Motion.  The debtor has been informed that each of these institutions is on the approved list kept by the United States Trustee's Office for depository institutions housing debtor-in-possession accounts.  As such, the Diocese of Duluth submits that cause exists to waive the requirements of section 345(b) as to those prepetition bank and investment accounts.

With respect to the investment accounts, the debtor will work with the United States Trustee to make any necessary adjustments to its investment practices and accounts to arrive at a mutually agreeable resolution for where and how to invest the funds in those accounts.  In the case that the debtor may be required to move investments into different approved vehicles, the debtor respectfully requests temporary relief from the section 345(b) requirements to allow sufficient time to make such changes in a prudent manner.  The Diocese of Duluth seeks temporary relief of 30 days following the petition date to make any such required changes.

Notwithstanding the foregoing, the debtor has indicated in its proposed order that its proposed modification of the requirements of section 345 of the Bankruptcy Code are subject to review by the Court on a motion from the United States Trustee or any other party in interest.

**C.**      **The Debtor Should Be Granted Authority To Continue Its Accounting Policies And Practices**

The debtor also seeks authority to continue its accounting policies and practices.  The existing practices and policies allow the debtor to accurately determine the amount and location of all of the funds it holds, and whether those funds are the debtor's or are held in

trust or as agent.   The policies further allow the debtor to coordinate transfers between accounts, fund the mission of the debtor, and account for restricted funds and funds held for others.  The debtor will work closely with the bank at which the prepetition bank accounts are maintained to ensure that the bank honors only those payments that the debtor is authorized to make.

The policies and practices are also familiar to the debtor's employees as well as the public auditors.  Preserving continuity will help in the reorganization process and will avoid distractions and mistakes that could be associated with substantial revision in practices.

### D.   The Debtor Should Be Granted Authority To Use Existing Business Forms

Allowing the debtor to continue to use its business forms (including checks, letterhead, purchase orders, and invoices) will minimize expense to the estate. With regard to correspondence, business forms and similar items, parties doing business with the debtor will likely be aware of its status as debtor-in-possession as a result of the notoriety of this Chapter 11 case, and general press coverage.   The debtor further requests that it be authorized to use its existing stock of checks.  If the "Debtor-in-Possession" designation is not waived, it is requested that debtor be allowed to manually modify its existing checks and forms by stamp or the like.  With respect to checks, replacement of the debtor's check stock could take several weeks.   It is unrealistic to expect that the debtor postpone purchases or defer payments pending the stationer's delivery of check stock. A requirement that the debtor change its checks and business forms would be expensive and burdensome to the estate and disruptive to the reorganization.

Other courts in diocesan bankruptcy cases have permitted continued use of checks and

business forms without the debtor-in-possession designation.. *See, In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560-CSS, ECF No. 42 (Bankr. D. Del. Oct. 22, 2009) (order granting continued use of business forms and checks without alteration and without the designation "Debtor in Possession" imprinted on them); *In re Diocese of Davenport,* Case No. 06-02229-lmj 11, ECF No. 22 (Bankr. S.D. Iowa Oct. 16, 2006) (order granting continued use of business forms); In re Roman Catholic Church of the Diocese of Tucson, Case No. 4:04-bk-0472 1 - BMW, ECF No. 117 (Bankr. D. Ariz. Nov. 5, 2004) (same holding).  This Court has similarly allowed such practices in large Chapter 11 cases in this District. *See, e.g*., *In re The Antioch Company, LLC,* Case No. 13-41898, ECF No. 51 (Bankr. D. M inn. Apr. 19, 2013) (order granting continued use of business forms); *See also, In re Intrepid U.S.A., Inc.,* Case No. 04-40416 (Bankr. D. Minn. Mar. 24, 2004) (order granting continued use of checks and other documents related to Bank Accounts).

## **CONCLUSION**

For the foregoing reasons, the Diocese of Duluth respectfully requests the Court grant the relief requested in the Motion.

Dated:  12/7/15

/s/ Phillip L. Kunkel
Phillip L. Kunkel (#058981)
1010 West St. Germain, Suite 500
St. Cloud, MN  56301
Tel:(320) 202-5335
Fax:(320) 252-5626
phillip.kunkel@gpmlaw.com
Attorney for Debtor
Diocese of Duluth

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

---

In re:

Diocese of Duluth,

        Debtor-in-Possession.

Case No.:  15-50792

Chapter 11

---

### ORDER (I) GRANTING  EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND (III) WAIVING THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

---

This matter came before the undersigned on the above debtor's Motion for an Order (I) Granting Expedited Relief and (II) Authorizing Maintenance of Existing Bank Accounts and Check Stock and (III) Waiving the Requirements of Section 345(b) of the Bankruptcy Code. Appearances are noted on the record.  Based on the arguments of counsel, all of the files, records, and proceedings herein, the Court having been advised in the premises, no objections noted, and the Court's findings of fact and conclusions of law, if any, having been stated orally and recorded in open court following the close of evidence,

**IT IS ORDERED:**

    (a)     The debtor's Motion is granted, including the request for expedited relief;

    (b)     The debtor is authorized in the reasonable exercise of its business judgment, to designate, maintain, and continue to use, with the same account numbers, all of the active demand deposit and transaction bank accounts in existence on the petition date;

    (c)     The debtor is authorized, notwithstanding the requirements of 11 U.S.C. § 345(b), to continue using its bank accounts, including the pre-petition bank

accounts; provided, however, that this modification is subject to review by the Court on a motion from the United States Trustee or any other party in interest;

(d)    The debtor is authorized to temporarily maintain its investment accounts and to enter into a process of withdrawing its current investments in those accounts, where applicable, and to reinvest the proceeds thereof in an orderly and expeditious manner into obligations issued by the U.S. Government or fully guaranteed as to principal and interest by the U.S. Government, within 30 days of the date of this Order, or as may be specified and approved by the United States Trustee;

(e)    The debtor is authorized to use, in their present form, checks and other documents related to the pre-petition bank accounts; provided, however, that the debtor shall order business forms and related materials as needed in accordance with the requirements of the Office of the United States Trustee, and authorizing the debtor to treat the pre-petition bank accounts for all purposes as accounts of the debtor as "debtor in possession;"

(f)    The debtor is authorized and shall direct each and every bank at which any pre-petition bank account is maintained to continue to service and administer such pre-petition bank account as an account of the debtor as debtor in possession without interruption and in the usual and ordinary course;

(g)    The debtor is authorized and shall direct each and every bank at which any pre-petition bank account is maintained to receive, process, honor and pay any and all checks and drafts drawn on the pre-petition bank account after the petition date by the holders or makers thereof; provided, however, that such banks may not honor and pay any check drawn or used by the debtor before the pre-petition date for which the debtor has placed a stop payment in writing;

(h)    Each and every bank at which any pre-petition bank account is maintained is authorized to debit the debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the debtor's accounts which are cashed at the respective banks' counters or exchanged for cashier's checks by the payees thereof prior to the banks' receipt of notice of the filing of the petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the pre-petition bank accounts prior to the filing of the petition which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the debtor was responsible for such items prior to filing of the petition; and (iii) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to such banks as service charges for the maintenance of the pre-petition bank accounts;

(i)    Each and every bank at which any pre-petition bank account is maintained is authorized to rely on the representations of the debtor with respect to whether any check, item, or other payment order drawn or issued by the debtor prior to

filing of the petition should be honored pursuant to this or any other order of this Court, and such banks shall not have any liability to any party for relying on such representations by the debtor as provided for herein.

Dated:                             _____

                                        United States Bankruptcy Judge

3