UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

---

In re:

Diocese of Duluth,

        Debtor-in-Possession.

Case No.: 15-50792

Chapter 11

---

## DECLARATION OF ABIGAIL M. MCGIBBON

---

Abigail M. McGibbon makes the following declaration in support of the Diocese of Duluth's Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 For an Order Approving Settlement Agreement Between the Diocese, The Parishes, Catholic Mutual Relief Society of America and the Official Committee of Unsecured Creditors (the "Motion").

1.      I am an attorney at the law firm of Gray Plant Mooty Mooty & Bennett, P.A., located at 80 South 8th Street, Suite 500, Minneapolis, MN 55402.

2.      On November 8, 2017, the Diocese filed the Motion seeking the Court's approval of the Settlement Agreement, Release and Certificate Buyback (the "Settlement Agreement").

3.      A true and correct copy of the fully executed Settlement Agreement is attached hereto as **Exhibit A.**

4.      I declare under penalty of perjury that the foregoing is true and correct according

to the best of my knowledge, information and belief.

Dated: January 2, 2018

**GRAY PLANT MOOTY MOOTY &
BENNETT**

/s/Abigail M. McGibbon
Abigail M. McGibbon (#0393263)
500 IDS Center
80 South Eighth Street
Minneapolis, MN
Phone: 612.632.6032
abigail.mcgibbon@gpmlaw.com

*Attorney for the Diocese of Duluth*

**<u>Exhibit A</u>**

## SETTLEMENT AGREEMENT, RELEASE, AND CERTIFICATE BUYBACK

This Settlement Agreement, Release, and Certificate Buyback ("Settlement Agreement") is hereby made by, between and among the Diocese Parties (as defined in Section 1.1.10), the Parish Parties (as defined in Section 1.1.19), the Committee (as defined in Section 1.1.7), and the Catholic Mutual Parties (as defined in Section 1.1.4).

## RECITALS

WHEREAS, numerous individuals have asserted certain Tort Claims (as defined in Section 1.1.27) against the Diocese (as defined in Section 1.1.8) and Parishes (as defined in Section 1.1.17);

WHEREAS, the Catholic Mutual Parties or their predecessors issued, allegedly issued or may have issued the Diocese Certificates (as defined in Section 1.1.9) providing certain coverage to the Diocese Parties;

WHEREAS, certain disputes between the Diocese Parties and the Catholic Mutual Parties have arisen and/or may arise in the future concerning Catholic Mutual Parties' position regarding the nature and scope of their responsibilities, if any, to provide coverage to the Diocese Parties under the Diocese Certificates in connection with Tort Claims (the "Coverage Disputes");

WHEREAS, the Diocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (Case No. 15-50792) (the "Reorganization Case") on December 7, 2015  (the "Petition Date");

WHEREAS, the Diocese Parties and the Catholic Mutual Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Disputes and all other disputes between and among them;

WHEREAS, through this Settlement Agreement, the Diocese Parties, Parish Parties and Committee intend to provide the Catholic Mutual Parties with the broadest possible release of all Tort Claims, including all Future Tort Claims, that occurred or may have arisen prior to the effective date of the Plan (as defined in Section 1.1.22);

WHEREAS, through this Settlement Agreement, the Diocese Parties, Parish Parties and the Catholic Mutual Parties also wish to effect a sale of the Parish Certificates (as defined in Section 1.1.18) pursuant to 11 U.S.C. § 363 and to provide the Catholic Mutual Parties with the broadest possible release and buyback with respect to the Parish Certificates, resulting in Catholic Mutual Parties having no obligations now, or in the future, under the Parish Certificates; and

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the United States Bankruptcy Court for the District of Minnesota and any other court in which the Reorganization

Case may be pending or that has jurisdiction over the Reorganization Case (the "<u>Bankruptcy Court</u>"), the Parties hereby agree as follows:

## 1. DEFINITIONS

1.1    As used in this Agreement, the following terms shall have the meanings set forth below. Capitalized terms not defined below or herein shall have the meanings given to them in the Bankruptcy Code.

1.1.1    "<u>Abuse</u>" means (i) any actual or alleged sexual conduct, misconduct, abuse, or molestation, including actual or alleged "sexual abuse" as that phrase is defined in Minnesota Statutes § 541.073(1); (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

1.1.2    "<u>Bankruptcy Orders</u>" means collectively, the FCR Order, the Approval Order and the Plan Confirmation Order.

1.1.3    "<u>Catholic Mutual</u>" means Catholic Mutual Relief Society of America.

1.1.4    "<u>Catholic Mutual Parties</u>" means Catholic Mutual and each of their past, present and future parents, subsidiaries, affiliates, and divisions, each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, and each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

1.1.5    "<u>Channeled Claim</u>" means any Tort Claim against any of the Protected Parties, Catholic Mutual Parties, or any Person covered by any certificate issued by the Catholic Mutual Parties to the extent such Tort Claim arises from the same injury or damages asserted as a Tort Claim against the Protected Parties or Catholic Mutual Parties.  No Claim against a religious order is a channeled claim.

1.1.6    "<u>Claim</u>" means any past, present or future claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, including Tort Claims, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes

2

of action or orders, and any other claim within the definition of "claim" in section 101(5) of the Bankruptcy Code.

1.1.7   "Committee" means the Official Committee of Unsecured Creditors appointed in the Reorganization Case, pursuant to an Order of the Bankruptcy Court entered on December 28, 2015.

1.1.8   "Diocese" means the Diocese of Duluth and its estate (pursuant to section 541 of the Bankruptcy Code).

1.1.9   "Diocese Certificates" mean all known and unknown binders, certificates issued or allegedly issued by the Catholic Mutual Parties to the Diocese Parties.

1.1.10  "Diocese Parties" means collectively the Diocese and: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Diocese; (ii) any and all named covered party, covered party and additional covered party under the Diocese Certificates, including any and all past and present parishes of or in the Diocese (as applicable) and every Protected Person (as defined in the Diocese Certificates); (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iv), in their capacity as such.   Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Diocese or subject to its control.   An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Diocese Party with respect to that Tort Claim.   No religious order is a Diocese Party.

1.1.11  "Effective Date" means the date on which all conditions precedent to this Settlement Agreement are satisfied.

1.1.12  "Extra-Contractual Claim" means any Claim against any of the Catholic Mutual Parties based, in whole or in part, on allegations that any of the Catholic Mutual Parties acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of any of the Catholic Mutual Parties of any type for which the claimant seeks relief other than coverage or benefits under a policy of insurance.   Extra-Contractual Claims include: (i) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Catholic Mutual Parties' handling of any Claim or any request for insurance coverage, including any request for coverage for any Claim, including any Tort Claim; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with the Diocese Certificates and Parish Certificates and any contractual duties arising

therefrom, including any contractual duty to defend the Diocese Parties or Parish Parties against any Tort Claims; and (iii) the conduct of the Parties with respect to the negotiation of this Settlement Agreement.

1.1.13 "FCR" means any Person appointed by the Bankruptcy Court or District Court, as applicable, as the future claims representative.

1.1.14 "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Settlement Agreement.

1.1.15 "Future Tort Claim" means any Tort Claim that is neither filed, nor deemed filed, by the proof of claim bar date in the Diocese's bankruptcy case ("Claim Filing Date") and is held by an individual who (i) was continuously between the Claim Filing Date and the Plan's effective date under a disability recognized by Minn. Stat. § 541.15, subds. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) has a Tort Claim that was barred by the statute of limitations as of the Claim Filing Date but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revises previously time-barred Tort Claims; or (iii) claims he or she was incapable of knowing of the existence of his or her Tort Claim as of the Claim Filing Date for any reason, including alleged memory repression or suppression; or as otherwise defined by subsequent order of the Bankruptcy Court.

