## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

Diocese of Duluth,

        Debtor-in-Possession.

Case No.:  15-50792

Chapter 11

---

### NOTICE OF HEARING AND MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, CHURCH MUTUAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

TO:    The parties specified in Local Rule 9013-3(a)(2) and the parties identified on the attached service list.

1.    The above-captioned debtor moves the Court for the relief request below and gives notice of a hearing.

2.    The Court will hold a hearing on the Motion at **10:30 a.m. on Thursday, June 28, 2018**, before the Honorable Robert J. Kressel in Courtroom 8 West at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota.

3.    Any response to this Motion must be filed and served no later than **Friday, June 22, 2018**, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays).  **UNLESS A RESPONSE OPPOSING THIS MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This is a core proceeding.

5.      The petition commencing the Diocese's chapter 11 case was filed on December 7, 2015.  The case is now pending in this Court.

6.      This Motion arises under section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").  This Motion is filed under Fed. R. Bankr. P. 9019 and Local Rules 2002-1, 9013-1 and 9013-2.  The Diocese requests an order: (i) approving the Settlement Agreement, Release, and Certificate Buyback (the "Settlement Agreement") between the Diocese, the Parishes named therein (the "Parishes"), Church Mutual Insurance Company ("Church Mutual") and the Official Committee of Unsecured Creditors; and (ii) granting such other relief as is just and proper.

## GENERAL BACKGROUND

7.      On December 7, 2015, the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Diocese has continued to manage its business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An Official Committee of Unsecured Creditors has been appointed in these cases.

8.      General information about the Diocese's business and the events leading up to the Petition Date can be found in the Affidavit of the Very Reverend Father James B. Bissonette [Docket No. 8].

## BACKGROUND SPECIFIC TO MOTION

9.      Over the last several decades, some clergy members in the Diocese have violated the sacred trust placed in them by children, their families and the Diocese by committing acts of sexual abuse.  The Diocese filed its chapter 11 bankruptcy case in an effort to compensate, as fairly and equitable as possible, all survivors of such abuse.

2

10.     The Diocese purchased historical insurance policies that it believes will provide some of the dollar amounts necessary to compensate the survivors.  To determine the extent and applicability of the available coverage, the Diocese initiated an adversary proceeding (the "Coverage Litigation") seeking declaratory judgment against its various insurance carriers, including Church Mutual. [Minn. Bankr. Case No. 16-05012].  The Coverage Litigation is now pending in the United States District Court before the Honorable Donovan Frank as Case No. 17-cv-03254.

11.     Church Mutual is a corporation organized under the laws of Wisconsin.  Church Mutual operates in the state of Minnesota and the Diocese maintains that Church Mutual sold certificates ("Certificates") providing coverage to the Diocese and the Parishes for certain time frames during which survivors allege abuse.

12.     The Diocese and the Parishes maintain that the Certificates require Church Mutual to pay, on behalf of the Diocese, all sums that the Diocese became legally obligated to pay as a result of bodily injury, as long as any part of the injury took place during the policy period.  They also maintain that the Certificates require Church Mutual to pay all defense costs and expenses, including attorney's fees, incurred by the Diocese and the Parishes in the investigation and defense of the underlying actions and claims alleged by the victims.

13.     The Diocese and the Parishes maintain that they timely notified Church Mutual of the underlying actions and claims and have fulfilled their duties and conditions under the Certificates.  As a result, the Diocese and the Parishes maintain that they are entitled to all benefits provided by the Certificates.

14.     To resolve the alleged obligations of Church Mutual under the Certificates, the Committee, the Diocese, the Parishes and Church Mutual have conferred and have entered into

the Settlement Agreement.  The Settlement Agreement is attached hereto as **Exhibit A.**  The

material provisions of the Settlement Agreement are as follows (capitalized terms used herein

have the same meaning assigned to them in the Settlement Agreement):

- The Parishes shall sell, convey, transfer and assign any and all interest they may have in Parish Certificates to Church Mutual;
- Church Mutual and the Parishes shall exchange global releases for all Claims, except as otherwise provided in the Settlement Agreement;
- The Parties shall exchange global releases for any and all Tort Claims, including Unknown Tort Claims;
- A Channeling Injunction and a Supplemental Injunction shall be in the Diocese's Plan of Reorganization;
- Church Mutual will deliver a Settlement Amount in the amount of $250,000.00, which amount shall be paid to the Diocese for the benefit of Tort Claimants;
- The settlement is contingent and conditioned on the confirmation of a consensual Plan of Reorganization agreed to by all Parties.

15.     The Diocese has determined that it is in the best interest of its estate and its

creditors to reach a negotiated resolution of the dispute with Church Mutual.

16.     The Diocese has conferred with the Parishes and believes the terms of the

Settlement Agreement to be acceptable to the Parishes.  A fully executed Settlement Agreement

will be filed prior to the hearing on this Motion.

17.     Pursuant to Local Rule 9013-2(a), this Motion is verified and is accompanied by a

Memorandum, Proposed Order and proof of service.

18.     Pursuant to Local Rule 9013-2(c), the Diocese gives notice that it may, if

necessary, call Father James B. Bissonette, the Vicar General of the Diocese to testify regarding

the facts set forth in this Motion.

WHEREFORE, the Diocese respectfully requests that the Court enter an order: (i)

approving the Settlement Agreement, Release, and Certificate Buyback between the Diocese,

Church Mutual, the Parishes and the Official Committee of Unsecured Creditors; and (ii)

granting such other and further relief as the Court deems just and equitable.

Dated: June 5, 2018

<div style="margin-left:40%">

**ELSAESSER ANDERSON**

/s/ J. Ford Elsaesser
Bruce A. Anderson (admitted *pro hac vice*)
J. Ford Elsaesser (admitted *pro hac vice*)
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Phone: 208-263-8517
brucea@eaidaho.com
ford@eaidaho.com

-and-

**GRAY PLANT MOOTY MOOTY &
BENNETT, P.A.**

/s/ Phillip L. Kunkel
Phillip L. Kunkel (#058981)
Abigail M. McGibbon (#0393263)
101 West St. Germain
Suite 500
St. Cloud, MN 56301
Phone: 320-202-5335
phillip.kunkel@gpmlaw.com
abigail.mcgibbon@gpmlaw.com

*Attorneys for the Diocese of Duluth*

</div>

## VERIFICATION

I, Father James B. Bissonette, the Vicar General of the Diocese of Duluth, based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.


Date:  *april 18, 2018*                    Signed:  *Reverend James B. Bissonette*

**EXHIBIT A**

**(Settlement Agreement)**

## SETTLEMENT AGREEMENT, RELEASE, AND CERTIFICATE BUYBACK

This Settlement Agreement, Release, and Certificate Buyback ("Settlement Agreement") is hereby made by, between and among the Diocese Parties (as defined in Section 1.1.10), the Parish Parties (as defined in Section 1.1.19), the Committee (as defined in Section 1.1.7), and the Church Mutual Insurance Company Parties (as defined in Section 1.1.4).

## RECITALS

WHEREAS, numerous individuals have asserted certain Tort Claims (as defined in Section 1.1.27) against the Diocese (as defined in Section 1.1.8) and Parishes (as defined in Section 1.1.17);

WHEREAS, the Church Mutual Insurance Company Parties or their predecessors issued, allegedly issued or may have issued the Diocese Certificates (as defined in Section 1.1.9) and/or Parish Certificates (as defined in Section 1.1.16) providing certain  coverage to the Diocese Parties and the Parish Parties;

WHEREAS, certain disputes between the Diocese Parties and/or the Parish Parties and the Church Mutual Insurance Company Parties have arisen and/or may arise in the future concerning Church Mutual Insurance Company Parties' position regarding the nature and scope of their responsibilities, if any, to provide coverage to the Diocese Parties and/or Parish Parties under the Diocese Certificates and/or Parish Certificates in connection with Tort Claims (the "Coverage Disputes");

WHEREAS, the Diocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (Case No. 15-50792) (the "Reorganization Case") on December 7, 2015  (the "Petition Date");

WHEREAS, the Diocese Parties and the Parish Parties and the Church Mutual Insurance Company Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Disputes and all other disputes between and among them;

WHEREAS, through this Settlement Agreement, the Diocese Parties, Parish Parties and Committee  intend to provide the Church Mutual Insurance Company Parties with the broadest possible release of all Tort Claims, including all Unknown Tort Claims, that occurred or may have arisen prior to the effective date of the Plan (as defined in Section 1.1.22);

WHEREAS, as part of the compromise and resolution of such disputes, the Diocese Parties, Parish Parties and the Church Mutual Insurance Company Parties wish to effect a sale of the Parish Certificates (as defined in Section 1.1.18) pursuant to 11 U.S.C. § 363 and to provide the Church Mutual Insurance Company Parties with the broadest possible release and buyback with respect to the Parish Certificates, resulting in Church Mutual Insurance Company Parties having no obligations now, or in the future, under the Parish Certificates; and

SETTLEMENT AGREEMENT, RELEASE, AND CERTIFICATE BUYBACK - 1

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the United States Bankruptcy Court for the District of Minnesota and any other court in which the Reorganization Case may be pending or that has jurisdiction over the Reorganization Case (the "Bankruptcy Court"), the Parties hereby agree as follows:

## 1.  DEFINITIONS

1.1   As used in this Agreement, the following terms shall have the meanings set forth below. Capitalized terms not defined below or herein shall have the meanings given to them in the Bankruptcy Code.