1.1.16 "Interests" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

1.1.17 "Parishes" means all parishes listed on Exhibit B.

1.1.18 "Parish Certificates" means any and all known and unknown binders or certificates issued or allegedly issued by the Catholic Mutual Parties to the Parish Parties in existence before the Effective Date of this Settlement Agreement, including any and all alleged certificates, whether in existence or not, for which Catholic Mutual has acknowledged coverage.

1.1.19 "Parish Parties" means the Parishes and (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Parishes; (ii) any and all named covered party, covered party and additional covered party under the Parish Certificates, including every Protected Person (as defined in the Parish Certificates); (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired companies; (iv)

4

each of the foregoing Persons' respective predecessors, successors and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iv), in their capacity as such. Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Parishes or subject to their control.  An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Parish Party with respect to that Tort Claim.

1.1.20  "Parties" means the Diocese Parties, Catholic Mutual Parties, Parish Parties and Creditors' Committee, and "Party" refers to them individually.

1.1.21  "Person" shall have the meaning ascribed in 11 U.S.C. § 101(41) and shall also include the term "Entity" as defined in 11 U.S.C. § 101(15).

1.1.22  "Plan" refers to the Diocese's chapter 11 plan of reorganization and any amendment thereto, as approved and confirmed by a Final Order of the Bankruptcy Court, and that is consistent with the Settlement Agreement, and containing such language and provisions as are acceptable to Catholic Mutual in its sole discretion.

1.1.23  "Protected Parties" means any of the Diocese Parties, the Reorganized Debtor (as shall be defined in the Plan), and the Parish Parties and, in their capacity as such, their respective predecessors and successors, and all of the foregoing Person's, past, present, and future members, shareholders, trustees, officers, directors, officials, employees, agents, representatives, servants, contractors, consultants, volunteers, attorneys, professionals, insiders, subsidiaries, merged or acquired companies or operations, and their successors and assigns; but an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Protected Party with respect to that Tort Claim.  Protected Party also includes the other insured entities, and, in their capacity as such, their respective predecessors and successors, and all of the foregoing Person's, past, present, and future members, shareholders, trustees, officers, directors, officials, employees, agents, representatives, servants, contractors, consultants, volunteers, attorneys, professionals, insiders, subsidiaries, merged or acquired companies or operations, and their successors and assigns. No religious order is a Protected Party.

1.1.24  "Reorganized Debtor" shall have the meaning ascribed in the Plan, but for purposes hereof, shall mean the Diocese after confirmation of the Plan.

1.1.25  "Related Insurance Claim" means (i) any Claim by any Person against any of the Catholic Mutual Parties for defense, indemnity, contribution, subrogation, or similar relief that, directly or indirectly, arises from, relates to, or is in connection with a Tort Claim; and (ii) any Extra Contractual Claim that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Claim that, directly or indirectly, arises out of, relates to or is in connection with any of the Catholic Mutual Parties' handling of any Tort Claim.

5

1.1.26 "<u>Settlement Amount</u>" means the sum of $8,950,000 to be paid to the Diocese for the benefit of Tort Claimants (but excluding Future Tort Claims) by Catholic Mutual after satisfaction of all Conditions Precedent, and pursuant to the confirmed Plan.

1.1.27 "<u>Tort Claim</u>" means any Claim against any of the Protected Parties or Catholic Mutual Parties that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the effective date of the Plan, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; respondeat superior; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, Catholic Mutual Parties or any other Person for whom any of the Protected Parties or Catholic Mutual Parties are allegedly responsible, including any such Claim asserted against any of the Parties in connection with the Diocese's reorganization case. "Tort Claim" includes any Future Tort Claim.

1.1.28 "<u>Tort Claimant</u>" means any Person holding a Tort Claim, including those Tort Claims listed on Schedules 3 and 4 affixed hereto.

## 2. THE REORGANIZATION CASE AND PLAN FOR REORGANIZATION

2.1   Not later than five (5) days after the last Party signs this Settlement Agreement, the Diocese shall file a motion in the Bankruptcy Court (the "<u>Approval Motion</u>") in form and substance acceptable to the Catholic Mutual Parties and the Diocese, approving this Settlement Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement (the "<u>Approval Order</u>").

2.1.1   The Diocese shall provide written notice of the Approval Motion to (i) all Tort Claimants to the extent they are known by the Diocese, (ii) counsel, if any, for the Committee, (iii) the FCR, (iv) all Persons who have filed notices of appearance in the Reorganization Case, and (v) all Persons known to have provided general or professional liability insurance to the Diocese Parties. The Diocese shall serve all claimants identified above at the address shown on their proofs of claim or to their counsel of record or, if no proof of claim was filed, then at the address on the Diocese's schedules. The Diocese shall also serve the attorney for each Tort Claimant. The Diocese shall serve known Tort Claimants even if not scheduled or the subject of a proof of claim, to the extent known to the Diocese. The Diocese shall also serve any and all co-defendants and their

counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-defendant.  The Diocese shall provide notice of the Approval Motion in a form and substance acceptable to Catholic Mutual.

2.2    The Diocese shall file a motion for the appointment of the FCR, which shall be in form and substance acceptable to the Parties (the "FCR Motion").

2.3   If any Person files an objection to the Approval Motion, the Diocese shall file a written response, in a form acceptable to the Catholic Mutual Parties, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order.  The Parties will cooperate with the Diocese, including making all appropriate submissions.

2.4   The Diocese shall file a Plan, including all exhibits, schedules and related documents, which shall be in all respects consistent with this Settlement Agreement and shall not deprive the Catholic Mutual Parties of any right or benefit under this Settlement Agreement or otherwise adversely affect the Interests of the Catholic Mutual Parties under this Settlement Agreement. Notwithstanding any language in any other section of this Settlement Agreement, the Committee reserves all rights to object to any provision of the Plan (including any provision of the Plan required by this Settlement Agreement) unless and until such time as all conditions precedent to this Settlement Agreement have been met, and this Settlement Agreement is fully binding on all the Parties. To avoid doubt, the Committee's reservation of rights under the preceding sentence shall include, but not be limited to, the ability to seek recovery from any other insurers with respect to any claims not satisfied in full by this Settlement Agreement.

2.4.1   The Plan shall include an injunction (the "Channeling Injunction") in substantially the form attached as Schedule 1 to this Settlement Agreement, with only such modifications as are acceptable to the Catholic Mutual Parties, the Diocese, the Parishes and the Committee, pursuant to section 105 of the Bankruptcy Code, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert Claims from taking any action, directly or indirectly for purposes of asserting, enforcing or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to a trust or trusts established pursuant to the Plan ("Trust"), to which all Channeled Claims are channeled as the sole and exclusive source of payment of any such Channeled Claims.

2.4.2   The Plan shall also include an injunction (the "Supplemental Injunction") in substantially the form attached as Schedule 2 to this Settlement Agreement, with only

such modifications as are acceptable to the Catholic Mutual Parties, the Diocese, the Parishes and the Committee, pursuant to sections 105(a) and 363 of the Bankruptcy Code.

2.5     In the Reorganization Case, the Diocese shall seek and obtain entry of an order in form and substance acceptable to the Catholic Mutual Parties that: (i) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (ii) contains the Channeling Injunction; (iii) contains the Supplemental Injunction; (iv) provides that this Settlement Agreement is binding on the Trust, the reorganized Diocese, and any successors of the Trust or reorganized Diocese; and (v) provides all protections to the Catholic Mutual Parties against Tort Claims that are afforded to settling insurers under the Plan (the "Plan Confirmation Order").

2.5.1     The Plan and Plan Confirmation Order must be in all respects consistent with this Settlement Agreement and contain no provisions that diminish or impair the benefit of this Settlement Agreement to Catholic Mutual.