1.1.1   "Abuse" means (i) any actual or alleged sexual conduct, misconduct, abuse, or molestation, including actual or alleged "sexual abuse" as that phrase is defined in Minnesota Statutes § 541.073(1); (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

1.1.2   "Bankruptcy Orders" means collectively, the UCR Order, the Approval Order and the Plan Confirmation Order.

1.1.3   "Church Mutual Insurance Company" means Church Mutual Insurance Company.

1.1.4   "Church Mutual Insurance Company Parties" means Church Mutual Insurance Company and each of their past, present and future parents, subsidiaries, affiliates, and divisions, each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, and each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

1.1.5   "Channeled Claim" means any Tort Claim against any of the Protected Parties, Church Mutual Insurance Company Parties, or any Person covered by any certificate issued by the Church Mutual Insurance Company Parties to the extent such Tort Claim arises from the same injury or damages asserted as a Tort Claim against the Protected Parties or Church Mutual Insurance Company Parties.  Notwithstanding the foregoing, Channeled Claims do not include Claims gainst (i) any religious order, diocese, or archdiocese (Other than the Diocese itself), or (ii) an individual who perpetrated an act of Abuse.

1.1.6  "Claim" means any past, present or future claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, including Tort Claims, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other claim within the definition of "claim" in section 101(5) of the Bankruptcy Code.

1.1.7  "Claim Filing Date" means May 25, 2016.

1.1.8  "Committee" means the Official Committee of Unsecured Creditors appointed in the Reorganization Case, pursuant to an Order of the Bankruptcy Court entered on December 28, 2015.

1.1.9  "Diocese" means the Diocese of Duluth and its estate (pursuant to section 541 of the Bankruptcy Code).

1.1.10 "Diocese Certificates" mean all known and unknown binders or certificates in existence before the Effective Date of this Settlement Agreement that were issued or allegedly issued by the Church Mutual Insurance Company Parties to the Diocese Parties and that actually, allegedly or might afford coverage with respect to any Tort Claim. **Diocese Certificates** does not include any binder or certificate that was issued to any other **Person** as the named insured (including, but not limited to the Archdiocese of St. Paul and Minneapolis) and that also provides coverage to the **Diocese Parties** as additional insureds or additional named insureds.

1.1.11 "Diocese Parties" means collectively the Diocese and: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Diocese; (ii) any and all named covered party, covered party and additional covered party under the Diocese Certificates, including any and all past and present parishes of or in the Diocese (as applicable) and every Protected Person (as defined in the Diocese Certificates); (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iv), in their capacity as such. Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Diocese or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a

Diocese Party with respect to that Tort Claim.  No religious order, diocese, or archdiocese other than the Diocese itself is a Diocese Party.

1.1.12 "Effective Date" means the date on which all conditions precedent to this Settlement Agreement are satisfied.

1.1.13 "Extra-Contractual Claim" means any Claim against any of the Church Mutual Insurance Company Parties based, in whole or in part, on allegations that any of the Church Mutual Insurance Company Parties acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of any of the Church Mutual Insurance Company Parties of any type for which the claimant seeks relief other than coverage or benefits under a policy of insurance.  Extra-Contractual Claims include: (i) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Church Mutual Insurance Company Parties' handling of any Claim or any request for insurance coverage, including any request for coverage for any Claim, including any Tort Claim; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with the Diocese Certificates and Parish Certificates and any contractual duties arising therefrom, including any contractual duty to defend the Diocese Parties or Parish Parties against any Tort Claims; and (iii) the conduct of the Parties with respect to the negotiation of this Settlement Agreement.

1.1.14 "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Settlement Agreement.

1.1.15   "Interests" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

1.1.16  "Parishes" means all parishes listed on Exhibit A.

1.1.17 "Parish Certificates" means any and all known and unknown binders or certificates issued or allegedly issued by the Church Mutual Insurance Company Parties to the Parish Parties,  or issued to any and all past and present parishes of or in the Diocese of Duluth, in existence before the Effective Date of this Settlement Agreement, and that actually, allegedly or might afford coverage with respect to any Tort Claim. Parish Certificates does not include any binder or insurance certificate issued by the

Church Mutual Insurance Company Parties to any parish that currently is or formerly was within the Archdiocese of St. Paul and Minneapolis. **Parish Certificates** does not include any binder or insurance certificate that was issued to any other **Person** as the named insured (including, but not limited to the Archdiocese of St. Paul and Minneapolis) and that also provides coverage to the Parish **Parties** as additional insureds or additional named insureds.

1.1.18  "Parish Parties", means the Parishes and (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Parishes; (ii) any and all named covered party, covered party and additional covered party under the Parish Certificates, including every Protected Person (as defined in the Parish Certificates); (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iv), in their capacity as such. Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Parishes or subject to their control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Parish Party with respect to that Tort Claim. No religious order, diocese, or archdiocese, other than the Diocese and Parishes, is a Parish Party.

1.1.19  "Parties" means the Diocese Parties, Church Mutual Insurance Company Parties, Parish Parties and Committee, and "Party" refers to them individually.

1.1.20  "Person" shall have the meaning ascribed in 11 U.S.C. § 101(41) and shall also include the term "Entity" as defined in 11 U.S.C. § 101(15).

1.1.21  "Plan" refers to the Diocese's chapter 11 plan of reorganization and any amendment thereto, as approved and confirmed by Final Order of the Bankruptcy Court, and that is consistent with the Settlement Agreement, and containing such language and provisions as are acceptable to Church Mutual Insurance Company in its sole discretion.

1.1.22  "Protected Parties" means any of the Diocese Parties, the Reorganized Debtor (as shall be defined in the Plan), and the Parish Parties. No religious order other than the Diocese itself is a Protected Party. For the avoidance of doubt, neither the Archdiocese of Saint Paul and Minneapolis, nor any parish currently or formerly within the Archdiocese of Saint Paul and Minneapolis, is a Protected Party.

1.1.23  "Related Insurance Claim" means (i) any Claim by any Person against any of the Church Mutual Insurance Company Parties for defense, indemnity, contribution, subrogation, or similar relief that, directly or indirectly, arises from, relates to, or is in connection with a Tort Claim; and (ii) any Extra Contractual Claim that, directly or

indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Claim that, directly or indirectly, arises out of, relates to or is in connection with any of the Church Mutual Insurance Company Parties' handling of any Tort Claim.

1.1.24    "Reorganized Debtor" shall have the meaning ascribed in the Plan, but for purposes hereof, shall mean the Diocese after confirmation of the Plan.

1.1.25    "Settlement Amount" means the sum of $250,000 to be paid to the Diocese for the benefit of Tort Claimants by Church Mutual Insurance Company after satisfaction of all Conditions Precedent, and pursuant to the confirmed Plan.

1.1.26    "Tort Claim" means any Claim against any of the Protected Parties or Church Mutual Insurance Company Parties that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the effective date of the Plan, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; respondeat superior; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, Church Mutual Insurance Company Parties or any other Person for whom any of the Protected Parties or Church Mutual Insurance Company Parties are allegedly responsible, including any such Claim asserted against any of the Parties in connection with the Diocese's reorganization case. "Tort Claim" includes any Unknown Tort Claim.

1.1.27    "Tort Claimant" means any Person holding a Tort Claim, including but not limited to any Claims articulated or set forth in proofs of claim filed with the Bankruptcy Court in the Reorganization Case.

1.1.28    "UCR" means any Person appointed by the Bankruptcy Court or District Court, as applicable, as the unknown claims representative.

1.1.29    Unknown Tort Claim" means any Tort Claim that is neither filed, nor deemed filed, by the Claim Filing Date and is held by a Person who (i) was continuously between the Claim Filing Date and the Bankruptcy Plan Effective Date under a disability recognized by Minn. Stat. § 541.15, subds. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) has a Tort Claim that was barred by the statute of limitations as of the Claim Filing Date but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revises previously time-barred Tort Claims; or (iii) claims he or she was incapable of knowing of the existence of his or her Tort Claim as of the Claim Filing Date for any reason, including alleged memory repression or suppression; or as otherwise defined by subsequent order of the Bankruptcy Court.

SETTLEMENT AGREEMENT, RELEASE AND CERTIFICATE BUYBACK -6

## 2.   THE REORGANIZATION CASE AND PLAN FOR REORGANIZATION

2.1   Not later than five (5) days after the last Party signs this Settlement Agreement, the Diocese shall file a motion in the Bankruptcy Court (the "<u>Approval Motion</u>") in form and substance acceptable to the Church Mutual Insurance Company Parties and the Diocese, seeking approval of this Settlement Agreement and authorization for the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement (the "<u>Approval Order</u>").