2.5.2     In seeking to obtain the Plan Confirmation Order, the Diocese must: (i) seek a confirmation hearing on an appropriately timely basis; (ii) urge the Bankruptcy Court to overrule any objections and confirm the Plan; and (iii) take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.5.3     The form and manner of notice of the hearing to confirm the Plan and the form and manner of notice of the hearing as to the adequacy of the disclosure statement pertaining thereto are subject to advance approval by the Catholic Mutual Parties, which approval cannot be unreasonably withheld.  The Diocese shall publish notice of the Plan, ballots and disclosure statement relating to the Plan, twice in a national publication and such other publications, to be agreed to by the Parties, and at times and in substance agreed to by the Parties.  Catholic Mutual shall reimburse the Diocese for the publication costs associated with the national publication of the Plan, ballots and disclosure statement relating to the Plan, provided that the Plan is acceptable to Catholic Mutual and the costs were approved of in advance by Catholic Mutual in writing.  The Diocese shall use its best efforts to require, as part of any settlement or resolution with any other settling insurer or other settling party, that such settling insurer or party contributes to the costs associated with the national publication of the Plan, ballots, and disclosure statement relating to the Plan, such that each settling insurer or party, along with Catholic Mutual, share equally in the costs associated with national publication.

8

2.5.4   Prior to entry of the Plan Confirmation Order, the Diocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Tort Claim.  If the Bankruptcy Court lifts the stay as to any Tort Claim prior to the Plan Confirmation Order, the Diocese shall defend itself against that Tort Claim and comply with the terms of the stay relief order.  If the Diocese fails to defend that Tort Claim, then the Catholic Mutual Parties shall have the right, but not the duty, to defend and/or indemnify the Diocese against that Tort Claim and any costs incurred by the Catholic Mutual Parties in defending and/or indemnifying the Diocese shall be deducted from the Settlement Amount.  In such event, the Diocese will cooperate with the Catholic Mutual Parties in the defense and/or indemnification of such Tort Claim.

2.6   The Diocese agrees that the Trust and Plan shall provide that the assets in the Trust shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for any payments ("Conditional Payments") made pursuant to Section 1395y(b)(2)(B) of the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 4.11.1 *et seq.* ("MSPA") applicable to any Tort Claimant who claims he or she is eligible to receive, is receiving, or has received Medicare benefits ("Medicare Beneficiary") and, after satisfaction thereof, to such Medicare Beneficiaries and Tort Claimants.  Except for the payment of the Settlement Amount, the Catholic Mutual Parties shall not be obligated to make any other payments, including any payments to the Trust.

2.7   The Diocese Parties will undertake all reasonable actions and cooperate with the Catholic Mutual Parties in connection with their reinsurers.

2.8    The Parties shall cease all litigation activities against each other in the Coverage Suits; provided, however, that each Party may take whatever steps that, in its sole judgment, are necessary to defend its interests as long as it remains a party in the Coverage Suits.

2.9    The Diocese shall use its reasonable efforts to obtain the dismissal of other Claims, if any, against the Catholic Mutual Parties by any other insurer in the Coverage Suits.

2.10    The Parties covenant not to sue each other until (a) the Bankruptcy Orders become Final Orders, at which time this covenant is superseded by the releases provided in Section 4, or (b) the date on which this Settlement Agreement is terminated.  As of the Effective Date, the Diocese Parties:

2.10.1    will withdraw all outstanding tenders of Claims to the Catholic Mutual Parties for defense and indemnity;

2.10.2    will not tender any Claims to the Catholic Mutual Parties; and

9

2.10.3    will not request the Catholic Mutual Parties to fund any judgments, settlements, or defense costs.

2.11    The Catholic Mutual Parties shall have no obligation to pay, handle, object, or otherwise respond to any Claim, unless this Settlement Agreement is terminated.

## 3.    PAYMENT OF THE SETTLEMENT AMOUNTS AND DISMISSAL OF COVERAGE SUITS

3.1    Conditions Precedent. The Settlement Agreement shall become effective and shall be binding on the Parties and Catholic Mutual will pay the Settlement Amount only after the following conditions have first been satisfied: (a) the appointment of a FCR prior to the entry of an Order approving the disclosure statement relating to the Plan; (b) entry of a Final Order (i) approving the Approval Motion, with the form and content of notice of the motion acceptable to Catholic Mutual; and (ii) approving the form and content of notice of the Plan, ballots and disclosure statement relating to the Plan, including publishing twice in a national publication and such other publications to be determined by the Parties and consistent with the terms of this Settlement Agreement; (c) entry of a Final Order approving the form and content of the Tort Claimants' ballot, each to be satisfactory to Catholic Mutual; (d) entry of a Final Order confirming a Plan agreed to by the Diocese and Committee in accordance with the Settlement Agreement, containing such terms and conditions as are acceptable to Catholic Mutual; (e) execution of the Settlement Agreement by all Parties in form and substance acceptable to the Parties; (f) entry of a Final Order approving of the Channeling Injunction and the Supplemental Injunction in favor of the Catholic Mutual Parties and the Protected Parties in form and substance acceptable to the Parties; and (g) entry of a Final Order approving of the releases in favor of the Catholic Mutual Parties and the Protected Parties, as are acceptable to the Parties.

3.2    In full and final settlement of (i) all responsibilities for any and all Tort Claims that occurred or may have arisen prior to the effective date of the Plan and any and all Future Tort Claims; and (ii) in consideration of the sale of the Parish Certificates free and clear of all Claims and Interests of any Person, Catholic Mutual shall pay the Settlement Amount within ten (10) days after Catholic Mutual receives written notice from the Diocese that the Bankruptcy Orders are Final Orders and directions as to transmission of the payment.

3.3    The Parties agree that the Settlement Amount is the total amount the Catholic Mutual Parties are obligated to pay on account of (i) any and all Tort Claims, including all Future Tort Claims through the effective date of the Plan, that arise under, arising out of, relating to, or in connection with the Diocese Certificates (including Channeled Claims, any reimbursement obligations for Conditional Payments under the MSPA, and any Extra-Contractual Claims); and (ii) any and all Claims and Interests, whether known or unknown, past, present or future, that arise under, arising out of, relating to, or in connection with the Parish Certificates.

3.4    The Parties further agree that (i) under no circumstance will the Catholic Mutual Parties ever be obligated to make any additional payments in excess of the Settlement Amount to or on behalf of anyone in connection with the Parish Certificates or in connection with any

10

Claims, including any Channeled Claims and any Extra Contractual Claims; (ii) under no circumstance will the Catholic Mutual Parties ever be obligated to make any additional payments to or on behalf of the Diocese Parties or any Tort Claimants in connection with any certificates or coverage under any Diocese Certificates issued by the Catholic Mutual Parties, including the Diocese Certificates, with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Tort Claims, including any Channeled Claims and any Extra Contractual Claims; and (iii) all limits of liability of the Diocese Certificates and Parish Certificates, regardless of how these Certificates identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," and aggregate limits, shall be deemed fully and properly exhausted. The Parties further agree that the Settlement Amount is the full purchase price of the Parish Certificates.

3.4.1    The Parties agree and jointly represent that (i) the consideration to be provided by the Catholic Mutual Parties pursuant to this Settlement Agreement (including the Settlement Amount) constitutes fair and reasonable exchanges for the consideration granted to the Catholic Mutual Parties in this Settlement Agreement (including the releases set forth below), and (ii) the consideration to be provided by the Diocese Parties and Parish Parties to the Catholic Mutual Parties pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable exchange for the consideration granted to the Diocese Parties and Parish Parties in this Settlement Agreement (including the Settlement Amount). The Catholic Mutual Parties are not acting as volunteers in paying the Settlement Amount, and the Catholic Mutual Parties' payment of the Settlement Amount reflects potential liabilities and obligations to the Diocese and Parishes of amounts the Catholic Mutual Parties allegedly are obligated to pay on account of any and all Claims.