> 2.1.1   The Diocese shall provide written notice of the Approval Motion to (i) all Tort Claimants to the extent they are known by the Diocese, (ii) counsel, if any, for the Committee, (iii) the UCR, (iv) all Persons who have filed notices of appearance in the Reorganization Case, and (v) all Persons known to have provided general or professional liability insurance to the Diocese Parties. The Diocese shall serve all claimants identified above at the address shown on their proofs of claim or to their counsel of record or, if no proof of claim was filed, then at the address on the Diocese's schedules. The Diocese shall also serve the attorney for each Tort Claimant. The Diocese shall serve known Tort Claimants even if not scheduled or the subject of a proof of claim, to the extent known to the Diocese. The Diocese shall also serve any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-defendant. The Diocese shall provide notice of the Approval Motion in a form and substance acceptable to Church Mutual Insurance Company.

2.2   If any Person files an objection to the Approval Motion, the Diocese shall file a written response, in a form acceptable to the Church Mutual Insurance Company Parties, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the and Approval Order. The Parties will cooperate with the Diocese, including making all appropriate submissions.

2.3   The Diocese shall file a proposed Plan, including all exhibits, schedules and related documents, which shall be in all respects consistent with this Settlement Agreement and shall not deprive the Church Mutual Insurance Company Parties of any right or benefit under this Settlement Agreement or otherwise adversely affect the Interests of the Church Mutual Insurance Company Parties under this Settlement Agreement. Notwithstanding any language in any other section of this Settlement Agreement, the Committee reserves all rights to object to any provision of the Plan (including any provision of the Plan required by this Settlement Agreement) unless and until such time as all conditions precedent to this Settlement Agreement have been met, and this Settlement Agreement is fully binding on all the Parties. To avoid doubt, the Committee's reservation of rights under the preceding sentence shall include, but not be limited to, the ability to seek recovery from any other insurers with respect to any claims not satisfied in full by this Settlement Agreement.

2.3.1   The Plan shall include an injunction (the "Channeling Injunction") in substantially the form attached as Schedule 1 to this Settlement Agreement, with only such modifications as are acceptable to the Church Mutual Insurance Company Parties, the Diocese, the Parishes and the Committee, pursuant to section 105 of the Bankruptcy Code, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert Claims from taking any action, directly or indirectly for purposes of asserting, enforcing or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to a trust or trusts established pursuant to the Plan ("Trust"), to which all Channeled Claims are channeled as the sole and exclusive source of payment of any such Channeled Claims.

2.3.2   The Plan shall also include an injunction (the "Supplemental Injunction") in substantially the form attached as Schedule 2 to this Settlement Agreement, with only such modifications as are acceptable to the Church Mutual Insurance Company Parties, the Diocese, the Parishes and the Committee, pursuant to sections 105(a) and 363 of the Bankruptcy Code.

2.4   In the Reorganization Case, the Diocese shall seek and obtain entry of an order in form and substance acceptable to the Church Mutual Insurance Company Parties that: (i) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (ii) contains the Channeling Injunction; (iii) contains the Supplemental Injunction; (iv) provides that this Settlement Agreement is binding on the Trust, the Reorganized Debtor, and any successors of the Trust or Reorganized Debtor; and (v) provides all protections to the Church Mutual Insurance Company Parties against Tort Claims that are afforded to settling insurers under the Plan (the "Plan Confirmation Order").

2.4.1   The Plan and Plan Confirmation Order must be in all respects consistent with this Settlement Agreement and contain no provisions that diminish or impair the benefit of this Settlement Agreement to Church Mutual Insurance Company.

2.4.2   In seeking to obtain the Plan Confirmation Order, the Diocese must: (i) seek a confirmation hearing on an appropriately timely basis; (ii) urge the Bankruptcy Court to overrule any objections that would affect the rights and benefits afforded the Church Mutual Parties under this Settlement Agreement and confirm the Plan; and (iii) take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.4.3   The form and manner of notice of the hearing to confirm the Plan and the form and manner of notice of the hearing as to the adequacy of the disclosure statement pertaining thereto are subject to advance approval by the Church Mutual Insurance Company Parties, which approval cannot be unreasonably withheld.

2.4.4   Prior to entry of the Plan Confirmation Order, the Diocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Tort Claim.  If the Bankruptcy Court lifts the stay as to any Tort Claim prior to the Plan Confirmation Order, the Diocese shall defend itself against that Tort Claim and comply

SETTLEMENT AGREEMENT, RELEASE AND CERTIFICATE BUYBACK -8

with the terms of the stay relief order.  If the Diocese fails to defend that Tort Claim, then the Church Mutual Insurance Company Parties shall have the right, but not the duty, to defend and/or indemnify the Diocese against that Tort Claim and any costs incurred by the Church Mutual Insurance Company Parties in defending and/or indemnifying the Diocese shall be deducted from the Settlement Amount.  In such event, the Diocese will cooperate with the Church Mutual Insurance Company Parties in the defense and/or indemnification of such Tort Claim.

2.5    The Diocese agrees that the Trust and Plan shall provide that the assets in the Trust shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for any payments ("Conditional Payments") made pursuant to Section 1395y(b)(2)(B) of the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 4.11.1 *et seq.* ("MSPA") applicable to any Tort Claimant who claims he or she is eligible to receive, is receiving, or has received Medicare benefits ("Medicare Beneficiary") and, after satisfaction thereof, to such Medicare Beneficiaries and Tort Claimants.  Except for the payment of the Settlement Amount, the Church Mutual Insurance Company Parties shall not be obligated to make any other payments, including any payments to the Trust.

2.6    The Diocese Parties and Parish Parties will undertake all reasonable actions and cooperate with the Church Mutual Insurance Company Parties in connection with their reinsurers.

2.7    The Parties shall cease all litigation activities against each other in the Coverage Suits; provided, however, that each Party may take whatever steps that, in its sole judgment, are necessary to defend its interests as long as it remains a party in the Coverage Suits.

2.8    The Diocese and Parish Parties shall use its reasonable efforts to obtain the dismissal of other Claims, if any, against the Church Mutual Insurance Company Parties by any other insurer in the Coverage Suits.

2.9    The Parties covenant not to sue each other, or prosecute further any existing suit, until (a) the Bankruptcy Orders become Final Orders, at which time this covenant is superseded by the releases provided in Section 4, or (b) the date on which this Settlement Agreement is terminated.  As of the Effective Date, the Diocese Parties and Parish Parties:

    2.9.1    will withdraw all outstanding tenders of Claims to the Church Mutual Insurance Company Parties for defense and indemnity;

    2.9.2    will not tender any Claims to the Church Mutual Insurance Company Parties; and

    2.9.3    will not request the Church Mutual Insurance Company Parties to fund any judgments, settlements, or defense costs.

2.10    The Church Mutual Insurance Company Parties shall have no obligation to defend, pay, handle, object, or otherwise respond to any Claim, unless this Settlement Agreement is terminated.

## 3.   PAYMENT OF THE SETTLEMENT AMOUNTS AND DISMISSAL OF COVERAGE SUITS

3.1    Conditions Precedent. The Settlement Agreement shall become effective and shall be binding on the Parties and Church Mutual Insurance Company will pay the Settlement Amount only after the following conditions have first been satisfied: (a) entry of a Final Order (i) approving the Approval Motion, with the form and content of notice of the motion acceptable to Church Mutual Insurance Company; and (ii) approving the form and content of notice of the Plan, ballots and disclosure statement relating to the Plan,; (b) entry of a Final Order approving the form and content of the Tort Claimants' ballot, each to be satisfactory to Church Mutual Insurance Company; (c) entry of a Final Order confirming a Plan agreed to by the Diocese and Committee in accordance with the Settlement Agreement, containing such terms and conditions as are acceptable to Church Mutual Insurance Company; (d) execution of the Settlement Agreement by all Parties in form and substance acceptable to the Parties; (e) entry of a Final Order approving of the Channeling Injunction and the Supplemental Injunction in favor of the Church Mutual Insurance Company Parties and the Protected Parties in form and substance acceptable to the Parties; and (f) entry of a Final Order approving of the releases in favor of the Church Mutual Insurance Company Parties and the Protected Parties, as are acceptable to the Parties.

3.2    In full and final settlement of (i) all responsibilities for any and all Tort Claims that occurred or may have arisen prior to the effective date of the Plan and any and all Unknown Tort Claims; and (ii) in consideration of the sale of the Parish Certificates free and clear of all Claims and Interests of any Person, Church Mutual Insurance Company shall pay the Settlement Amount within ten (10) days after Church Mutual Insurance Company receives written notice from the Diocese that the Bankruptcy Orders are Final Orders and directions as to transmission of the payment.