3.5    Within ten (10) days after the Catholic Mutual Parties pay the Settlement Amount, the Diocese shall sign and file any necessary papers to have dismissed any action pending in connection with the Coverage Disputes, and the Diocese shall file a stipulation, that is signed by all Parties that are parties to the Coverage Dispute action(s), that dismisses with prejudice any and all claims asserted by any of the Parties against any of the other Parties.

## 4.    RELEASES AND SALE FREE AND CLEAR

4.1    <u>Diocese Parties Release of Catholic Mutual Parties</u>.  Upon payment by the Catholic Mutual Parties of the Settlement Amount, the Diocese Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Catholic Mutual Parties and any of their reinsurers or retrocessionaires from any and all past, present, and future Claims that, occurred or may have arisen prior to the effective date of the Plan and that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties, including any Channeled Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties.

11

4.2   <u>Catholic Mutual Release of Diocese Parties</u>.  Upon payment by the Catholic Mutual Parties of the Settlement Amount, the Catholic Mutual Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Diocese Parties from any and all past, present, and future Claims that, occurred or may have arisen prior to the effective date of the Plan that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties, including any Channeled Claims, Extra-Contractual Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties.

4.3   <u>Parish Parties Release of Catholic Mutual Parties</u>.  Upon payment by the Catholic Mutual Parties of the Settlement Amount, the Parish Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Catholic Mutual Parties and any of their reinsurers or retrocessionaires from any and all past, present, and future Claims, including any Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties, including any Channeled Claims, Extra-Contractual Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case.  This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties.

4.4   <u>Catholic Mutual Release of Parish Parties</u>.  Upon payment by the Catholic Mutual Parties of the Settlement Amount, the Catholic Mutual Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Parish Parties from any and all past, present, and future Claims, including any Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties, including any Channeled Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties.

4.5   Unless otherwise provided in the Plan, the releases contained in this Section shall be pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978), and all Tort Claimants reserve their rights against religious orders and any Persons not covered under the Diocese Certificates and Parish Certificates, who will remain severally liable on any Claims.

4.6   From and after the first day on which the Bankruptcy Orders are Final Orders, the Diocese Parties shall not assert against the Catholic Mutual Parties for any Claim with

respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Future Tort Claim, that occurred or may have arisen prior to the effective date of the Plan (including any Tort Claim that arises under or relates to the Diocese Certificates or any other binder, certificate, or policy of insurance issued by any of the Catholic Mutual Parties, any Channeled Claim, any Extra Contractual Claim, and/or any other matter released pursuant to Section 4).

4.7    From and after the first day on which the Bankruptcy Orders are Final Orders, the Parish Parties shall not assert against the Catholic Mutual Parties for any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Claim, including any Tort Claim, and any other Claim that arises under or relates to the Parish Certificates or any other binder, certificate, or policy of insurance issued by any of the Catholic Mutual Parties, any Channeled Claim, any Extra Contractual Claim, and/or any other matter released pursuant to Section 4.

4.8    As set forth in the Approval Order, upon entry of the Bankruptcy Orders as Final Orders, the Catholic Mutual Parties shall buy back the Parish Certificates free and clear of all Interests of all Persons, including all Interests of the Parish Parties, any other Person claiming coverage by, through, or on behalf of any of the Parish Parties, any other insurer, and any Tort Claimant.  This sale is pursuant to sections 363(b) and 363(f) of the Bankruptcy Code. The Parties acknowledge and agree that (i) the Catholic Mutual Parties are good faith purchasers of the Parish Certificates within the meaning of section 363(m) of the Bankruptcy Code, (ii) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Diocese Certificates and Parish Certificates and constitutes reasonably equivalent value, and (iii) the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws.  As set forth in the Approval Order, upon entry of the Bankruptcy Orders as Final Orders, the Parish Certificates shall be terminated and of no further force and effect.  The Catholic Mutual Parties' payment of the Settlement Amount shall constitute the Catholic Mutual Parties' full and complete performance of any and all obligations under the Parish Certificates, including any performance owed to the Parish Parties, and exhausts all limits of liability of the Parish Certificates.  All Interests the Parish Parties may have had, may presently have, or in the future may have in the Parish Certificates or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties shall be released.  The Parish Parties accept the Settlement Amount in full and complete satisfaction of all the Catholic Mutual Parties' past, present, and future obligations, including any obligations to any of the Parish Parties under the Parish Certificates or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such claims arise from, relate to, or are in connection with the Channeled Claims, the Reorganization Case, or otherwise under the Parish Certificates.

13

4.9   If, contrary to the intent of the Parties, any Claims released pursuant to this Section 4 of the Settlement Agreement, including any past, present or future Claim for insurance coverage under the Diocese Certificates or Parish Certificates or any other Claim by the Diocese Parties against any of the Catholic Mutual Parties, are deemed to survive this Settlement Agreement, even though they are encompassed by the terms of the releases set forth in this Section 4 of this Settlement Agreement, the Parties hereby forever, expressly, and irrevocably waive entitlement to and agree not to assert any and all such Claims.

4.10 All of the releases and other benefits provided in this Settlement Agreement by the Diocese Parties to the Catholic Mutual Parties are at least as favorable as the releases and other benefits that the Diocese has provided to any other one of the Diocese's insurers in the Reorganization Case.  If the Diocese enters into any agreement with any other one of its insurers in the Reorganization Case that provides that insurer with releases or other benefits that are more favorable than those contained in this Settlement Agreement, then this Settlement Agreement shall be deemed to be modified to provide the Catholic Mutual Parties with those more favorable releases and/or benefits.  However, the provision at Section 7.2 that the duty to defend, indemnify and hold harmless the Catholic Mutual Parties not extending to nor including claims that are or may be made against Catholic Mutual by other insurers shall not be modified.  The Diocese Parties shall notify the Catholic Mutual Parties promptly of the existence of such more favorable releases or benefits.

4.11 Neither the releases set forth in this Section 4 nor any other provisions in this Settlement Agreement are intended to apply to or have any effect on the Catholic Mutual Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Diocese Certificates and Parish Certificates or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties.

4.12 This Section 4 is not intended to, and shall not be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement.

## 5.   TERMINATION OF SETTLEMENT AGREEMENT

5.1   In the event i) the Bankruptcy Orders do not become Final Orders of the Bankruptcy Court within one year from the date on which the Settlement Agreement is executed by all the Parties, or ii) a Plan is filed or confirmed that is inconsistent with the terms of the Settlement Agreement or is otherwise unacceptable to Catholic Mutual, or iii) the Reorganization Case is dismissed or converted, then Catholic Mutual may terminate the Settlement Agreement upon fifteen (15) days' notice to the Diocese, immediately following which the Settlement Agreement shall be null and void and of no force or effect.

## 6.   REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1   The Parties separately represent and warrant as follows:

14

6.1.1  To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Settlement Agreement and to perform the obligations contemplated by this Settlement Agreement, subject only to approval of the Bankruptcy Court;

6.1.2  This Settlement Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration.

6.2    The Diocese Parties and Parish Parties represent and warrant that they have not and will not assign any Interests in the Diocese Certificates or Parish Certificates or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties.

6.3    The Diocese Parties represent and warrant that they are the owners of the Diocese Certificates and that no other Person has legal title to the Diocese Certificates.

6.4.   The Parish Parties represent and warrant that they are the owners of the Parish Certificates and that no other person has legal title to the Parish Certificates.

6.5    The Diocese Parties and Parish Parties each represent and warrant that they have not in any way assisted, and shall not in any way assist, any Person in the establishment of any Claim against the Catholic Mutual Parties.