3.3    The Parties agree that the Settlement Amount is the total amount the Church Mutual Insurance Company Parties are obligated to pay on account of (i) any and all Tort Claims, including all Unknown Tort Claims through the effective date of the Plan, that arise under, arising out of, relating to, or in connection with the Diocese Certificates (including Channeled Claims, any reimbursement obligations for Conditional Payments under the MSPA, and any Extra-Contractual Claims); and (ii) any and all Claims and Interests, whether known or unknown, past, present or future, that arise under, arising out of, relating to, or in connection with the Parish Certificates.

3.4    The Parties further agree that (i) under no circumstance will the Church Mutual Insurance Company Parties ever be obligated to make any additional payments in excess of the Settlement Amount to or on behalf of anyone in connection with the Parish Certificates or in connection with any Tort Claims covered or allegedly covered under the Diocese Certificates or the Parish Certificates, including any Channeled Claims and any Extra

Contractual Claims; (ii) under no circumstance will the Church Mutual Insurance Company Parties ever be obligated to make any additional payments to or on behalf of the Diocese Parties or any Tort Claimants in connection with any certificates or coverage under any Diocese Certificates or Parish Certificates issued by the Church Mutual Insurance Company Parties, with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Tort Claims, including any Channeled Claims and any Extra Contractual Claims; and (iii) all limits of liability of the Diocese Certificates and Parish Certificates, regardless of how these Certificates identify or describe those limits, including, but not limited to, all per person, per occurrence, per claim, "each professional incident," and aggregate limits, shall be deemed fully and properly exhausted. The Parties further agree that the Settlement Amount is the full purchase price of the Parish Certificates.

    3.4.1    The Parties agree and jointly represent that (i) the consideration to be provided by the Church Mutual Insurance Company Parties pursuant to this Settlement Agreement (including the Settlement Amount) constitutes fair and reasonable exchanges for the consideration granted to the Church Mutual Insurance Company Parties in this Settlement Agreement (including the releases set forth below), and (ii) the consideration to be provided by the Diocese Parties and Parish Parties to the Church Mutual Insurance Company Parties pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable exchange for the consideration granted to the Diocese Parties and Parish Parties in this Settlement Agreement (including the Settlement Amount). The Church Mutual Insurance Company Parties are not acting as volunteers in paying the Settlement Amount, and the Church Mutual Insurance Company Parties' payment of the Settlement Amount reflects potential liabilities and obligations to the Diocese and Parishes of amounts the Church Mutual Insurance Company Parties allegedly are obligated to pay on account of any and all Claims.

3.5    Within ten (10) days after the Church Mutual Insurance Company Parties pay the Settlement Amount, the Diocese shall sign and file any necessary papers to have dismissed any action pending in connection with the Coverage Disputes, and the Diocese shall file a stipulation, that is signed by all Parties that are parties to the Coverage Dispute action(s), that dismisses with prejudice any and all claims asserted by any of the Parties against any of the other Parties.

## 4.    RELEASES AND SALE FREE AND CLEAR

4.1    <u>Diocese Parties Release of Church Mutual Insurance Company Parties</u>. Upon payment by the Church Mutual Insurance Company Parties of the Settlement Amount, the Diocese Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Church Mutual Insurance Company Parties and any of their reinsurers or retrocessionaires from any and all past, present, and future Claims that, occurred or may have arisen prior to the effective date of the Plan and that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties, including any Channeled Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or

indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties.

4.2   <u>Church Mutual Insurance Company Release of Diocese Parties</u>.  Upon payment by the Church Mutual Insurance Company Parties of the Settlement Amount, the Church Mutual Insurance Company Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Diocese Parties from any and all past, present, and future Claims that, occurred or may have arisen prior to the effective date of the Plan that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties, including any Channeled Claims, Extra-Contractual Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties.

4.3   <u>Parish Parties Release of Church Mutual Insurance Company Parties</u>.  Upon payment by the Church Mutual Insurance Company Parties of the Settlement Amount, the Parish Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Church Mutual Insurance Company Parties and any of their reinsurers or retrocessionaires from any and all past, present, and future Claims, including any Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties, including any Channeled Claims, Extra-Contractual Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case.  This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties

4.4   <u>Church Mutual Insurance Company Release of Parish Parties</u>.  Upon payment by the Church Mutual Insurance Company Parties of the Settlement Amount, the Church Mutual Insurance Company Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Parish Parties from any and all past, present, and future Claims, including any Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties, including any Channeled Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all future Claims that are based in whole or in part on the Tort Claims, the Diocese Certificates, Parish Certificates, or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company.

SETTLEMENT AGREEMENT, RELEASE AND CERTIFICATE BUYBACK -12

4.5   Unless otherwise provided in the Plan, the releases contained in this Section shall be pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978), and all Tort Claimants reserve their rights against religious orders and all Persons who are not Protected Parties, who will remain severally liable on any Claims.

4.6   From and after the first day on which the Bankruptcy Orders are Final Orders, the Diocese Parties shall not assert against the Church Mutual Insurance Company Parties for any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Unknown Tort Claim, that occurred or may have arisen prior to the effective date of the Plan (including any Tort Claim that arises under or relates to the Diocese Certificates or any other binder, certificate, or policy of insurance issued by any of the Church Mutual Insurance Company Parties, any Channeled Claim, any Extra Contractual Claim, and/or any other matter released pursuant to Section 4).

4.7   From and after the first day on which the Bankruptcy Orders are Final Orders, the Parish Parties shall not assert against the Church Mutual Insurance Company Parties for any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Claim, including any Tort Claim, and any other Claim that arises under or relates to the Parish Certificates or any other binder, certificate, or policy of insurance issued by any of the Church Mutual Insurance Company Parties, any Channeled Claim, any Extra Contractual Claim, and/or any other matter released pursuant to Section 4.

4.8   As set forth in the Approval Order, upon entry of the Bankruptcy Orders as Final Orders, the Church Mutual Insurance Company Parties shall buy back the Parish Certificates free and clear of all Interests of all Persons, including all Interests of the Parish Parties, any other Person claiming coverage by, through, or on behalf of any of the Parish Parties, any other insurer, and any Tort Claimant.  This sale is pursuant to sections 363(b) and 363(f) of the Bankruptcy Code.  The Parties acknowledge and agree that (i) the Church Mutual Insurance Company Parties are good faith purchasers of the Parish Certificates within the meaning of section 363(m) of the Bankruptcy Code and (ii) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Diocese Certificates and Parish Certificates and constitutes reasonably equivalent value, and (iii) the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws.  As set forth in the Approval Order, upon entry of the Bankruptcy Orders as Final Orders, the Parish Certificates shall be terminated and of no further force and effect.  The Church Mutual Insurance Company Parties' payment of the Settlement Amount shall constitute the Church Mutual Insurance Company Parties' full and complete performance of any and all obligations under the Parish Certificates, including any performance owed to the Parish Parties, and exhausts all limits of liability of the Parish Certificates.  All Interests the Parish Parties may have had, may presently have, or in the future may have in the Parish Certificates or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties shall be released.  The Parish Parties accept the

Settlement Amount in full and complete satisfaction of all the Church Mutual Insurance Company Parties' past, present, and future obligations, including any obligations to any of the Parish Parties under the Parish Certificates or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such claims arise from, relate to, or are in connection with the Channeled Claims, the Reorganization Case, or otherwise under the Parish Certificates.

4.9   If, contrary to the intent of the Parties, any Claims released pursuant to this Section 4 of the Settlement Agreement, including any past, present or future Claim for insurance coverage under the Diocese Certificates or Parish Certificates or any other Claim by the Diocese Parties against any of the Church Mutual Insurance Company Parties, are deemed to survive this Settlement Agreement, even though they are encompassed by the terms of the releases set forth in this Section 4 of this Settlement Agreement, the Parties hereby forever, expressly, and irrevocably waive entitlement to and agree not to assert any and all such Claims.

4.10 All of the releases and other benefits provided in this Settlement Agreement by the Diocese Parties to the Church Mutual Insurance Company Parties are at least as favorable as the releases and other benefits that the Diocese has provided to any other one of the Diocese's insurers in the Reorganization Case. If the Diocese enters into any agreement with any other one of its insurers in the Reorganization Case that provides that insurer with releases or other benefits that are more favorable than those contained in this Settlement Agreement, then this Settlement Agreement shall be deemed to be modified to provide the Church Mutual Insurance Company Parties with those more favorable releases and/or benefits. However, the provision at Section 7.2 that the duty to defend, indemnify and hold harmless the Church Mutual Insurance Company Parties not extending to nor including claims that are or may be made against Church Mutual Insurance Company by other insurers shall not be modified. The Diocese Parties shall notify the Church Mutual Insurance Company Parties promptly of the existence of such more favorable releases or benefits.

4.11 Neither the releases set forth in this Section 4 nor any other provisions in this Settlement Agreement are intended to apply to or have any effect on the Church Mutual Insurance Company Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Diocese Certificates and Parish Certificates or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties.