6.6    The person(s) executing this Settlement Agreement on behalf of the parties in Sections 1.1.10(i), (ii), and (iii) and Sections 1.1.19(i), (ii) and (iii) (collectively, the "Other Diocese/Parish Parties") represents and warrants that he/she has received authority from such Other Diocese/Parish Parties, as the case may be, to execute this Settlement Agreement on their behalf and to provide the releases identified in Section 4 above on behalf of such Other Diocese/Parish Parties.  Notwithstanding the foregoing, nothing in the definition of Other Diocese/Parish Parties is intended to suggest or should be construed to mean that any Person included in this definition is owned, directed, supervised or controlled by the Diocese or Parishes.

6.7    The Parties have completed a reasonable search for evidence of any certificates of insurance issued by the Catholic Mutual Parties to the Diocese Parties and Parish Parties that would afford coverage with respect to any Tort Claim.  Other than the alleged polices or certificates and acknowledgments of coverage identified in Exhibits A and B, no such policies or certificates and acknowledgments of coverage have been identified. Notwithstanding the foregoing, nothing in this Settlement Agreement, including the Schedules or Exhibits thereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued and/or affords coverage in connection with the Tort Claims.

## 7.  ACTIONS INVOLVING THIRD PARTIES

7.1    For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Diocese Certificates or Parish Certificates, the Diocese Parties and Parish Parties hereby agree as follows:

15

7.1.1   If any other insurer of the Diocese Parties or Parish Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from any of the Catholic Mutual Parties as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for any of the Catholic Mutual Parties' alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense and/or indemnity obligation of any of the Catholic Mutual Parties for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Diocese Party(ies) or Parish Party(ies), as applicable, shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against the Catholic Mutual Parties. To ensure that such a reduction is accomplished, the Catholic Mutual Parties shall be entitled to assert this Section 7 as a defense to any action against them brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Catholic Mutual Parties from any liability for the judgment or Claim.  Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against any of the Catholic Mutual Parties, such Claim may be asserted as a defense against the Trust (under the Plan contemplated by the Settlement Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of the Catholic Mutual Parties in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or Diocese Parties or Parish Parties) shall be reduced dollar for dollar by the amount so determined.

7.1.2   The Catholic Mutual Parties shall not seek reimbursement for any payments they are obligated to make under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other insurer of the Diocese or Parishes unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from any of the Catholic Mutual Parties. The Diocese and Parishes shall use their respective reasonable best efforts to obtain from all insurers with which it settles agreements similar to those contained in this Section 7.

7.2   The Diocese and Parishes shall defend, indemnify, and hold harmless the Catholic Mutual Parties with respect to any and all released claims pursuant to Section 4 above, including all Tort Claims made by (i) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under its respective Diocese Certificates or Parish Certificates; (ii) any Person who has made, will make, or can make a Tort Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Tort Claim under the Diocese Certificates or Parish Certificates; (iv) provided, however, this indemnification does not extend to nor does it include claims that may be made against Catholic Mutual by other insurers.  This indemnification includes Tort Claims made by Persons over whom the Diocese or Parishes do not have control, including any other Person who asserts Claims against or rights to coverage under the Diocese Certificates or Parish Certificates.  The Diocese's and Parishes' obligation to indemnify the Catholic Mutual

16

Parties under this Section 7.2 shall not exceed the Settlement Amount. The Catholic Mutual Parties may undertake the defense of any Claim upon receipt of such Claim. The Catholic Mutual Parties agree to notify the Diocese or Parishes, as applicable, as soon as practicable of any Claims identified in this Section 7.2 and of their choice of counsel. The Catholic Mutual Parties' defense of any Claims shall have no effect on the Diocese's or Parishes' obligation to indemnify the Catholic Mutual Parties for such Claims, as set forth in this Section 7.2. The Diocese or Parishes, as applicable, subject to the limitations above regarding the maximum amounts the Diocese and Parishes must pay, shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Catholic Mutual Parties in defending such Claims. In defense of any such Claims, the Catholic Mutual Parties may settle or otherwise resolve a Claim only with the prior consent of the Diocese and Parishes, which consent shall not be unreasonably withheld. To the extent this Section 7.2 may give rise to pre-Effective Date administrative claims which have not been provided for in the Plan, such claims shall pass through the Plan unimpaired.

7.3   If any Person attempts to prosecute a Channeled Claim against any of the Catholic Mutual Parties following the Petition Date, then promptly following notice to do so from the Catholic Mutual Parties, the Diocese will file a motion and supporting papers, supported by the Committee and the Parishes, to obtain an order from the Court, pursuant to Bankruptcy Code §§ 362 and 105(a), protecting the Catholic Mutual Parties from any such Claims until the Bankruptcy Orders become Final Orders, or, alternatively, this Settlement Agreement is terminated under Section 5.

## 8.  MISCELLANEOUS

8.1   If any proceedings are commenced to invalidate or prevent the enforcement or implementation of any of the provisions of this Settlement Agreement, the Parties agree to cooperate fully to oppose such proceedings. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2   The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3   The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Reorganization Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.

8.4   This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

17

8.5    This Settlement Agreement may be modified only by a written amendment signed by the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party.  The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

8.6    By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement. No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement.  All actions taken and statements made by the Parties or by their representatives, relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

8.7    This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, wrongdoing, or insurance coverage. All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.  Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.7, in (i) an action or proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7 or (ii) any possible action or proceeding between any of the Catholic Mutual Parties and any of their reinsurers. This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Catholic Mutual Parties' obligations under any of Diocese Certificates and Parish Certificates or any other binder, certificate, policy of insurance or any acknowledgment of coverage issued by the Catholic Mutual Parties, with respect to any Claims against any of the Catholic Mutual Parties.

8.8    None of the Parties shall make any public statements or disclosures (i) regarding each other's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Diocese Certificates or Parish Certificates or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties, including handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims.

8.9    The Parties have received the advice of counsel in the preparation, drafting, and execution of this Settlement Agreement, which was negotiated at arm's length.

8.10  Section titles and/or headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.11  All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to the Diocese Parties:

Rev. James Bissonette
Diocese of Duluth
2830 East 4th Street
Duluth, MN 55812

and


With a copy to:

Ford Elsaesser
Bruce A. Anderson
Elsaesser Anderson, Chtd.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Email: ford@eaidaho.com
Email: brucea@eaidaho.com

and

Phillip Kunkel
Gray Plant Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Email:  Phillip.kunkel@gpmlaw.com


If to Catholic Mutual:

Michael Lee
Catholic Mutual Group
Specialty Claims/Compliance Director
10843 Old Mill Road
Omaha, NE 68154
Email:  mlee@catholicmutual.org

19

With a copy to:

David M. Spector
Everett J. Cygal
Schiff Hardin LLP
233 S. Wacker Drive
Suite 6600
Chicago, IL 60606
Fax: 312-258-5600
Email: dspector@schiffhardin.com
Email:  ecygal@schiffhardin.com

and

Louis T. DeLucia
Alyson M. Fiedler
Schiff Hardin LLP
666 Fifth Avenue
17th Floor
New York, NY 10103
Fax: 212-753-5044
Email: ldelucia@schiffhardin.com
Email: afiedler@schifhardin.com

If to the Parish Parties:

John D. Kelly
1000 U.S. Bank Place
130 W Superior Street
Duluth, MN 55802-2094
Email:  jdk@hanftlaw.com

8.12 All notices, demands, or other communication to be provided pursuant to this Settlement Agreement prior to entry of the Plan Confirmation Order shall also be sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to Robert T. Kugler, Stinson Leanard Street, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, Email: Robert.kugler@stinson.com.