4.12 This Section 4 is not intended to, and shall not be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement.

## 5.   TERMINATION OF SETTLEMENT AGREEMENT

5.1   In the event i) the Bankruptcy Orders do not become Final Orders of the Bankruptcy Court within one year from the date on which the Settlement Agreement is executed by all the Parties, or ii) a Plan is filed or confirmed that is inconsistent with the terms of the

Settlement Agreement or is otherwise unacceptable to Church Mutual Insurance Company, or iii) the Reorganization Case is dismissed or converted, then Church Mutual Insurance Company may terminate the Settlement Agreement upon fifteen (15) days' notice to the Diocese, immediately following which the Settlement Agreement shall be null and void and of no force or effect.

## 6.   REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1   The Parties separately represent and warrant as follows:

6.1.1   To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Settlement Agreement and to perform the obligations contemplated by this Settlement Agreement, subject only to approval of the Bankruptcy Court;

6.1.2   This Settlement Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration.

6.2   The Diocese Parties and Parish Parties represent and warrant that they have not and will not assign any Interests in the Diocese Certificates or Parish Certificates or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties.

6.3   The Diocese Parties represent and warrant that they are the owners of the Diocese Certificates and that no other Person has legal title to the Diocese Certificates.

6.4.   The Parish Parties represent and warrant that they are the owners of the Parish Certificates and that no other person has legal title to the Parish Certificates.

6.5   The Diocese Parties and Parish Parties each represent and warrant that they have not in any way assisted, and shall not in any way assist, any Person in the establishment of any Claim against the Church Mutual Insurance Company Parties.

6.6   The person(s) executing this Settlement Agreement on behalf of the parties in Sections 1.1.10(i), (ii), and (iii) and Sections 1.1.19(i), (ii) and (iii) (collectively, the "Other Diocese /Parish Parties") represents and warrants that he/she has received authority from such Other Diocese-/Parish Parties, as the case may be, to execute this Settlement Agreement on their behalf and to provide the releases identified in Section 4 above on behalf of such Other Diocese-/Parish Parties.  Notwithstanding the foregoing, nothing in the definition of Other Diocese-/Parish Parties is intended to suggest or should be construed to mean that any Person included in this definition is owned, directed, supervised or controlled by the Diocese or Parishes.

6.7   The Parties have completed a reasonable search for evidence of any certificates of insurance issued by the Church Mutual Insurance Company Parties to the Diocese Parties and Parish Parties that would afford coverage with respect to any Tort Claim.  Other than the

alleged polices or certificates and acknowledgments of coverage identified in Exhibit A, no such policies or certificates and acknowledgments of coverage have been identified. Notwithstanding the foregoing, nothing in this Settlement Agreement, including the Schedules or Exhibits thereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued and/or affords coverage in connection with the Tort Claims.

## 7. ACTIONS INVOLVING THIRD PARTIES

7.1    For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Diocese Certificates or Parish Certificates, the Diocese Parties and Parish Parties hereby agree as follows:

7.1.1    If any other insurer of the Diocese Parties or Parish Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from any of the Church Mutual Insurance Company Parties as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for any of the Church Mutual Insurance Company Parties' alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense and/or indemnity obligation of any of the Church Mutual Insurance Company Parties for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Diocese Party(ies) or Parish Party(ies), as applicable, shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against the Church Mutual Insurance Company Parties. To ensure that such a reduction is accomplished, the Church Mutual Insurance Company Parties shall be entitled to assert this Section 7 as a defense to any action against them brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Church Mutual Insurance Company Parties from any liability for the judgment or Claim.  Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against any of the Church Mutual Insurance Company Parties, such Claim may be asserted as a defense against the Trust (under the Plan contemplated by the Settlement Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of the Church Mutual Insurance Company Parties in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or Diocese Parties or Parish Parties) shall be reduced dollar for dollar by the amount so determined.

7.1.2    The Church Mutual Insurance Company Parties shall not seek reimbursement for any payments they are obligated to make under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other insurer of the Diocese or Parishes unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from any of the Church Mutual Insurance Company Parties. The Diocese and Parishes shall use their respective reasonable best

efforts to obtain from all insurers with which it settles agreements similar to those contained in this Section 7.

7.2   The Diocese and Parishes shall defend, indemnify, and hold harmless the Church Mutual Insurance Company Parties with respect to any and all released claims pursuant to Section 4 above, including all Tort Claims made by (i) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under their respective Diocese Certificates or Parish Certificates; (ii) any Person who has made, will make, or can make a Tort Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Tort Claim under the Diocese Certificates or Parish Certificates; (iv) provided, however, this indemnification does not extend to nor does it include claims that are or may be made against Church Mutual Insurance Company by other insurers.  This indemnification includes Tort Claims made by Persons over whom the Diocese or Parishes do not have control, including any other Person who asserts Claims against or rights to coverage under the Diocese Certificates or Parish Certificates.   The Diocese's and Parishes' obligation to indemnify the Church Mutual Insurance Company Parties under this Section 7.2 shall not exceed the Settlement Amount.  The Church Mutual Insurance Company Parties may undertake the defense of any Claim upon receipt of such Claim.   The Church Mutual Insurance Company Parties agree to notify the Diocese or Parishes, as applicable, as soon as practicable of any Claims identified in this Section 7.2 and of their choice of counsel.  The Church Mutual Insurance Company Parties' defense of any Claims shall have no effect on the Diocese's or Parishes' obligation to indemnify the Church Mutual Insurance Company Parties for such Claims, as set forth in this Section 7.2.  The Diocese or Parishes–, as applicable, subject to the limitations above regarding the maximum amounts the Diocese and Parishes' must pay, shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Church Mutual Insurance Company Parties in defending such Claims.  In defense of any such Claims, the Church Mutual Insurance Company Parties may settle or otherwise resolve a Claim only with the prior consent of the Diocese and Parishes, which consent shall not be unreasonably withheld.  To the extent this Section 7.2 may give rise to pre-Effective Date administrative claims which have not been provided for in the Plan, such claims shall pass through the Plan unimpaired.

7.3   If any Person attempts to prosecute a Channeled Claim against any of the Church Mutual Insurance Company Parties following the Petition Date, then promptly following notice to do so from the Church Mutual Insurance Company Parties, the Diocese will file a motion and supporting papers, supported by the Committee and the Parishes, to obtain an order from the Court, pursuant to Bankruptcy Code §§ 362 and 105(a), protecting the Church Mutual Insurance Company Parties from any such Claims until the Bankruptcy Orders become Final Orders, or, alternatively, this Settlement Agreement is terminated under Section 5.

## 8.   MISCELLANEOUS

8.1   If any proceedings are commenced to invalidate or prevent the enforcement or implementation of any of the provisions of this Settlement Agreement, the Parties agree to cooperate fully to oppose such proceedings.  In the event that any action or proceeding of any

type whatsoever is commenced or prosecuted by any Person not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2   The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3   The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Reorganization Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.

8.4   This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.5   This Settlement Agreement may be modified only by a written amendment signed by the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party.  The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

8.6   By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement. No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement.  All actions taken and statements made by the Parties or by their representatives, relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

8.7   This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, wrongdoing, or insurance coverage. All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.  Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.7, in (i) an action or

proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7 or (ii) any possible action or proceeding between any of the Church Mutual Insurance Company Parties and any of their reinsurers. This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Church Mutual Insurance Company Parties' obligations under any of Diocese Certificates and Parish Certificates or any other binder, certificate, or policy of insurance or any acknowledgment of coverage issued by the Church Mutual Insurance Company Parties, with respect to any Claims against any of the Church Mutual Insurance Company Parties.

8.8    None of the Parties shall make any public statements or disclosures (i) regarding each other's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Diocese Certificates or Parish Certificates or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties, including handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims.

8.9    The Parties have received the advice of counsel in the preparation, drafting, and execution of this Settlement Agreement, which was negotiated at arm's length.

8.10   Section titles and/or headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.11   All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time

    If to the Diocese Parties:

    Rev. James Bissonette
    Diocese of Duluth
    2830 East 4th Street
    Duluth, MN  55812

    and

    With a copy to:

    Ford Elsaesser
    Bruce A. Anderson
    Elsaesser Anderson, Chtd.
    320 East Neider Avenue, Suite 102

SETTLEMENT AGREEMENT, RELEASE AND CERTIFICATE BUYBACK -19

Coeur d'Alene, ID  83815
Email:  ford@eaidaho.com
        brucea@eaidaho.com

and

Phillip Kunkel
Gray Plant Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Email:  Phillip.Kunkel@gpmlaw.com


If to Church Mutual Insurance Company:
Jeffrey L. Benedict
Church Mutual Insurance Company
3000 Schuster Lane
Merrill, WI  54452
Phone:  (715) 539-4601
jbenedict@churchmutual.com


    With a copy to:

    Christian A. Preus
    Bassford Remele, P.A.
    100 South 5th Street, Suite 1500
    Minneapolis, MN  55402-1254
    Telephone:  612-376-1649
    Fax: 612-746-1249
    Email: cpreus@bassford.com


If to the Parish Parties:

    John D. Kelly
    1000 U.S. Bank Place
    130 W Superior Street
    Duluth, MN 55802-2094
    Email:  jdk@hanftlaw.com


8.12 All notices, demands, or other communication to be provided pursuant to this Settlement Agreement prior to entry of the Plan Confirmation Order shall also be sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to Robert T.