8.13 This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Settlement Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

8.14 Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (i) an admission by any of the Catholic Mutual Parties that the Diocese Parties, Parish Parties, or any other Person was or is entitled to any insurance coverage under the Diocese Certificates, Parish Certificates or any other binder, certificate, or policy of insurance issued by the Catholic Mutual Parties or as to the validity of any of the positions that have been or could have been asserted by the Diocese Parties or Parish Parties, (ii) an admission by the Diocese Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Catholic Mutual Parties or any Claims that have been or could have been asserted by the Diocese Parties or Parish Parties against the Catholic Mutual Parties, or (iii) an admission by the Diocese Parties, Parish Parties or the Catholic Mutual Parties of any liability whatsoever with respect to any of the Tort Claims.

8.15 All of the Persons included in the definition of Catholic Mutual Parties are intended beneficiaries of this Settlement Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.16 The Diocese Parties, Parish Parties and the Catholic Mutual Parties shall be responsible for their own fees and costs incurred in connection with the Reorganization Case, this Settlement Agreement, and the implementation of this Settlement Agreement.

8.17 The following rules of construction shall apply to this Settlement Agreement:

8.17.1    Unless the context of this Settlement Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.17.2    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

8.17.3    The wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The wording of this Settlement Agreement shall not be construed in favor of or against any Person.

8.17.4    The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.18  The Bankruptcy Court in the Reorganization Case shall retain exclusive jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with Minnesota law.

8.19  This Settlement Agreement and the obligations under this Settlement Agreement shall be binding on the Parties and shall survive the entry of the Plan Confirmation Order.

8.20  This Settlement Agreement shall be effective on the Effective Date.

[Remainder of page left blank intentionally]

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Diocese (as defined herein)**

By: _Fr. James B. Bissonett_

Title: _Vicar General, Diocese of Duluth_

Date: _8 November 2017_

Witness: _____

23

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Official Committee of Unsecured Creditors (as defined herein)**

By: _____

Title: _____

Date: ___November 7, 2017_____

Witness: _____

24

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of Catholic Mutual Relief Society of America**

By: _Rodney W. Oleynmueller_

Title: _DIRECTOR OF SPECIALTY CLAIMS & REINSURANCE_

Date: _11/7/17_

Witness: _Janice Oligmueller_

25

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Rose Church, Proctor**
**a Minnesota parish religious corporation**

By: _____

     John D. Kelly, Attorney-at-Law

Title: __Legal Counsel for St. Rose Church, Proctor,__
     A Minnesota parish religious corporation

Date: _____11 \ 29_____, 2017

Witness: _____

26

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Margaret Mary's Church, Duluth**

By: _____
     Reverend James Bissonette

Title:   Pastor of St. James' Church, Duluth, surviving
       Parish religious corporation to St. Margaret Mary's
       Church, Duluth by reason of merger.

Date: _____December____1_____, 2017

Witness: _____

27

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Luke's Church, Sandstone, a Minnesota parish religious corporation**

By:_____

John D. Kelly, Attorney-at-Law

Title: Legal Counsel for St. Luke's Church, Sandstone, a Minnesota parish religious corporation.

Date: _____11\29_____, 2017

Witness: _____

28

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Deerwood,
a Minnesota parish religious corporation**

By: _____

      John D. Kelly, Attorney-at-Law

Title: Legal Counsel for St. Joseph's Church,
      Deerwood, a Minnesota parish religious
      corporation

Date: _____11\29_____, 2017

Witness: _____

29

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Ball Club, a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title: Legal Counsel for St. Joseph's Church, Ball Club, a Minnesota parish religious corporation

Date: _____ 11/29 _____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Elizabeth's Church, Duluth**

By: _____
Reverend James Bissonette

Title:  Pastor of St. James' Church, Duluth,
surviving parish religious corporation to St.
Elizabeth's Church, Duluth by reason of merger.

Date: _____, 2017

Witness: _____

31

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Anthony's Church, Duluth**

By:_____

John D. Kelly, Attorney-at-Law

Title:  Legal Counsel for St. Benedict's Church, Duluth, surviving parish religious corporation to St. Anthony's Church, Duluth by reason of merger.

Date: ___11\29_____, 2017

Witness:_____

32

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Our Lady of the Snows Church, Big Fork, a Minnesota parish religious corporation**

By: _____
          Reverend Thomas Galarneault

Title:  Pastor and Vice-President

Date: _____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Mary Immaculate Church, Coleraine, a Minnesota religious corporation**

By: _____

Reverend Seth Goglin

Title:  Pastor and Vice-President

Date: _November 29th_, 2017

Witness: _Christina Serena_

34

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Rosary Church, Aurora, now known as Our Lady of Hope Church, Aurora by reason of name change, a Minnesota parish religious corporation**

By: _____
       Reverend Peter Lambert

Title:   Pastor and Vice President

Date: ___3 DEC_____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Family Church, Hillman, a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title:  Legal Counsel for Holy Family Church, Hillman, a Minnesota parish religious corporation

Date: _____ 11/29 _____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Cross Church, Duluth**

By: _Fr. James B. Bissonette_____

Reverend James Bissonette

Title:  Pastor of St. James' Church, Duluth, surviving parish religious corporation to Holy Cross Church, Duluth by reason of merger.

Date: ___December  1_____, 2017

Witness: _____

37

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Good Shepherd Church, Duluth**

By: _Jr. James B. Bissonette_
    Reverend James Bissonette

Title:  Pastor of St. James' Church, Duluth,
surviving parish religious corporation to Good
Shepherd Church, Duluth by reason of merger.

Date: _December 1_____, 2017

Witness: _____

38

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Paul's Church, Warba**

By: _Fr. Jerome Weiss_

Reverend Jerome Weiss

Title:  Pastor of St. Joseph's Church, Grand Rapids, surviving parish religious corporation to St. Paul's Church, Warba by reason of merger.

Date: _NOV. 29_____, 2017

Witness: _Nancy Kopacek_

39

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Michael's Church, Northhome, a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title:  Legal Counsel for St. Michael's Church, Northhome, a Minnesota parish religious corporation

Date: _____11/29_____, 2017

Witness: _____

40

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Mary's Church, Deer River, a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title:   Legal Counsel for St. Mary's Church, Deer River, a Minnesota parish religious corporation

Date: _____11 | 29_____, 2017

Witness: _____

41

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Mary's Church, Willow River, a Minnesota parish religious corporation**

By: _____
       Reverend Justin Fish

Title:  Interim Administrator and Vice-President

Date: __11 - 29_____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Mary's Church, Cook,
a Minnesota parish religious corporation**

By: _Father Nicholas N. Nelson_
    Reverend Nicholas Nelson

Title:  Pastor and Vice-President

Date: _Nov 29_, 2017

Witness: _Maryann Rot_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Beroun, a Minnesota religious corporation**

By: _____

Monsignor Aleksander Suchan

Title:   Pastor and Vice-President

Date: __11/30/2017_____, 2017

Witness: _____

44

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Crosby,
a Minnesota parish religious corporation**

By: _____
　　　Reverend Elias Gieske

Title:　Pastor and Vice-President

Date:　11/30_____, 2017

Witness: _____

45

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. John's Church, Hill City**

By: _Jerome Weiss_
Reverend Jerome Weiss

Title: Pastor of St. Joseph's Church, Grand Rapids, surviving parish religious corporation to St. John's Church, Hill City by reason of merger.