Kugler, Stinson Leanard Street, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, Email: Robert.kugler@stinson.com.

8.13 This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Settlement Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

8.14 Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (i) an admission by any of the Church Mutual Insurance Company Parties that the Diocese Parties, Parish Parties, or any other Person was or is entitled to any insurance coverage under the Diocese Certificates, Parish Certificates or any other binder, certificate, or policy of insurance issued by the Church Mutual Insurance Company Parties or as to the validity of any of the positions that have been or could have been asserted by the Diocese Parties or Parish Parties, (ii) an admission by the Diocese Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Church Mutual Insurance Company Parties or any Claims that have been or could have been asserted by the Diocese Parties or Parish Parties against the Church Mutual Insurance Company Parties, or (iii) an admission by the Diocese Parties, Parish Parties or the Church Mutual Insurance Company Parties of any liability whatsoever with respect to any of the Tort Claims.

8.15 All of the Persons included in the definition of Church Mutual Insurance Company Parties, all of the Parties to this Agreement, and the bankruptcy Trust and Trustee are intended beneficiaries of this Settlement Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.16 The Diocese Parties, Parish Parties and the Church Mutual Insurance Company Parties shall be responsible for their own fees and costs incurred in connection with the Reorganization Case, this Settlement Agreement, and the implementation of this Settlement Agreement.

8.17 The following rules of construction shall apply to this Settlement Agreement:

8.17.1    Unless the context of this Settlement Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.17.2    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

SETTLEMENT AGREEMENT, RELEASE AND CERTIFICATE BUYBACK -21

8.17.3    The wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The wording of this Settlement Agreement shall not be construed in favor of or against any Person.

8.17.4    The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.18  The Bankruptcy Court in the Reorganization Case shall retain exclusive jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with Minnesota law.

8.19  This Settlement Agreement and the obligations under this Settlement Agreement shall be binding on the Parties and shall survive the entry of the Plan Confirmation Order.

8.20  This Settlement Agreement shall be effective on the Effective Date.

[Remainder of page left blank intentionally]

IN WITNESS WHEREOF, the **Parties** have duly executed this <u>Agreement</u> as of the last date indicated below.

**On behalf of the Diocese of Duluth, a Minnesota Diocesan religious corporation**

By: _Reverend James B. Bissonette_
      Reverend James B. Bissonette

Title:  Vicar General, Diocese of Duluth

Date: _april 18_____, 2018

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the Official Committee of Unsecured Creditors (as defined herein)**

By: _____

Title: _____Counsel for UCC_____

Date: _____6/1/18_____

Witness: _____

SETTLEMENT AGREEMENT, RELEASE AND CERTIFICATE BUYBACK -24

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Resurrection Church, Eveleth
a Minnesota parish religious corporation**

By: _____

Reverend Michael Garry

Title:   Pastor and Vice-President

Date: _____ , 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Resurrection Church, Eveleth a Minnesota parish religious corporation, as successor-in-interest to Immaculate Conception Church, Eveleth by reason of merger**

By: _____
Reverend Michael Garry

Title:   Pastor and Vice-President

Date: __4/17/18_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Paul's Church, Remer
a Minnesota parish religious corporation**

By: _Reverend Keith Bertram_____
      Reverend Keith Bertram

Title:  Pastor and Vice-President

Date: _Tuesday/ April 17th___, 2018

Witness: _Robert J. Zella_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Our Lady of Fatima Church, Garrison a Minnesota parish religious corporation**

By: _____

Reverend David Forsman

Title:   Pastor and Vice-President

Date: _____4 - 17_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Blessed Sacrament Church, Hibbing a Minnesota parish religious corporation, as successor-in-interest to Immaculate Conception Church, Hibbing by reason of merger**

By: _____
     Reverend Gabriel Waweru

Title:  Pastor and Vice-President

Date: _____, 2018

Witness_____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Blessed Sacrament Church, Hibbing a Minnesota parish religious corporation, as successor-in-interest to St. Leo's Church, Hibbing by reason of merger**

By: _____
Reverend Gabriel Waweru

Title:   Pastor and Vice-President

Date: _____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Blessed Sacrament Church, Hibbing a Minnesota parish religious corporation**

By: _____
Reverend Gabriel Waweru

Title:   Pastor and Vice-President

Date: _____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Spirit Church, Virginia a Minnesota parish religious corporation, as successor-in-interest to Sacred Heart Church, Mountain Iron by reason of merger**

By: _____
     Reverend Brandon Moravitz

Title:  Pastor and Vice-President

Date: _____April 17_____, 2018

Witness _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Chisholm a Minnesota parish religious corporation**

By: _Fr. Anthony Craig_
　　　Reverend Anthony Craig

Title:　Pastor and Vice-President

Date: _O4 – 1 7_____, 2018

Witness: _Robert G. Zeller_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Francis' Church, Brainerd a Minnesota parish religious corporation**

By: _____ .

      Reverend Anthony Wroblewski

Title:  Pastor and Vice-President

Date: _____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Cecilia's Church, Nashwauk a Minnesota parish religious corporation, as successor-in-interest to St. Kevin's Church, Pengilly by reason of merger**

By: _____
　　　Reverend Seth Gogolin

Title:　Pastor and Vice-President

Date: _____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Francis' Church, Carlton
a Minnesota parish religious corporation**

By: _Rev. David Tushar_
       Reverend David Tushar

Title: Pastor and Vice-President

Date: _April 23_, 2018

Witness: _Betty J. Lee_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Andrew's Church, Brainerd
a Minnesota parish religious corporation**

By: _____

Reverend Daniel Weiske

Title:   Pastor and Vice-President

Date: _____4/26/18_____, 2018

Witness: _____Cynthia A Weiske_____

# EXHIBIT A

| Church | Location | Policy Start Date |
| --- | --- | --- |
| St. Paul's Church | Remer | 11/28/1979 |
| St. Paul's Church | Remer | 11/28/1976 |
| St Kevin's Church | Pengilly | 1/31/1977 |
| OL of Fatima | Garrison | 8/2/1977 |
| OL of Fatima | Garrison | 5/23/1971 |
| OL of Fatima | Garrison | 8/2/1977 |
| Immaculate Conception Church | Eveleth | 12/8/1976 |
| Resurrection Church | Eveleth | 9/27/1979 |
| St. Joseph's Church | Chisholm | 5/14/1978 |
| St. Joseph's Church | Chisholm | 5/14/1981 |
| St. Francis Church | Carlton | 11/15/1975 |
| St. Francis Church | Carlton | 11/15/1975 |
| St. Francis Church | Carlton | 11/15/1978 |
| St. Francis Church | Brainerd | 9/17/1977 |
| St. Francis Church | Brainerd | 9/17/1980 |
| St. Andrew's Church | Brainerd | 11/15/1979 |
| St. Andrew's Church | Brainerd | 11/15/1976 |
| Sacred Hearth Church | Mountain Iron | 12/10/1979 |
| Sacred Heart Church | Mountain Iron | 12/10/1976 |
| Immaculate Conception | Hibbing | 12/20/1977 |

| Church | | |
|---|---|---|
| | | |
| Blessed Sacrament Catholic Church | Hibbing | 7/1/1976 |
| St. Leo's Catholic Church | Hibbing | 1/1/1976 |

## Schedule 1

**Channeling Injunction.** In consideration of the undertakings of the Church Mutual Insurance Company Parties and the Protected Parties pursuant to their respective settlements with the Debtor, the payment of the Settlement Amount and the funding of the Trust, and other consideration, and to further preserve and promote the agreements between and among the Protected Parties and Church Mutual Insurance Company, and the protections afforded the Protected Parties and Church Mutual Insurance Company pursuant to Section 105 of the Bankruptcy Code:

a.    any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Documents as the sole and exclusive remedy for all holders of Channeled Claims; and

b.    all Persons who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any of the Protected Parties and Church Mutual Insurance Company Parties, including:

(i)    commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or Church Mutual Insurance Company Parties or against the property of any of the Protected Parties or Church Mutual Insurance Company Parties;

(ii)    enforcing, attaching, collecting or recovering, by any manner or means, from any Protected Parties, or from the property of any Protected Parties or Church Mutual Insurance Company Parties, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Protected Parties or Church Mutual Insurance Company Parties;

(iii)    creating, perfecting or enforcing any lien of any kind against any Protected Parties or Church Mutual Insurance Company Parties, or the property of any Protected Parties or Church Mutual Insurance Company Parties with respect to any such Channeled Claim; and

(iv)    asserting, implementing or effectuating any Channeled Claim of any kind against:

(1)   any obligation due any Protected Parties or Church Mutual Insurance Company Parties;

(2)   any Protected Parties or Church Mutual Insurance Company Parties; or

(3)   the property of any Protected Parties or Church Mutual Insurance Company Parties.