Date: _NOV. 29_____, 2017

Witness: _Nancy Koparek_

46

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Isidore's Church, Sturgeon Lake, a Minnesota parish religious corporation**

By: _____
Reverend Justin Fish

Title:  Interim Administrator and Vice-President

Date: _____, 2017

Witness: _____

47

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Catherine's Church, Squaw Lake, a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title:   Legal Counsel for St. Catherine's Church, Squaw Lake, a Minnesota parish religious corporation

Date: _____, 2017

Witness: _____

48

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Immaculate Heart Church, Crosslake, a Minnesota parish religious corporation**

By: _____
          Reverend Blake Rozier

Title:  Pastor and Vice-President

Date: _____11/29/17_____

Witness: _____

    IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of Holy Spirit Church, Virginia,
a Minnesota parish religious corporation**

By: _____

    John D. Kelly, Attorney-at-Law

Title:   Legal Counsel for Holy Spirit Church,
       Virginia, a Minnesota parish religious
       corporation

Date: _____11/29_____, 2017

Witness: _____

50

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Rosary Church, Grand Portage, a Minnesota parish religious corporation**

By: _____
　　　　　Reverend Drew Braun

Title:  Pastor and Vice-President

Date: ____5 December____, 2017

Witness: *Bridget Sobieck*

51

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Family Church, McGregor, a Minnesota parish religious corporation**

By: _____

Reverend Kuriakose Nediakala    mcbs

Title:   Pastor and Vice-President

Date: _11 - 29 - 2017_____, 2017

Witness: _Margaret Pavlik_

MARGARET PAVLIK
SECRETARY

52

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of Holy Family Church, Cloquet,
a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title:   Legal Counsel for Holy Family Church, Cloquet, a Minnesota parish religious corporation

Date: _____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of Holy Cross Church, Orr,
a Minnesota parish religious corporation**

By: _____

John D. Kelly, Attorney-at-Law

Title:    Legal Counsel for Holy Cross Church, Orr, a Minnesota parish religious corporation

Date: _____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Bridget Church, Greaney**

By: _Father Nicholas J. Nelson_
    Reverend Nicholas Nelson

Title:  Pastor

Date: _Nov 29_____, 2017

Witness: _Maryann Rot_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Parish, Deerwood, MN**

By:    **Duplicate – See page 29**

Title: _____

Date: _____

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Jean's Church, Duluth**

By: _____

      John D. Kelly, Attorney-at-Law

Title: Legal Counsel for Holy Family Church, Duluth, surviving parish religious corporation to St. Jean's Church, Duluth by reason of merger.

Date: _____, 2017

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Immaculate Conception Church, Nett Lake**

By: _____

John D. Kelly, Attorney-at-Law

Title:  Legal Counsel for Holy Cross Church, Orr, surviving parish religious corporation to Immaculate Conception Church, Nett Lake by reason of merger.

Date: _____, 2017

Witness: _____

58

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Our Lady of Fatima, Kinmount**

By: _Father Nicholas J. Nelson_
      Reverend Nicholas Nelson

Title:   Pastor of Holy Cross Church, Orr as
         surviving parish religious corporation of
         merged parish of Our Lady of Fatima,
         Kinmount

Date: _Nov 29_____, 2017

Witness: _Maryann Rot_

59

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Catherine's Parish, Squaw Lake, MN**

By: __**Duplicate – See page 48**_____

Title: _____

Date: _____

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Augustine's Church, Cohasset, a Minnesota parish religious corporation**

By: _____

    John D. Kelly, Attorney-at-Law

Title:  Legal Counsel for St. Augustine's Church, Cohasset, a Minnesota parish religious corporation

Date: _____ 11 29 _____, 2017

Witness: _____

61

| EXHIBIT A | |
|---|---|
| Diocese Certificates Issued to the Diocese of Duluth Potentially Affording Coverage in Connection with Tort Claims | |
| SMP | Coverage Year(s) |
| 7071 | 1982-1985 |
| 7436 | 1985-1986 |
| 7603 | 1986-1987 |
| 7786 | 1987-1988 |
| 7786 | 1988-1989 |
| 8061 | 1989-1990 |
| 8061 | 1990-1991 |
| 8061 | 1991-1992 |
| 8450 | 1992-1993 |
| 8450 | 1993-1994 |
| 8450 | 1994-1995 |
| 8450 | 1995-1996 |
| 8450 | 1996-1997 |
| 8450 | 1997-1998 |
| 8450 | 1998-1999 |
| 8450 | 1999-2000 |
| 8450 | 2000-2001 |
| 8450 | 2001-2002 |
| 8450 | 2002-2003 |
| 8450 | 2003-2004 |
| 8450 | 2004-2005 |
| 8450 | 2005-2006 |
| 8450 | 2006-2007 |
| 8450 | 2007-2008 |
| 8450 | 2008-2009 |
| 8450 | 2009-2010 |
| 8450 | 2010-2011 |
| 8450 | 2011-2012 |
| 8450 | 2012-2013 |
| 8450 | 2013-2014 |
| 8450 | 2014-2015 |
| 8450 | 2015-2016 |
| 8450 | 2016-2017 |

| EXHIBIT B | |
|---|---|
| **Parishes for Which a Parish Certificate or Secondary Evidence Potentially Affords Coverage in Connection with Tort Claims** | |
| **Parish** | **Coverage Year(s)** |
| St. Rose Parish, Proctor, MN | 1980-1983 (cancelled 4/1/1982) |
| St. Margaret's Parish, Duluth, MN | 1979-1985 (cancelled 4/1/1982) |
| St. Luke's Parish and Mission, Sandstone, MN | 1976-1982 (cancelled 4/1/1982) |
| St. Joseph's Parish, Deerwood, MN | 1976-1982 (cancelled 4/1/1982) |
| St. Joseph's Parish, Ball Club, MN | 1976-1984 (cancelled 4/1/1982) |
| St. Elizabeth's Parish, Duluth, MN | 1978-1984 (cancelled 4/1/1982) |
| St. Anthony's Parish, Duluth, MN | 1978-1984 (cancelled 4/1/1982) |
| Our Lady of the Snows Parish, Big Fork, MN | 1978-1984 (cancelled 4/1/1982) |
| Mary Immaculate Parish, Coleraine, MN | 1978-1982 (cancelled 4/1/1982) |
| Holy Rosary Parish, Aurora, MN | 1978-1981 |
| Holy Family Parish, Holy Family, MN | 1966-1969, 1978-1983 (cancelled 4/1/1982) |
| Holy Cross Church, Duluth, MN | 1980-1983 (cancelled 4/1/1982) |
| Good Shepherd Parish, Duluth, MN | 1976-1985 (cancelled 4/1/1982) |
| St. Paul's Church, Warba, MN | 1976-1982 (cancelled 4/1/1982) |
| St. Michael's Church, Northhome, MN | 1966-1969; 1978-1984 (cancelled 4/1/1982) |
| St. Mary's Parish, Deer River, MN | 1966-1969; 1978-1984 (cancelled 4/1/1982) |
| St. Mary's Church, Willow River, MN | 1966-1969; 1978-1984 (cancelled 4/1/1982) |
| St. Mary's Parish, Cook, MN | 1966-1969; 1980-1983 (cancelled 4/1/1982) |
| St. Joseph's Parish, Beroun, MN | 1980-1983 (cancelled 4/1/1982) |
| St. Joseph's Parish, Crosby, MN | 1976-1985 (cancelled 4/1/1982) |
| St. John's Parish, Hill City, MN | 1980-1983 (cancelled 4/1/1982) |
| St. Isidore's Church, Sturgeon Lake, MN | 1979-1985 (cancelled 4/1/1982) |
| St. Catherine's Parish, Squaw Lake, MN | 1966-1969; 1978-1983 (canceled 4/1/1982) |
| Immaculate Heart Parish, Crosslake, MN | 1978-1984 (cancelled 4/1/1982) |
| Holy Spirit Parish, Virginia, MN | 1976-1982 (cancelled 4/1/1982) |
| Holy Rosary Parish, Grand Portage, MN | 1976-1982 (cancelled 4/1/1982) |
| Holy Family Parish,  McGregor, MN | 1979-1982 (cancelled 4/1/1982) |
| Holy Family Parish, Cloquet, MN | 1976-1982 (cancelled 4/1/1982) |
| Holy Cross Church, Orr, MN | 1966-1969; 1980-1983 (cancelled 4/1/1982) |
| St. Bridget Church, Greaney, MN | 1966-1969 |
| St. Joseph's Parish, Deerwood, MN* | early 1970's |
| St. Jean's, Duluth, MN* | 1970's |
| Immaculate Conception, Nett Lake, MN* | 1960's |
| Our Lady of Fatima, Orr, MN* | 1960's |
| St. Catherine's Parish, Squaw Lake, MN* | early 1960's; early 1970's |
| St. Augustine's Church, Cohasset, MN* | 1960's and 1970's |
| St. Joseph's, Ball Club* | early 1970's |

| Holy Cross Church, Orr, MN | Early 1960's |
|---|---|

\*= No portion of any certificate has been found for this parish for this period and any potential for coverage is based on secondary evidence

CH2\20195709.1\05:51

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

Debtor-in-Possession.