(v)   taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan; and

(vi)   asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or Church Mutual Insurance Company Parties or the property of the Protected Parties or Church Mutual Insurance Company Parties.

Provided, however, that as to the Protected Parties, this Channeling Injunction applies only to the extent such Claims are covered or allegedly covered under the Diocese Certificates or the Parish Certificates, and does not apply to such Claims to the extent such Claims are covered under any insurance policy issued by an insurer that is not one of the Church Mutual Insurance Company Parties, unless such other insurer has become a settling insurer under the Plan.

Except as otherwise expressly provided in the Plan and the Plan Documents, including the Trust, the provisions of this Section will further operate, as between all Protected Parties and Church Mutual Insurance Company Parties, as a mutual release of all Claims which any Settling Party may have against another Settling Party. The foregoing channeling provisions are an integral part of the Plan and are essential to its implementation.

## **Schedule 2**

**Supplemental Injunction Preventing Prosecution Of Claims Against Church Mutual Insurance Company Parties.**   Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Church Mutual Insurance Company Parties pursuant to the Settlement Agreement, including Church Mutual Insurance Company's purchase of the Parish Certificates from the Parishes free and clear of all interests pursuant to Section 363(f) of the Bankruptcy Code, any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Unknown Tort Claimants, Perpetrators, non-settling insurers, and all others holding interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Settlement Agreement) against any of the Protected Parties, Church Mutual Insurance Company Parties, or other Person covered under the Diocese Certificates or the Parish Certificates, and which relate to any Tort Claims that are covered or alleged to be covered under the Diocese Certificates or the Parish Certificates, or any insurance claims related to such Tort Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such interest against the Church Mutual Insurance Company Parties, including :

        (a)     Commencing or continuing in any manner any action or other proceeding against the Church Mutual Insurance Company Parties or the property of the Church Mutual Insurance Company Parties;

        (b)     Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Church Mutual Insurance Company Parties or the property of the Church Mutual Insurance Company Parties;

        (c)     Creating, perfecting, or enforcing any lien of any kind against the Church Mutual Insurance Company Parties or the property of the Church Mutual Insurance Company Parties;

        (d)     Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Church Mutual Insurance Company Parties or the property of the Church Mutual Insurance Company Parties; and,

        (e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

Any and all Persons holding Interests or Claims of any kind arising under the Parish Certificates shall be permanently enjoined from pursuing such Interests or Claims against the Church Mutual Insurance Company Parties.

This injunction does not enjoin, or operate as a release of, any Claim against any Person other than the Church Mutual Insurance Company Parties.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

          Debtor-in-Possession.

Case No.:  15-50792

Chapter 11

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, CHURCH MUTUAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

## **INTRODUCTION**

The above-referenced debtor submits this memorandum, in support of its Motion for an Order Approving Settlement Agreement between the Diocese, the Parishes, Church Mutual Insurance Company and the Official Committee of Unsecured Creditors (the "Motion).  The Court should approve the Settlement Agreement, attached to the Motion as **Exhibit A**, because it is in the best interests of the Diocese and the Diocese's bankruptcy estate.  The Settlement Agreement resolves all Tort Claims between Church Mutual, the Parishes, the Official Unsecured Creditors Committee and the Diocese.

## **ARGUMENT**

Compromise is favored by the law as a normal part of the reorganization process.  *In re Trism, Inc.*, 282 B.R. 662. 666 (B.A.P. 8th Cir. 2002).  Rule 9019 of the Federal Rules of Bankruptcy Procedure provides:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given to

> creditors, the United States Trustee, the debtor and indenture
> trustees as provided in Rule 2002 and to any other entity as the
> court may direct.

Fed. R. Bankr. P. 9019(a).

"A decision to approve or disapprove a proposed settlement under Bankruptcy Rule 9019 is within the discretion of the bankruptcy judge." *In re Trism, Inc.*, 282 B.R. at 666 (citing *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135-36 (8th Cir. 1984)).  Bankruptcy Rule 9019 vests a bankruptcy court with "broad authority to approve or disapprove all compromises and settlements affecting the bankruptcy estate." *In re Bates*, 211 B.R. 338, 343 (Bankr. D. Minn 1997).  In exercising its discretion, a court should consider the following factors:

1.      The probability of success in the litigation;

2.      The difficulties, if any, to be encountered in the matter of collection;

3.      The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending to it;

4.      The paramount interests of the creditors and a proper deference to their reasonable views in the premises; and

5.      Whether the conclusion of the litigation promotes the integrity of the judicial system.

*In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d at 1135-36 (citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929), and *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)); *In re Bates*, 211 B.R. at 343; *see also In re Farmland Indus., Inc.*, 289 B.R. 122 (B.A.P. 8th Cir. 2003).

Consideration of these factors allows a court to determine whether a settlement is "fair and equitable," *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

2

*Anderson*, 390 U.S. at 424, and in the best interests of the estate. *In re Trism, Inc.* 282 B.R. at 668. A court's function is not to ensure that the proposed settlement is the best possible settlement obtainable. Rather, the court must determine only whether the settlement falls below the lowest point on the range of reasonableness. *In re Hanson Indus., Inc.*, 88 B.R. 942, 945 (Bankr. D. Minn. 1988); *see also In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). In this instance, consideration of these factors compels the conclusion that the Settlement Agreement should be approved.

On June 24, 2016, the Diocese initiated the Coverage Litigation against Liberty Mutual Insurance Company, Catholic Mutual Relief Society of America, Fireman's Fund Insurance Company, Church Mutual Insurance Company, and the Continental Insurance Company (collectively, "the Insurers"). The Coverage Litigation has been complicated with procedural motions and involves interpretation of multiple insurance agreements and litigation of disputed legal positions and defenses.

The Diocese, Parishes, Insurers and Official Committee of Unsecured Creditors participated in two formal mediation sessions. Unfortunately, mediation did not result in a settlement. Rather, the parties have been engaged in motion practice, including procedural motions and motions for partial summary judgment. If a settlement is not reached, it may take years to conclude the Coverage Litigation.

In light of (i) the significant costs to the Diocese's estate to litigate its coverage claims against Church Mutual; (ii) the considerable time it would take to obtain a final determination of the Diocese's rights and claims under the Certificates; (iii) the risk that the Diocese may not prevail in litigation of the issues; (iv) the likelihood that the losing party would appeal any judgment, thus delaying ultimate resolution of the disputes potentially for years; and (v) the

3

desire to obtain promptly the maximum value from Church Mutual under the Certificates, the Diocese has determined that it is in the best interest of its estate and its creditors to reach a negotiated resolution of the dispute with Church Mutual.

**Probability of Success in Litigation**

Given the inherent uncertainty with respect to the outcome of the Coverage Litigation, this factor weighs heavily in favor of the approval of the Settlement Agreement. The Coverage Litigation involves interpretation of multiple insurance agreements and litigation of disputed legal theories and defenses. Church Mutual is a well-represented party with the motivation, the resources, and the demonstrated willingness to litigate the multiple significant coverage issues that arise in this complicated legal setting.

Although the Diocese is confident of the merits of its positions, there can be no guarantee that the Diocese would ultimately be successful in any Coverage Litigation. Moreover, there is the prospect that Coverage Litigation could continue for several years including appeals and the possibility that it could produce a mixed result for the Debtor.

**Likely Difficulties in Collection**

Absent settlement, it is highly possible that the Abuse Claims for which Debtor contends Church Mutual is responsible to afford coverage would be liquidated and paid over years. Resolution of the Coverage Litigation, including appeals, could take years. This factor weighs in favor of settlement.

**The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay**

The Coverage Litigation would involve the interpretation of many historical insurance agreements and requires the adjudication of disputed legal issues. The litigation is complicated, time consuming and expensive. Moreover, to access coverage, abuse claims would have to be

liquidated over years.  In the absence of the Settlement Agreement, Diocese anticipates that there will be a substantial delay in collecting insurance proceeds from Church Mutual.

**Interest of Creditors**

The Diocese, the Parishes, the Committee, and Church Mutual all support the Settlement Agreement.  The Settlement Agreement will provide survivors with a necessary mechanism for prompt recovery on their claims, without the expense or delay of proceeding within the tort system.

The Debtor has exercised its business judgment and concludes that it cannot reasonably justify the expense, delay and uncertainty of pursuing Coverage Litigation against Church Mutual.  The proposed settlement is well within the range of likely outcomes of the insurance coverage disputes and represents an appropriate compromise and settlement taking into account the costs, risks and potential rewards of litigation.  Far from falling "below the lowest point in the range of reasonableness," *Pacific Gas,* 304 B.R. at 417, payment of $250,000.00 by Church Mutual falls well above the lowest point; moreover, it results in a known outcome for the Diocese and will benefit the holders of all survivors.  For all of these reasons, approval of the Agreement is in the best interest of the estate and creditors.