Case No.: 15-50792

Chapter 11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 2, 2018, the Declaration of Abigail M. McGibbon

was filed in the above-captioned matter using the CM/ECF system, which sent a Notice of

Electronic Filing to the following person(s):

Nancy D. Adams on behalf of Counter-Claimant and Defendant Liberty Mutual Group, Inc.
ndadams@mintz.com

Nancy D. Adams on behalf of Interested Party Liberty Mutual Insurance Company
ndadams@mintz.com

Jeffrey R Anderson on behalf of Interested Party Certain Personal Injury Creditors
jeff@andersonadvocates.com, therese@andersonadvocates.com;erin@andersonadvocates.com

Phillip J Ashfield on behalf of Creditor Committee Official Committee of Unsecured Creditors
phillip.ashfield@stinsonleonard.com, laura.schumm@stinsonleonard.com

Teri E. Bentson on behalf of Counter-Claimant Liberty Mutual Group
teri.bentson@libertymutual.com

Kristi K. Brownson on behalf of Defendant, Counter-Claimant and Cross Defendant LIBERTY
MUTUAL GROUP, INC.
kbrownson@brownsonlinnihan.com, lwaskosky@brownsonlinnihan.com

Kristi K. Brownson on behalf of Interested Party Liberty Mutual Insurance Company
kbrownson@brownsonlinnihan.com, lwaskosky@brownsonlinnihan.com

Edwin H. Caldie on behalf of Creditor Committee Official Committee of Unsecured Creditors
Edwin.Caldie@stinsonleonard.com, laura.schumm@stinsonleonard.com

David C. Christian, II on behalf of Interested Party Continental Insurance Company
dchristian@davidchristianattorneys.com

Benjamin J. Court on behalf of Creditor Committee Official Committee of Unsecured Creditors
benjamin.court@stinson.com, aong.moua@stinson.com;laura.schumm@stinson.com

Everett J Cygal on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
ecygal@schiffhardin.com

Louis T DeLucia on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
ldelucia@schiffhardin.com, jacquaviva@schiffhardin.com;afiedler@schiffhardin.com

Alyson M Fiedler on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
afiedler@schiffhardin.com, jacquaviva@schiffhardin.com

Michael G Finnegan on behalf of Interested Party Certain Personal Injury Creditors
mike@andersonadvocates.com, therese@andersonadvocates.com;erin@andersonadvocates.com

Charles E. Jones on behalf of Defendant, Counter-Claimant and Cross Defendant FIREMAN'S
FUND INSURANCE COMPANY
charles.jones@lawmoss.com, Brenda.murphy@lawmoss.com

John D Kelly on behalf of Interested Party Parishes of Diocese of Duluth
jdk@hanftlaw.com, saw@hanftlaw.com;dar@hanftlaw.com

Jeffrey D Klobucar on behalf of Interested Party Continental Insurance Company
jklobucar@bassford.com, mmooney@bassford.com

Robert T. Kugler on behalf of Creditor Committee Official Committee of Unsecured Creditors
robert.kugler@stinson.com, laura.schumm@stinson.com

Phillip Kunkel on behalf of Debtor 1 Diocese of Duluth
phillip.kunkel@gpmlaw.com

Connie A. Lahn on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
clahn@btlaw.com, tpaulson@btlaw.com;marobinson@btlaw.com;pgroff@btlaw.com

Greta A. Matzen on behalf of Continental Insurance Group
greta.matzen@cna.com

Abigail M McGibbon on behalf of Debtor 1 Diocese of Duluth
abigail.mcgibbon@gpmlaw.com

Laura K. McNally on behalf of Interested Party Continental Insurance Company
lmcnally@loeb.com, chdocket@loeb.com;tmcintyre@loeb.com

Brittany Mitchell on behalf of Creditor Committee Official Committee of Unsecured Creditors
brittany.mitchell@stinson.com, laura.schumm@stinson.com

James R. Murray on behalf of Debtor 1 Diocese of Duluth
jmurray@blankrome.com

Christian A. Preus on behalf of Cross Defendant CHURCH MUTUAL INSURANCE
COMPANY
cpreus@bassford.com, pcarter@bassford.com

Christian A. Preus on behalf of Defendant CHURCH MUTUAL INSURANCE COMPANY
cpreus@bassford.com, pcarter@bassford.com

Beth A. Jenson Prouty on behalf of Defendant CHURCH MUTUAL INSURANCE COMPANY
bprouty@bassford.com, dpelzel@bassford.com

Robert Raschke on behalf of U.S. Trustee US Trustee
robert.raschke@usdoj.gov

Andrea E. Reisbord on behalf of Continental Insurance Company
areisbord@bassford.com

Daniel J Schufreider on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
dschufreider@schiffhardin.com

David M Spector on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
dspector@schiffhardin.com,
jacquaviva@schiffhardin.com;ecygal@schiffhardin.com;cmethven@schiffhardin.com

Laura B Stephens on behalf of Counter-Claimant Liberty Mutual Group
lbstephens@mintz.com

Laura B Stephens on behalf of Interested Party Liberty Mutual Insurance Company
lbstephens@mintz.com

Scott E. Turner on behalf of Continental Insurance Group
scott.turner@cna.com
US Trustee
ustpregion12.mn.ecf@usdoj.gov

Jeanne H. Unger on behalf of Counter-Claimant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Jeanne H. Unger on behalf of Cross-Claimant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Jeanne H. Unger on behalf of Defendant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Darin J Van Thournout on behalf of Interested Party Continental Insurance Company
dvanthournout@dca.law

Kevin J Walsh on behalf of Counter-Claimant Liberty Mutual Group
kwalsh@mintz.com, jcannata@mintz.com

Sarah J Wencil on behalf of U.S. Trustee US Trustee
Sarah.J.Wencil@usdoj.gov

Jared Zola on behalf of Debtor 1 Diocese of Duluth
jzola@blankrome.com, nylitigationdocketing@blankrome.com;jcarter@blankrome.com

Mary F. Sieling on behalf of Bankruptcy Trustee
mary@mantylaw.com

AND I FURTHER CERTIFY that on January 2, 2018, I served the same on the Non-ECF parties listed below by U.S. mail, postage prepaid:

IRS DISTRICT COUNSEL
380 JACKSON STREET, SUITE 650
SAINT PAUL, MN 55101

INTERNAL REVENUE SERVICE
WELLS FARGO PLACE
30 7TH STREET
MAIL STOP 5700
ST PAUL MN 55101

MN DEPARTMENT OF REVENUE
COLLECTION ENFORCEMENT
551 BANKRUPTCY SECTION
600 NORTH ROBERT STREET
SAINT PAUL, MN 55101

OFFICE OF THE U.S. ATTORNEY
600 US COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415

Dated:  January 2, 2018

*/s/ Abigail M. McGibbon*
Abigail M. McGibbon