## <u>CONCLUSION</u>

The factors recognized in the Eighth Circuit for the approval of compromises and settlements weigh in favor of the Court approving the Settlement Agreement.  Therefore, the Diocese respectfully requests that the Court grant the Motion and enter an Order approving the Settlement Agreement.

[SIGNATURE PAGE TO FOLLOW]

5

Dated: June 5, 2018

**ELSAESSER ANDERSON**

/s/ J. Ford Elsaesser
Bruce A. Anderson (admitted *pro hac vice*)
J. Ford Elsaesser (admitted *pro hac vice*)
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Phone: 208-263-8517
brucea@eaidaho.com
ford@eaidaho.com


-and-

**GRAY PLANT MOOTY MOOTY &
BENNETT, P.A.**

/s/ Phillip L. Kunkel
Phillip L. Kunkel (#058981)
Abigail M. McGibbon (#0393263) 101
West St. Germain
Suite 500
St. Cloud, MN 56301
Phone: 320-202-5335
phillip.kunkel@gpmlaw.com
abigail.mcgibbon@gpmlaw.com

*Attorneys for the Diocese of Duluth*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

                                  Case No.: 15-50792

Diocese of Duluth,

                                  Chapter 11

            Debtor-in-Possession.

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on June 5, 2018, the *NOTICE OF HEARING AND MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, CHURCH MUTUAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS* was filed in the above-captioned matter using the CM/ECF system, which sent a Notice of Electronic Filing to the following person(s):

Nancy D. Adams on behalf of Counter-Claimant and Defendant Liberty Mutual Group, Inc.
ndadams@mintz.com

Nancy D. Adams on behalf of Interested Party Liberty Mutual Insurance Company
ndadams@mintz.com

Jeffrey R Anderson on behalf of Interested Party Certain Personal Injury Creditors
jeff@andersonadvocates.com, therese@andersonadvocates.com;erin@andersonadvocates.com

Phillip J Ashfield on behalf of Creditor Committee Official Committee of Unsecured Creditors
phillip.ashfield@stinsonleonard.com, laura.schumm@stinsonleonard.com

Teri E. Bentson on behalf of Counter-Claimant Liberty Mutual Group
teri.bentson@libertymutual.com

Kristi K. Brownson on behalf of Defendant, Counter-Claimant and Cross Defendant LIBERTY MUTUAL GROUP, INC.
kbrownson@brownsonlinnihan.com, lwaskosky@brownsonlinnihan.com

Kristi K. Brownson on behalf of Interested Party Liberty Mutual Insurance Company
kbrownson@brownsonlinnihan.com, lwaskosky@brownsonlinnihan.com

Edwin H. Caldie on behalf of Creditor Committee Official Committee of Unsecured Creditors
Edwin.Caldie@stinsonleonard.com, laura.schumm@stinsonleonard.com

David C. Christian, II on behalf of Interested Party Continental Insurance Company
dchristian@davidchristianattorneys.com

Benjamin J. Court on behalf of Creditor Committee Official Committee of Unsecured Creditors
benjamin.court@stinson.com, aong.moua@stinson.com;laura.schumm@stinson.com

Everett J Cygal on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
ecygal@schiffhardin.com

Louis T DeLucia on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
ldelucia@schiffhardin.com, jacquaviva@schiffhardin.com;afiedler@schiffhardin.com

Alyson M Fiedler on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
afiedler@schiffhardin.com, jacquaviva@schiffhardin.com

Michael G Finnegan on behalf of Interested Party Certain Personal Injury Creditors
mike@andersonadvocates.com, therese@andersonadvocates.com;erin@andersonadvocates.com

Charles E. Jones on behalf of Defendant, Counter-Claimant and Cross Defendant FIREMAN'S
FUND INSURANCE COMPANY
charles.jones@lawmoss.com, Brenda.murphy@lawmoss.com

John D Kelly on behalf of Interested Party Parishes of Diocese of Duluth
jdk@hanftlaw.com, saw@hanftlaw.com;dar@hanftlaw.com

Jeffrey D Klobucar on behalf of Interested Party Continental Insurance Company
jklobucar@bassford.com, mmooney@bassford.com

Robert T. Kugler on behalf of Creditor Committee Official Committee of Unsecured Creditors
robert.kugler@stinson.com, laura.schumm@stinson.com

Phillip Kunkel on behalf of Debtor 1 Diocese of Duluth
phillip.kunkel@gpmlaw.com

Connie A. Lahn on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
clahn@btlaw.com, tpaulson@btlaw.com;marobinson@btlaw.com;pgroff@btlaw.com

Greta A. Matzen on behalf of Continental Insurance Group
greta.matzen@cna.com

2

Abigail M McGibbon on behalf of Debtor 1 Diocese of Duluth
abigail.mcgibbon@gpmlaw.com


Laura K. McNally on behalf of Interested Party Continental Insurance Company
lmcnally@loeb.com, chdocket@loeb.com;tmcintyre@loeb.com

Brittany Mitchell on behalf of Creditor Committee Official Committee of Unsecured Creditors
brittany.mitchell@stinson.com, laura.schumm@stinson.com

James R. Murray on behalf of Debtor 1 Diocese of Duluth
jmurray@blankrome.com

Christian A. Preus on behalf of Cross Defendant CHURCH MUTUAL INSURANCE
COMPANY
cpreus@bassford.com, pcarter@bassford.com

Christian A. Preus on behalf of Defendant CHURCH MUTUAL INSURANCE COMPANY
cpreus@bassford.com, pcarter@bassford.com

Beth A. Jenson Prouty on behalf of Defendant CHURCH MUTUAL INSURANCE COMPANY
bprouty@bassford.com, dpelzel@bassford.com

Robert Raschke on behalf of U.S. Trustee US Trustee
robert.raschke@usdoj.gov

Andrea E. Reisbord on behalf of Continental Insurance Company
areisbord@bassford.com

Daniel J Schufreider on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
dschufreider@schiffhardin.com

David M Spector on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
dspector@schiffhardin.com,
jacquaviva@schiffhardin.com;ecygal@schiffhardin.com;cmethven@schiffhardin.com

Laura B Stephens on behalf of Counter-Claimant Liberty Mutual Group
lbstephens@mintz.com

Laura B Stephens on behalf of Interested Party Liberty Mutual Insurance Company
lbstephens@mintz.com

Scott E. Turner on behalf of Continental Insurance Group
scott.turner@cna.com

US Trustee
ustpregion12.mn.ecf@usdoj.gov

Jeanne H. Unger on behalf of Counter-Claimant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Jeanne H. Unger on behalf of Cross-Claimant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Jeanne H. Unger on behalf of Defendant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Darin J Van Thournout on behalf of Interested Party Continental Insurance Company
dvanthournout@dca.law

Kevin J Walsh on behalf of Counter-Claimant Liberty Mutual Group
kwalsh@mintz.com, jcannata@mintz.com

Sarah J Wencil on behalf of U.S. Trustee US Trustee
Sarah.J.Wencil@usdoj.gov

Jared Zola on behalf of Debtor 1 Diocese of Duluth
jzola@blankrome.com, nylitigationdocketing@blankrome.com;jcarter@blankrome.com

Mary F. Sieling on behalf of Bankruptcy Trustee
mary@mantylaw.com

4

AND I FURTHER CERTIFY that on June 5, 2018, I served the same on the Non-ECF parties listed below by U.S. mail, postage prepaid:

IRS DISTRICT COUNSEL
380 JACKSON STREET, SUITE 650
SAINT PAUL, MN 55101

INTERNAL REVENUE SERVICE
WELLS FARGO PLACE
30 7TH STREET
MAIL STOP 5700
ST PAUL MN 55101

MN DEPARTMENT OF REVENUE
COLLECTION ENFORCEMENT
551 BANKRUPTCY SECTION
600 NORTH ROBERT STREET
SAINT PAUL, MN 55101

OFFICE OF THE U.S. ATTORNEY
600 US COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415

Dated:  June 5, 2018

*/s/ Abigail M. McGibbon*
Abigail M. McGibbon

5

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

                                   Case No.:  15-50792

Diocese of Duluth,

                                   Chapter 11

            Debtor-in-Possession.

---

## ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, CHURCH MUTUAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

This case came before the Court on the debtor's Motion for an Order Approving the Settlement Agreement, Release, and Certificate Buyback between Debtor, The Parishes, Church Mutual Insurance Company and the Official Committee of Unsecured Creditors.

Based on the Motion, all files, records and proceedings herein:

IT IS HEREBY ORDERED:

    1.      The Motion is granted.

    2.      The Settlement Agreement, attached as **Exhibit A** to the Motion, is hereby approved.


                                            _____

                                          United States Bankruptcy Judge