## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

        Debtor-in-Possession.

Case No.:  15-50792

Chapter 11

## NOTICE OF HEARING AND MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, THE CONTINENTAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

TO:    The parties specified in Local Rule 9013-3(a)(2) and the parties identified on the attached service list.

1.    The above-captioned debtor moves the Court for the relief request below and gives notice of a hearing.

2.    The Court will hold a hearing on the Motion at **10:30 a.m. on Thursday, June 28, 2018**, before the Honorable Robert J. Kressel in Courtroom 8 West at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota.

3.    Any response to this Motion must be filed and served no later than **Friday, June 22, 2018**, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays).  **UNLESS A RESPONSE OPPOSING THIS MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This is a core proceeding.

5.     The petition commencing the Diocese's chapter 11 case was filed on December 7, 2015.  The case is now pending in this Court.

6.     This Motion arises under section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").  This Motion is filed under Fed. R. Bankr. P. 9019 and Local Rules 2002-1, 9013-1 and 9013-2.  The Diocese requests an order: (i) approving the Settlement Agreement, Release, and Certificate Buyback (the "Settlement Agreement") between the Diocese, the Parishes named therein (the "Parishes"), The Continental Insurance Company ("Continental") and the Official Committee of Unsecured Creditors; and (ii) granting such other relief as is just and proper.

## GENERAL BACKGROUND

7.     On December 7, 2015, the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Diocese has continued to manage its business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An Official Committee of Unsecured Creditors has been appointed in these cases.

8.     General information about the Diocese's business and the events leading up to the Petition Date can be found in the Affidavit of the Very Reverend Father James B. Bissonette [Docket No. 8].

## BACKGROUND SPECIFIC TO MOTION

9.     Over the last several decades, some clergy members in the Diocese have violated the sacred trust placed in them by children, their families and the Diocese by committing acts of sexual abuse.  The Diocese filed its chapter 11 bankruptcy case in an effort to compensate, as fairly and equitable as possible, all survivors of such abuse.

10. The Diocese purchased historical insurance policies that it believes will provide some of the dollar amounts necessary to compensate the survivors. To determine the extent and applicability of the available coverage, the Diocese initiated an adversary proceeding (the "Coverage Litigation") seeking declaratory judgment against its various insurance carriers, including Continental. [Minn. Bankr. Case No. 16-05012]. The Coverage Litigation is now pending in the United States District Court before the Honorable Donovan Frank as Case No. 17-cv-03254.

11. Continental operates in the state of Minnesota and the Diocese maintains that Continental sold certificates ("Policies") providing coverage to the Diocese and the Parishes for certain time frames during which survivors allege abuse.

12. The Diocese and the Parishes maintain that the Policies require Continental to pay, on behalf of the Diocese, all sums that the Diocese became legally obligated to pay as a result of bodily injury, as long as any part of the injury took place during the policy period. They also maintain that the Policies require Continental to pay all defense costs and expenses, including attorney's fees, incurred by the Diocese and the Parishes in the investigation and defense of the underlying actions and claims alleged by the victims.

13. The Diocese and the Parishes maintain that they timely notified Continental of the underlying actions and claims and have fulfilled their duties and conditions under the Policies. As a result, the Diocese and the Parishes maintain that they are entitled to all benefits provided by the Policies.

14. To resolve the alleged obligations of Continental under the Policies, the Committee, the Diocese, the Parishes and Continental have conferred and have entered into the Settlement Agreement. The Settlement Agreement is attached as **Exhibit A.** The material

provisions of the Settlement Agreement are as follows (capitalized terms used herein have the same meaning assigned to them in the Settlement Agreement):

- The Diocese and Parishes shall sell, convey, transfer and assign any and all interest they may have in Parish Policies to Continental;
- CAN, the Diocese and the Parishes shall exchange global releases for all Claims, except as otherwise provided in the Settlement Agreement;
- The Parties shall exchange global releases for any and all Tort Claims, including Future Tort Claims;
- A Channeling Injunction and a Supplemental Injunction shall be in the Diocese's Plan of Reorganization;
- Continental will deliver a Settlement Amount in the amount of fifteen million dollars ($15,000,000.00), which amount shall be paid to the Diocese for the benefit of Tort Claimants;
- The settlement is contingent and conditioned on the confirmation of a consensual Plan of Reorganization agreed to by all Parties.

15.     The Diocese has determined that it is in the best interest of its estate and its creditors to reach a negotiated resolution of the dispute with Continental.

16.     The Diocese has conferred with the Parishes and believes the terms of the Settlement Agreement to be acceptable to the Parishes.  A fully executed Settlement Agreement will be filed prior to the hearing on this Motion.

17.     Pursuant to Local Rule 9013-2(a), this Motion is verified and is accompanied by a Memorandum, Proposed Order and proof of service.

18.     Pursuant to Local Rule 9013-2(c), the Diocese gives notice that it may, if necessary, call Father James B. Bissonette, the Vicar General of the Diocese to testify regarding the facts set forth in this Motion.

WHEREFORE, the Diocese respectfully requests that the Court enter an order: (i) approving the Settlement Agreement, Release, and Certificate Buyback between the Diocese, CaNA, the Parishes and the Official Committee of Unsecured Creditors; and (ii) granting such other and further relief as the Court deems just and equitable.

4

Dated: June 12, 2018

**ELSAESSER ANDERSON**

/s/ *J. Ford Elsaesser*
Bruce A. Anderson (admitted *pro hac vice*)
J. Ford Elsaesser (admitted *pro hac vice*)
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Phone: 208-263-8517
brucea@eaidaho.com
ford@eaidaho.com

-and-

**GRAY PLANT MOOTY MOOTY &
BENNETT, P.A.**

/s/ *Phillip L. Kunkel*
Phillip L. Kunkel (#058981)
Abigail M. McGibbon (#0393263)
101 West St. Germain
Suite 500
St. Cloud, MN 56301
Phone: 320-202-5335
phillip.kunkel@gpmlaw.com
abigail.mcgibbon@gpmlaw.com

*Attorneys for the Diocese of Duluth*

## VERIFICATION

I, Father James B. Bissonette, the Vicar General of the Diocese of Duluth, based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Date:    June 12, 2018          Signed: _Reverend   James B. Bissonette_

**EXHIBIT A**

**(Settlement Agreement)**

## SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("Settlement Agreement") is hereby made by, between and among the Diocese Parties (as defined in Section 1.1.11), the Parish Parties (as defined in Section 1.1.19), the Committee (as defined in Section 1.1.9), and The Continental Insurance Company ("Continental") Parties (as defined in Section 1.1.8).

## RECITALS

WHEREAS, numerous individuals have asserted certain Tort Claims (as defined in Section 1.1.27) against the Diocese (as defined in Section 1.1.10) and Parishes (as defined in Section 1.1.18);

WHEREAS, the Continental Parties or their predecessors issued, allegedly issued or may have issued the Diocese Policies (as defined in Section 1.1.12) providing certain coverage to the Diocese Parties;

WHEREAS, certain disputes between the Diocese Parties and the Continental Parties have arisen and/or may arise in the future concerning Continental Parties' position regarding the nature and scope of their responsibilities, if any, to provide coverage to the Diocese Parties under the Diocese Policies in connection with Tort Claims (the "Coverage Disputes");

WHEREAS, the Diocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (Case No. 15-50792) (the "Reorganization Case") on December 7, 2015 (the "Petition Date");

WHEREAS, the Diocese Parties and the Continental Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Disputes and all other disputes between and among them;

WHEREAS, through this Settlement Agreement, the Diocese Parties, Parish Parties and Committee intend to provide the Continental Parties with the broadest possible release of all Tort Claims, including all Unknown Tort Claims, that occurred or may have arisen prior to the effective date of the Plan (as defined in Section 1.1.22);

WHEREAS, through this Settlement Agreement, the Diocese Parties, Parish Parties, and the Continental Parties also wish to effect a sale of the Dicoese Policies (as defined in Section 1.1.12) pursuant to 11 U.S.C. § 363(b) and (f), and to provide the Continental Parties with the broadest possible release and buyback with respect to the Policies, resulting in Continental Parties having no obligations now, or in the future, to the Diocese Parties, the Parish Parties, or any of their creditors; and

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the United States Bankruptcy Court for the District of Minnesota and any other court in which the Reorganization

Case may be pending or that has jurisdiction over the Reorganization Case (the "Bankruptcy Court"), the Parties hereby agree as follows:

## 1. DEFINITIONS

1.1   As used in this Settlement Agreement, the following terms shall have the meanings set forth below. Capitalized terms not defined below or herein shall have the meanings given to them in the Bankruptcy Code.

1.1.1   "Abuse" means (i) any actual or alleged sexual conduct, misconduct, abuse, or molestation, including actual or alleged "sexual abuse" as that phrase is defined in Minnesota Statutes § 541.073(1); (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

1.1.2   "Approval Order" means the order granting the Approval Motion described in Section 2 of this Settlement Agreement and providing the relief described in Section 4.8 of this Settlement Agreement in form and substance acceptable to Continental in its sole discretion.

1.1.3   "Bankruptcy Orders" means collectively, the UCR Order, the Approval Order and the Plan Confirmation Order.

1.1.4   "Channeled Claim" means any Tort Claim against any of the Protected Parties, Continental Parties, or any Entity covered by any policy issued, or allegedly issued, by any of the Continental Parties to the extent such Tort Claim arises from the same injury or damages asserted as a Tort Claim against the Protected Parties or Continental Parties.   Notwithstanding the foregoing, Channeled Claims do not include Claims against (a) an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim, (b) a diocese other than the Diocese itself, or (c) a religious order.

1.1.5   "Claim" means any past, present or unknown claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, including Tort Claims, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other claim within the definition of "claim" in section 101(5) of the Bankruptcy Code.

2

1.1.6   "Claim Filing Date" means May 25, 2016.

1.1.7   "Continental" means The Continental Insurance Company.

1.1.8   "Continental Parties" means The Continental Insurance Company and each of its past, present and future parents, subsidiaries, affiliates, and divisions, each of its respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of its respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, and each of its respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with it.

1.1.9   "Committee" means the Official Committee of Unsecured Creditors appointed in the Reorganization Case, pursuant to an Order of the Bankruptcy Court entered on December 28, 2015.

1.1.10  "Diocese" means the Diocese of Duluth and its estate (pursuant to section 541 of the Bankruptcy Code), and its predecessors, successors, and assigns.

1.1.11  "Diocese Parties" means collectively the Diocese and: (i) each of the past, present, and future parents, subsidiaries, merged Entities, divisions, and acquired Entities of the Diocese; (ii) any and all named covered party, covered party, and additional covered party under the Diocese Policies, including any and all past and present parishes of or in the Diocese (as applicable); (iii) each of the foregoing Entities' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired Entities; (iv) each of the foregoing Entities' respective predecessors, successors, and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Entities identified in the foregoing subsections (i)-(iv), in their capacity as such.  Nothing in the foregoing is intended to suggest that any such Entities are "employees" or agents of the Diocese or subject to its control. Diocese Parties does not include (a) any individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim, (b) any archdiocese (including the Archdiocese of St. Paul and Minneapolis), (c) any diocese other than the Diocese itself, or (d) any religious order.

1.1.12  "Diocese Policies" mean all known and unknown binders, certificates, or policies of insurance in existence before the Effective Date of this Settlement Agreement that were issued, or allegedly issued, by any of the Continental Parties to any of the Diocese Parties and that actually, allegedly or might afford coverage with respect to any Tort Claim. "**Diocese Policies**" does not include any binder, certificate, or policy of insurance that was issued to any archdiocese (including the Archdiocese of St. Paul and Minneapolis), diocese other than the Diocese itself, any religious order, or

other Entity besides the Diocese Parties or the Parish Parties, as the first or primary named insured and that also provides coverage to the **Diocese Parties** as additional insureds or additional named insureds.

1.1.13   "<u>Effective Date</u>" means the date on which all conditions precedent to this Settlement Agreement are satisfied.

1.1.14   "<u>Entity</u>" shall have the meaning ascribed in 11 U.S.C. § 101(15)

1.1.15   "<u>Extra-Contractual Claim</u>" means any Claim against any of the Continental Parties based, in whole or in part, on allegations that any of the Continental Parties acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of any of the Continental Parties of any type for which the claimant seeks relief other than coverage or benefits under a policy of insurance.  Extra-Contractual Claims include: (i) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Continental Parties' handling of any Claim or any request for insurance coverage, including any request for coverage for any Claim, including any Tort Claim; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with the Diocese Policies and any duties arising therefrom, including any duty to defend the Diocese Parties or Parish Parties against any Tort Claims; and (iii) the conduct of the Parties with respect to the negotiation of, entry into, and efforts to obtain approval of this Settlement Agreement.

1.1.16   "<u>Final Order</u>" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal, review, or petition for a writ has been taken, (i) it has been resolved and no longer remains pending, and the time to seek any reconsideration, amendment, or further review of such resolution has expired, or (ii) an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Settlement Agreement.

1.1.17   "<u>Interests</u>" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any claims to coverage or the proceeds of the Policies and any rights of contribution, indemnity, defense, subrogation, or similar relief.

1.1.18   "<u>Parishes</u>" means all parishes listed on <u>Exhibit A</u>.

4

1.1.19  "Parish Parties" means the Parishes and (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired Entities of any Parishes; (ii) any and all named covered party, covered party, and additional covered party under the Policies; (iii) each of the foregoing Entities' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired companies; (iv) each of the foregoing Entities' respective predecessors, successors, and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Entities identified in the foregoing subsections (i)-(iv), in their capacity as such. Nothing in the foregoing is intended to suggest that any such Entities are "employees" or agents of the Parishes or subject to their control.  Parish Parties does not include (a) an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim, (b) a diocese other than the Diocese itself, or (c) a religious order.

1.1.20  "Parties" means the Diocese Parties, Continental Parties, Parish Parties, and Creditors' Committee, and "Party" refers to them individually.

1.1.21  "Person" shall have the meaning ascribed in 11 U.S.C. § 101(41).

1.1.22  "Plan" refers to the Diocese's chapter 11 plan of reorganization and any amendment thereto, as approved and confirmed by Final Order of the Bankruptcy Court, and that is consistent with the Settlement Agreement, and containing such language and provisions as are acceptable to Continental in its sole discretion.

1.1.23  "Protected Parties" means any of the Diocese Parties, the Reorganized Debtor (as shall be defined in the Plan), and the Parish Parties.  Protected Parties does not include (a) an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim, (b) a diocese other than the Diocese itself, or (c) a religious order.

1.1.24  "Related Insurance Claim" means (i) any Claim by any Entity against any of the Continental Parties for defense, indemnity, contribution, subrogation, or similar relief that, directly or indirectly, arises from, relates to, or is in connection with a Tort Claim; and (ii) any Extra-Contractual Claim that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Claim that, directly or indirectly, arises out of, relates to or is in connection with any of the Continental Parties' handling of any Tort Claim.

1.1.25  "Reorganized Debtor" shall have the meaning ascribed in the Plan, but for purposes hereof, shall mean the Diocese after confirmation of the Plan.

1.1.26  "Settlement Amount" means the sum of $15,000,000.00 to be paid to the Diocese for the benefit of Tort Claimants (but excluding Unknown Tort Claims) by

5

Continental after satisfaction of all Conditions Precedent, and pursuant to the confirmed Plan.

1.1.27 "Tort Claim" means any Claim against any of the Protected Parties or Continental Parties that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the effective date of the Plan, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; respondeat superior; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, Continental Parties or any other Person for whom any of the Protected Parties or Continental Parties are allegedly responsible, including any such Claim asserted against any of the Parties in connection with the Diocese's reorganization case. "Tort Claim" includes any Unknown Tort Claim.

1.1.28 "Tort Claimant" means any Person holding a Tort Claim, including but not limited to any Claims articulated or set forth in proofs of claim filed with the Bankrutpcy Court in the Reorganization Case.

1.1.29 "Trust" shall have the meaning ascribed in the Plan, but for purposes hereof, shall mean the trust to which the Channeled Claims are channeled.

1.1.30 "Trustee" shall have the meaning ascribed in the Plan, but for purposes hereof, shall mean the trustee of the Trust appointed by the Bankruptcy Court.

1.1.31 "UCR" means any Person appointed by the Bankruptcy Court or District Court, as applicable, as an unknown claimants representative or future claimants representative in connection with the Reorganization Case.

1.1.32 "Unknown Tort Claim" means any Tort Claim that is neither filed, nor deemed filed, by the Claim Filing Date and is held by an individual who (i) was continuously between the Claim Filing Date and the Plan's effective date under a disability recognized by Minn. Stat. § 541.15, subds. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) has a Tort Claim that was barred by the statute of limitations as of the Claim Filing Date but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revises previously time-barred Tort Claims; or (iii) claims he or she was incapable of knowing of the existence of his or her Tort Claim as of the Claim Filing Date for any reason, including alleged memory repression or suppression; or as otherwise defined by subsequent order of the Bankruptcy Court.

6

## 2. THE REORGANIZATION CASE AND PLAN FOR REORGANIZATION

2.1    Not later than five (5) days after the last Party signs this Settlement Agreement, the Diocese shall file a motion in the Bankruptcy Court (the "Approval Motion") in form and substance acceptable to the Continental Parties and the Diocese, seeking approval of this Settlement Agreement and authorization for the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement.

    2.1.1    The Diocese shall provide written notice of the Approval Motion to (i) all Tort Claimants to the extent they are known by the Diocese, (ii) counsel, if any, for the Committee, (iii) the UCR, (iv) all Persons who have filed notices of appearance in the Reorganization Case, and (v) all Persons known to have provided general or professional liability insurance to the Diocese Parties.  The Diocese shall serve all claimants identified above at the address shown on their proofs of claim or to their counsel of record or, if no proof of claim was filed, then at the address on the Diocese's schedules.  The Diocese shall also serve the attorney for each Tort Claimant.  The Diocese shall serve known Tort Claimants even if not scheduled or the subject of a proof of claim, to the extent known to the Diocese or ascertainable by the Diocese after reasonable investigation.  The Diocese shall also serve any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-defendant.  The Diocese shall provide notice of the Approval Motion in a form and substance acceptable to Continental.

2.2    If any Person files an objection to the Approval Motion, the Diocese shall file a written response, in a form acceptable to the Continental Parties, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the and Approval Order.  The Parties will cooperate with the Diocese, including making all appropriate submissions.

2.3    The Diocese shall file a proposed Plan, including all exhibits, schedules and related documents, which shall be in all respects consistent with this Settlement Agreement and shall not deprive the Continental Parties of any right or benefit under this Settlement Agreement or otherwise adversely affect the Interests of the Continental Parties under this Settlement Agreement.  To avoid doubt, the Committee's reservation of rights under the preceding sentence shall include, but not be limited to, the ability to seek recovery from any other insurers with respect to any claims not satisfied in full by this Settlement Agreement.

    2.3.1    The Plan shall include an injunction (the "Channeling Injunction") in substantially the form attached as Schedule 1 to this Settlement Agreement, with only

7

such modifications as are acceptable to the Continental Parties, the Diocese, the Parishes and the Committee, pursuant to section 105 of the Bankruptcy Code, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert Claims from taking any action, directly or indirectly for purposes of asserting, enforcing or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to a trust or trusts established pursuant to the Plan ("Trust"), to which all Channeled Claims are channeled as the sole and exclusive source of payment of any such Channeled Claims.

2.3.2   The Plan shall also include an injunction (the "Supplemental Injunction") in substantially the form attached as Schedule 2 to this Settlement Agreement, with only such modifications as are acceptable to the Continental Parties, the Diocese, the Parishes and the Committee, pursuant to sections 105(a) and 363 of the Bankruptcy Code.

2.4   In the Reorganization Case, the Diocese shall seek and obtain entry of an order in form and substance acceptable to the Continental Parties that: (i) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (ii) contains the Channeling Injunction; (iii) contains the Supplemental Injunction; (iv) provides that this Settlement Agreement is binding on the Trust, the Reorganized Debtor, and any successors of the Trust or Reorganized Debtor; and (v) provides all protections to the Continental Parties against Tort Claims that are afforded to settling insurers under the Plan (the "Plan Confirmation Order").

2.4.1   The Plan and Plan Confirmation Order must be in all respects consistent with this Settlement Agreement and contain no provisions that diminish or impair the benefit of this Settlement Agreement to any of the Continental Parties.

2.4.2   In seeking to obtain the Plan Confirmation Order, the Diocese must: (i) seek a confirmation hearing on an appropriately timely basis; (ii) urge the Bankruptcy Court to overrule any objections that would affect the rights and benefits afforded the Continental Parties under this Settlement Agreement and confirm the Plan; and (iii) take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.4.3   Prior to entry of the Plan Confirmation Order, the Diocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Tort Claim.  If the Bankruptcy Court lifts the stay as to any Tort Claim prior to the Plan Confirmation Order, the Diocese shall defend itself against that Tort Claim and comply with the terms of the stay relief order.  If the Diocese fails to defend that Tort Claim,

8

then the Continental Parties shall have the right, but not the duty, to defend and/or indemnify the Diocese against that Tort Claim and any costs incurred by the Continental Parties in defending and/or indemnifying the Diocese shall be deducted from the Settlement Amount.  In such event, the Diocese will cooperate with the Continental Parties in the defense and/or indemnification of such Tort Claim.

2.5    The Diocese agrees that the Trust and Plan shall provide that the assets in the Trust shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for any payments ("Conditional Payments") made pursuant to Section 1395y(b)(2)(B) of the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 4.11.1 *et seq.* ("MSPA") applicable to any Tort Claimant who claims he or she is eligible to receive, is receiving, or has received Medicare benefits ("Medicare Beneficiary") and, after satisfaction thereof, to such Medicare Beneficiaries and Tort Claimants.  Except for the payment of the Settlement Amount, the Continental  Parties shall not be obligated to make any other payments, including any payments to the Trust.

2.6    The Diocese Parties will undertake all reasonable actions and cooperate with the Continental Parties in connection with their reinsurers.

2.7      The Parties shall cease all litigation activities against each other in the Coverage Suits; provided, however, that each Party may take whatever steps that, in its sole judgment, are necessary to defend its interests as long as it remains a party in the Coverage Suits.

2.8      The Diocese shall use its reasonable efforts to obtain the dismissal of other Claims, if any, against the Continental Parties by any other insurer in the Coverage Suits.

2.9      The Parties covenant not to sue each other until (a) the Bankruptcy Orders become Final Orders, at which time this covenant is superseded by the releases provided in Section 4, or (b) the date on which this Settlement Agreement is terminated.  As of the Effective Date, the Diocese Parties:

> 2.9.1      will withdraw all outstanding tenders of Claims to the Continental Parties for defense and indemnity;
> 2.9.2      will not tender any Claims to the Continental Parties; and
> 2.9.3      will not request the Continental Parties to fund any judgments, settlements, or defense costs.

2.10    The Continental Parties shall have no obligation to pay, handle, object, or otherwise respond to any Claim, unless this Settlement Agreement is terminated.

9

### 3. PAYMENT OF THE SETTLEMENT AMOUNTS AND DISMISSAL OF COVERAGE SUITS

3.1    Conditions Precedent. The Settlement Agreement shall become effective and shall be binding on the Parties and Continental will pay the Settlement Amount only after the following conditions have first been satisfied:  (a) entry of one or more Final Orders (i) granting the Approval Motion in its entirety, with the form and content of the motion and notice thereof acceptable to Continental in its sole discretion; and (ii) approving the form and content of notice of the Plan, ballots and disclosure statement relating to the Plan, including publishing twice in a national publication and such other publications to be determined by the Parties and consistent with the terms of this Settlement Agreement; (b) entry of a Final Order approving the form and content of the Tort Claimants' ballot, each to be satisfactory to Continental; (c) entry of a Final Order confirming a Plan consistent with the Settlement Agreement, containing such terms and conditions as are acceptable to Continental; (d) execution of the Settlement Agreement by all Parties in form and substance acceptable to the Parties; (e) entry of a Final Order approving of the Channeling Injunction and the Supplemental Injunction in favor of the Continental Parties and the Protected Parties in form and substance acceptable to the Parties; and (f) entry of a Final Order approving of the releases in favor of the Continental Parties and the Protected Parties, as are acceptable to the Parties.

3.2    In full and final settlement of (i) all responsibilities for any and all Tort Claims that occurred or may have arisen prior to the effective date of the Plan and any and all Unknown Tort Claims; and (ii) in consideration of the sale of the Diocese Policies free and clear of all Claims and Interests of any Person, Continental shall pay the Settlement Amount within thirty (30) days after Continental receives written notice from the Diocese that the Bankruptcy Orders are Final Orders and directions as to transmission of the payment.

3.3    The Parties agree that the Settlement Amount is the total amount the Continental Parties are obligated to pay on account of (i) any and all Claims, including all Tort Claims and all Unknown Tort Claims, that arise under, arising out of, relating to, or in connection with the Diocese Policies (including Channeled Claims, any reimbursement obligations for Conditional Payments under the MSPA, and any Extra-Contractual Claims); and (ii) any and all Claims and Interests, whether known or unknown, past, present or future, that arise under, arising out of, relating to, or in connection with the Diocese Policies.

3.4    The Parties further agree that (i) under no circumstance will the Continental Parties ever be obligated to make any additional payments in excess of the Settlement Amount to or on behalf of anyone in connection with the any Tort Claims covered or allegedly covered under the Diocese Policies, including any Channeled Claims and any Extra-Contractual Claims; (ii) under no circumstance will the Continental Parties ever be obligated to make any additional payments to or on behalf of the Diocese Parties or any Tort Claimants in connection with any coverage under any Diocese Policies, with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Tort Claims, including any Channeled Claims and any Extra-Contractual Claims; and (iii) all limits of liability of the Diocese Policies, regardless of how these Policies identify or describe those

10

limits, including all per person, per occurrence, per claim, and aggregate limits, shall be deemed fully and properly exhausted.

3.4.1    The Parties agree and jointly represent that (i) the consideration to be provided by the Continental Parties pursuant to this Settlement Agreement (including the Settlement Amount) constitutes fair and reasonable exchanges for the consideration granted to the Continental Parties in this Settlement Agreement (including the releases set forth below), and (ii) the consideration to be provided by the Diocese Parties and Parish Parties to the Continental Parties pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable exchange for the consideration granted to the Diocese Parties and Parish Parties in this Settlement Agreement (including the Settlement Amount).  The Continental Parties are not acting as volunteers in paying the Settlement Amount, and the Continental Parties' payment of the Settlement Amount reflects potential liabilities and obligations to the Diocese and Parishes of amounts the Continental Parties allegedly are obligated to pay on account of any and all Claims.

3.5    Within ten (10) days after the Continental Parties pay the Settlement Amount, the Diocese shall sign and file any necessary papers to have dismissed any action pending in connection with the Coverage Disputes, and the Diocese shall file a stipulation, that is signed by all Parties that are parties to the Coverage Dispute action(s), that dismisses with prejudice any and all claims asserted by any of the Parties against any of the other Parties.

## 4.    RELEASES AND SALE FREE AND CLEAR

4.1    <u>Diocese Parties Release of Continental Parties</u>.  Upon payment by the Continental Parties of the Settlement Amount, the Diocese Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Continental Parties and any of their reinsurers or retrocessionaires from any and all past, present, and unknown Claims that, occurred or may have arisen prior to the effective date of the Plan and that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties, including any Channeled Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all unknown Claims that are based in whole or in part on the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties.

4.2    <u>Continental Release of Diocese Parties</u>.  Upon payment by the Continental Parties of the Settlement Amount, the Continental Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Diocese Parties from any and all past, present, and unknown Claims that, occurred or may have arisen prior to the effective date of the Plan that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly

11

issued, by any of the Continental Parties, including any Channeled Claims, Extra-Contractual Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all unknown Claims that are based in whole or in part on the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties.

4.3   Parish Parties Release of Continental Parties.  Upon payment by the Continental Parties of the Settlement Amount, the Parish Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Continental Parties and any of their reinsurers or retrocessionaires from any and all past, present, and unknown Claims, including any Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties, including any Channeled Claims, Extra-Contractual Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case.  This release specifically includes all unknown Claims that are based in whole or in part on the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties

4.4   Continental Release of Parish Parties.  Upon payment by the Continental Parties of the Settlement Amount, the Continental Parties hereby fully, finally, and completely remise, release, acquit, and forever discharge the Parish Parties from any and all past, present, and unknown Claims, including any Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties, including any Channeled Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case. This release specifically includes all unknown Claims that are based in whole or in part on the Tort Claims, the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties.

4.5   Unless otherwise provided in the Plan, the releases contained in this Section shall be pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978), and all Tort Claimants reserve their rights against religious orders and all Persons who are not Protected Parties, who will remain severally liable on any Claims.

4.6   From and after the first day on which the Bankruptcy Orders are Final Orders, the Diocese Parties shall not assert against the Continental Parties for any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Unknown Tort Claim, that occurred or may have arisen prior to the effective date of the Plan (including any Tort Claim that arises under or relates to the Diocese Policies or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the

12

Continental Parties, any Channeled Claim, any Extra-Contractual Claim, and/or any other matter released pursuant to Section 4).

4.7    From and after the first day on which the Bankruptcy Orders are Final Orders, the Parish Parties shall not assert against the Continental Parties for any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Claim, including any Tort Claim, and any other Claim that arises under or relates to the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties, any Channeled Claim, any Extra-Contractual Claim, and/or any other matter released pursuant to Section 4.

4.8    As set forth in the Approval Order, upon entry of the Bankruptcy Orders as Final Orders, the Continental Parties shall buy back the Diocese Policies free and clear of all Interests of all Persons, including all Interests of the Parish Parties, any other Person claiming coverage by, through, or on behalf of any of the Parish Parties, any other insurer, and any Tort Claimant.  This sale is pursuant to sections 363(b) and 363(f) of the Bankruptcy Code. The Parties acknowledge and agree that (i) the Continental Parties are good faith purchasers of the Diocese Policies within the meaning of section 363(m) of the Bankruptcy Code and (ii) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Diocese Policies and constitutes reasonably equivalent value, and (iii) the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws.  As set forth in the Approval Order, upon entry of the Bankruptcy Orders as Final Orders, the Diocese Policies shall be terminated and of no further force and effect.  The Continental Parties' payment of the Settlement Amount shall constitute the Continental Parties' full and complete performance of any and all obligations under the Diocese Policies, including any performance owed to the Parish Parties, and exhausts all limits of liability of the Diocese Policies.  All Interests the Parish Parties may have had, may presently have, or in the future may have in the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties shall be released.  The Parish Parties accept the Settlement Amount in full and complete satisfaction of all the Continental Parties' past, present, and future obligations, including any obligations to any of the Parish Parties under the Diocese Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such claims arise from, relate to, or are in connection with the Channeled Claims, the Reorganization Case, or otherwise under the Diocese Policies.

4.9    If, contrary to the intent of the Parties, any Claims released pursuant to this Section 4 of the Settlement Agreement, including any past, present or unknown Claim for insurance coverage under the Diocese Policies or any other Claim by the Diocese Parties against any of the Continental Parties, are deemed to survive this Settlement Agreement, even though they are encompassed by the terms of the releases set forth in this Section 4 of this Settlement

13

Agreement, the Parties hereby forever, expressly, and irrevocably waive entitlement to and agree not to assert any and all such Claims.

4.10 All of the releases and other benefits provided in this Settlement Agreement by the Diocese Parties to the Continental Parties are at least as favorable as the releases and other benefits that the Diocese has provided to any other one of the Diocese's insurers in the Reorganization Case. If the Diocese enters into any agreement with any other one of its insurers in the Reorganization Case that provides that insurer with releases or other benefits that are more favorable than those contained in this Settlement Agreement, then this Settlement Agreement shall be deemed to be modified to provide the Continental Parties with those more favorable releases and/or benefits. However, the provision at Section 7.2 that the duty to defend, indemnify and hold harmless the Continental Parties not extending to nor including claims that are or may be made against Continental by other insurers shall not be modified. The Diocese Parties shall notify the Continental Parties promptly of the existence of such more favorable releases or benefits.

4.11 Neither the releases set forth in this Section 4 nor any other provisions in this Settlement Agreement are intended to apply to or have any effect on the Continental Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Diocese Policies, or any other binder, certificate, or policy of insurance issued, or allegedly issued, by any of the Continental Parties.

4.12 This Section 4 is not intended to, and shall not be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement.

## 5.  TERMINATION OF SETTLEMENT AGREEMENT

5.1  In the event (i) the Bankruptcy Orders do not become Final Orders within one year from the date on which the Settlement Agreement is executed by all the Parties, or (ii) the Diocese files a chapter 11 plan, or the Diocese acquiesces in the filing of a chapter 11 plan by another Entity, that is inconsistent with the terms of the Settlement Agreement or is otherwise unacceptable to Continental, or (iii) the Reorganization Case is dismissed or converted to chapter 7, then Continental may terminate the Settlement Agreement in its sole discretion, upon which the Settlement Agreement shall be null and void and of no force or effect, except that the Parties' release of Extra-Contractual Claims in any way related to this Settlement Agreement shall survive.

## 6.  REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1  The Parties separately represent and warrant as follows:

6.1.1  To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Settlement

14

Agreement and to perform the obligations contemplated by this Settlement Agreement, subject only to approval of the Bankruptcy Court;

6.1.2   This Settlement Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration.

6.2   The Diocese Parties and Parish Parties represent and warrant that they have not and will not assign any Interests in the Diocese Policies or any other binder, certificate, or policy of insurance issued by the Continental Parties.

6.3   The Diocese Parties represent and warrant that they are the owners of the Diocese Policies and that no other Person has legal title to the Diocese Policies.

6.4   The Diocese Parties and Parish Parties each represent and warrant that they have not in any way assisted, and shall not in any way assist, any Person in the establishment of any Claim against the Continental Parties.

6.5   The person(s) executing this Settlement Agreement on behalf of the parties in Sections 1.1.11(i), (ii), and (iii) and Sections 1.1.18(i), (ii) and (iii) (collectively, the "Other Diocese /Parish Parties") represents and warrants that he/she has received authority from such Other Diocese-/Parish Parties, as the case may be, to execute this Settlement Agreement on their behalf and to provide the releases identified in Section 4 above on behalf of such Other Diocese-/Parish Parties.   Notwithstanding the foregoing, nothing in the definition of Other Diocese-/Parish Parties is intended to suggest or should be construed to mean that any Person included in this definition is owned, directed, supervised or controlled by the Diocese or Parishes.

6.6   The Parties have completed a reasonable search for evidence of any policies or certificates of insurance issued by the Continental Parties to the Diocese Parties and Parish Parties that would afford coverage with respect to any Tort Claim. Notwithstanding the foregoing, nothing in this Settlement Agreement, including the schedules or exhibits thereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued and/or affords coverage in connection with the Tort Claims.

## 7.  ACTIONS INVOLVING THIRD PARTIES

7.1   For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Diocese Policies, the Diocese Parties and Parish Parties hereby agree as follows:

7.1.1   If any other insurer of the Diocese Parties or Parish Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from any of the Continental Parties as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for any of the Continental Parties' alleged share

15

or equitable share, or to enforce subrogation rights, if any, with respect to the defense and/or indemnity obligation of any of the Continental Parties for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Diocese Party(ies) or Parish Party(ies), as applicable, shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against the Continental Parties. To ensure that such a reduction is accomplished, the Continental Parties shall be entitled to assert this Section 7 as a defense to any action against them brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Continental Parties from any liability for the judgment or Claim.  Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against any of the Continental Parties, such Claim may be asserted as a defense against the Trust (under the Plan contemplated by the Settlement Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of the Continental Parties in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or Diocese Parties or Parish Parties) shall be reduced dollar for dollar by the amount so determined.

7.1.2    The Continental Parties shall not seek reimbursement for any payments they are obligated to make under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other insurer of the Diocese or Parishes unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from any of the Continental Parties. The Diocese and Parishes shall use their respective reasonable best efforts to obtain from all insurers with which it settles agreements similar to those contained in this Section 7.

7.2    The Diocese and Parishes shall defend, indemnify, and hold harmless the Continental Parties with respect to any and all released claims pursuant to Section 4 above, including all Tort Claims made by (i) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under their respective Diocese Policies; (ii) any Person who has made, will make, or can make a Tort Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Tort Claim under the Diocese Policies.  This indemnification includes Tort Claims made by Persons over whom the Diocese or Parishes do not have control, including any other Person who asserts Claims against or rights to coverage under the Diocese Policies.  The Diocese's and Parishes' obligation to indemnify the Continental Parties under this Section 7.2 shall not exceed the Settlement Amount.  The Continental Parties may undertake the defense of any Claim upon receipt of such Claim.  The Continental Parties agree to notify the Diocese or Parishes, as applicable, as soon as practicable of any Claims identified in this Section 7.2 and of their choice of counsel.  The Continental Parties' defense of any Claims shall have no effect on the Diocese's or Parishes' obligation to indemnify the Continental Parties for such Claims, as set forth in this Section 7.2.  The Diocese or Parishes, as applicable, subject to the limitations above regarding the

16

maximum amounts the Diocese and Parishes' must pay, shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Continental Parties in defending such Claims.  In defense of any such Claims, the Continental Parties may settle or otherwise resolve a Claim only with the prior consent of the Diocese and Parishes, which consent shall not be unreasonably withheld.  To the extent this Section 7.2 may give rise to pre-Effective Date administrative claims which have not been provided for in the Plan, such claims shall pass through the Plan unimpaired.

7.3    If any Person attempts to prosecute a Channeled Claim against any of the Continental Parties following the Petition Date, then promptly following notice to do so from the Continental Parties, the Diocese will file a motion and supporting papers, supported by the Committee and the Parishes, to obtain an order from the Court, pursuant to Bankruptcy Code §§ 362 and 105(a), protecting the Continental Parties from any such Claims until the Bankruptcy Orders become Final Orders, or, alternatively, this Settlement Agreement is terminated under Section 5.

## 8.  MISCELLANEOUS

8.1    If any proceedings are commenced to invalidate or prevent the enforcement or implementation of any of the provisions of this Settlement Agreement, the Parties agree to cooperate fully to oppose such proceedings.  In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2    The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3    The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Reorganization Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.

8.4    This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.5    This Settlement Agreement may be modified only by a written amendment signed by the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party.  The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

139880661.1

8.6   By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement. No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement.   All actions taken and statements made by the Parties or by their representatives, relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

8.7   This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, wrongdoing, or insurance coverage. All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.   Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.7, in (i) an action or proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7 or (ii) any possible action or proceeding between any of the Continental Parties and any of their reinsurers. This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Continental Parties' obligations under any of Diocese Policies or any other binder, certificate, or policy of insurance or any acknowledgment of coverage issued by the Continental Parties, with respect to any Claims against any of the Continental Parties.

8.8   None of the Parties shall make any public statements or disclosures (i) regarding each other's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Diocese Policies or any other binder, certificate, or policy of insurance issued by the Continental Parties, including handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims.

8.9   The Parties have received the advice of counsel in the preparation, drafting, and execution of this Settlement Agreement, which was negotiated at arm's length.

8.10  Section titles and/or headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.11  All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to the Diocese Parties:

If to the Diocese Parties:

Rev. James Bissonette
Diocese of Duluth
2830 East 4th Street
Duluth, MN 55812

and

With a copy to:

Ford Elsaesser
Bruce A. Anderson
Elsaesser Anderson, Chtd.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Email: ford@eaidaho.com
brucea@eaidaho.com

and

Phillip Kunkel
Gray Plant Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Email: Phillip.Kunkel@gpmlaw.com

If to Continental Parties:

Brian A. Frankl
Vice President and Claims Counsel, Environmental & Mass Tort Claims
151 N. Franklin St.
Chicago, IL 60606

19

With a copy to:

Scott E. Turner
CNA Coverage Litigation Group
151 N. Franklin St., 14th Floor
Chicago, IL 60606
T:  312-822-4571
Email:  scott.turner@cna.com

Laura K. McNally
Loeb & Loeb, LLP
321 North Clark Street
Suite 2300
Chicago IL 60654
T:  312-464-3155
F:  312-464-3111
Email:  lmcnally@loeb.com

     and

David C. Christian II
DAVID CHRISTIAN ATTORNEYS LLC
3515 West 75th Street
Suite 208
Prairie Village, KS 66208
T:  913-674-8215
Email:  dchristian@dca.law

     If to the Parish Parties:

John D. Kelly
1000 U.S. Bank Place
130 W Superior Street
Duluth, MN 55802-2094
Email:  jdk@hanftlaw.com

8.12  All notices, demands, or other communication to be provided pursuant to this Settlement Agreement prior to entry of the Plan Confirmation Order shall also be sent by e-

139880661.1

mail and Federal Express or other overnight delivery service, costs prepaid, to Robert T. Kugler, Stinson Leonard Street, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, Email: Robert.kugler@stinson.com.

8.13 This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Settlement Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

8.14 Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (i) an admission by any of the Continental Parties that the Diocese Parties, Parish Parties, or any other Person was or is entitled to any insurance coverage under the Diocese Policies or any other binder, certificate, or policy of insurance issued, or allegedly issued by the Continental Parties or as to the validity of any of the positions that have been or could have been asserted by the Diocese Parties or Parish Parties, (ii) an admission by the Diocese Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Continental Parties or any Claims that have been or could have been asserted by the Diocese Parties or Parish Parties against the Continental Parties, or (iii) an admission by the Diocese Parties, Parish Parties, or the Continental Parties of any liability whatsoever with respect to any of the Tort Claims.

8.15  All of the Persons included in the definition of Continental Parties, all of the Parties to this Settlement Agreement, and the bankruptcy Trust and Trustee are intended beneficiaries of this Settlement Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.16  The Diocese Parties, Parish Parties and the Continental Parties shall be responsible for their own fees and costs incurred in connection with the Reorganization Case, this Settlement Agreement, and the implementation of this Settlement Agreement.

8.17  The following rules of construction shall apply to this Settlement Agreement:

8.17.1    Unless the context of this Settlement Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.17.2    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

21

8.17.3    The wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The wording of this Settlement Agreement shall not be construed in favor of or against any Person.

8.17.4    The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.18  The Bankruptcy Court in the Reorganization Case shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with Minnesota law.

8.19  This Settlement Agreement and the obligations under this Settlement Agreement shall be binding on the Parties and shall survive the entry of the Plan Confirmation Order.

8.20  This Settlement Agreement shall be effective on the Effective Date.

[Remainder of page left blank intentionally]

22

IN WITNESS WHEREOF, the **Parties** have duly executed this <u>Agreement</u> as of the last date indicated below.

**On behalf of the Diocese of Duluth**

By: _____
      Reverend James B. Bissonette

Title: Vicar General, Diocese of Duluth

Date: _____5/25/_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. James' Church, Duluth a Minnesota religious corporation**

By: _Rev. James Bissonette_
         Reverend James Bissonette

Title: Pastor and Vice-President

Date: _5/25/_____ , 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Family Church, Cloquet a Minnesota religious corporation**

By: _____
        Reverend Justin Fish

Title: Pastor and Vice-President

Date: May 25th, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Mary Star of the Sea Church, Duluth, a Minnesota religious corporation, as successor-in-interest to St. Peter's Church, Duluth, and Sacred Heart Church, Duluth, by reason of merger**

By: _____
Reverend Peter Muhich

Title: Pastor and Vice-President

Date: _____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Mary Star of the Sea Church, Duluth**
**a Minnesota religious corporation**

By: _____

Reverend Peter Muhich

Title: Pastor and Vice-President

Date: _____5/23_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Francis Church, Brainerd a Minnesota religious corporation.**

By: _____

Reverend Anthony Wroblewski

Title: Pastor and Vice-President

Date: _____May 25,_____, 2018

Witness _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Mary's Church, Meadowlands**
**a Minnesota religious corporation**

By: _____
／    Reverend Pio Atonio

Title: Pastor and Vice-President

Date: _____May 25_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Louis' Church, Floodwood
a Minnesota religious corporation**

By: _____

Reverend Pio Atonio

Title: Pastor and Vice-President

Date: ___May 25_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Benedict's Church, Duluth a Minnesota religious corporation, as successor-in-interest to St. Anthony's Church, Duluth, by reason of merger**

By: _Rev. Joel M. Hastings_
Reverend Joel Hastings

Title: Pastor and Vice-President

Date: _5-29-18_____, 2018

Witness _Cassi Beamer_

CASSI L. BEAMER
NOTARY PUBLIC · MINNESOTA
My Commission Expires Jan. 31, 2019

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Deerwood
a Minnesota religious corporation**

By: _____
       Reverend Elias Gieske

Title: Pastor and Vice-President

Date: _____5-29-_____, 2018

Witness: _____

Sonja Craig

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Rose's Church, Proctor
a Minnesota religious corporation**

By: _____
        Reverend Joseph Sobolik

Title: Pastor and Vice-President

Date: _____May 29_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Catherine's Church, Squaw Lake**
**a Minnesota religious corporation**

By: _____

Reverend Thomas Galarneault

Title: Pastor and Vice-President

Date: May 29, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Chisholm a Minnesota religious corporation**

By: _Fr. Anthony Craig_
Reverend Anthony Craig

Title: Pastor and Vice-President

Date: _05-29_ , 2018

Witness: _Angela Wangenstein_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. Joseph's Church, Ball Club**
**a Minnesota religious corporation**

By: *Rev Steven Daigle*
Reverend Steven Daigle

Title: Pastor and Vice-President

Date: 30 May 2018

Witness: *Maureen K. Reider*

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Spirit Church, Virginia
a Minnesota religious corporation**

By: _____

Reverend Brandon Moravitz

Title: Pastor and Vice-President

Date: _05/26/2018_____, 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of
the last date indicated below.

**On behalf of the Holy Family Church, Duluth
a Minnesota religious corporation**

By: _____

Reverend Ryan Moravitz

Title: Pastor and Vice-President

Date: __5__|__31_____, 2018

Witness: _Stephanie Jo Jago_

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Holy Family Church, Duluth a Minnesota religious corporation, as successor-in-interest to SS. Peter and Paul Church, Duluth and Saints Clement and Jean, Duluth, by reason of merger**

By: _____
Reverend Ryan Moravitz

Title: Pastor and Vice-President

Date: 5/31 _____ , 2018

Witness: Stephanie Jago

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the St. John's Church, Duluth
a Minnesota religious corporation**

By: _____
        Reverend Richard Kunst

Title: Pastor and Vice-President

Date: ___6/4/18_____ , 2018

Witness: _____

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of the Official Committee of
Unsecured Creditors (as defined herein)**

By: _____

Title: _____

Date: _____

Witness: _____

24

IN WITNESS WHEREOF, the Parties have duly executed this Settlement Agreement as of the last date indicated below.

**On behalf of The Continental Insurance Company**

By: _____
      Brian A. Frankl

Title:  Vice President and Claims Counsel,
       Environmental & Mass Tort Claims

Date: June 12, 2018 _____

Witness: _____

25

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

                          Case No.:  15-50792

Diocese of Duluth,

                          Chapter 11

        Debtor-in-Possession.

---

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, THE CONTINENTAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

## INTRODUCTION

The above-referenced debtor submits this memorandum, in support of its Motion for an Order Approving Settlement Agreement between the Diocese, the Parishes, The Continental Insurance Company and the Official Committee of Unsecured Creditors (the "Motion).  The Court should approve the Settlement Agreement, attached to the Motion as **Exhibit A**, because it is in the best interests of the Diocese and the Diocese's bankruptcy estate.  The Settlement Agreement resolves all Tort Claims between Continental, the Diocese, the Parishes, the Official Unsecured Creditors Committee and the Diocese.

## ARGUMENT

Compromise is favored by the law as a normal part of the reorganization process.  *In re Trism, Inc.*, 282 B.R. 662. 666 (B.A.P. 8th Cir. 2002).  Rule 9019 of the Federal Rules of Bankruptcy Procedure provides:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given to

8

> creditors, the United States Trustee, the debtor and indenture
> trustees as provided in Rule 2002 and to any other entity as the
> court may direct.

Fed. R. Bankr. P. 9019(a).

"A decision to approve or disapprove a proposed settlement under Bankruptcy Rule 9019 is within the discretion of the bankruptcy judge." *In re Trism, Inc.*, 282 B.R. at 666 (citing *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135-36 (8th Cir. 1984)).   Bankruptcy Rule 9019 vests a bankruptcy court with "broad authority to approve or disapprove all compromises and settlements affecting the bankruptcy estate." *In re Bates*, 211 B.R. 338, 343 (Bankr. D. Minn 1997).  In exercising its discretion, a court should consider the following factors:

1.    The probability of success in the litigation;

2.    The difficulties, if any, to be encountered in the matter of collection;

3.    The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending to it;

4.    The paramount interests of the creditors and a proper deference to their reasonable views in the premises; and

5.    Whether the conclusion of the litigation promotes the integrity of the judicial system.

*In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d at 1135-36 (citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929), and *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)); *In re Bates*, 211 B.R. at 343; *see also In re Farmland Indus., Inc.*, 289 B.R. 122 (B.A.P. 8th Cir. 2003).

Consideration of these factors allows a court to determine whether a settlement is "fair and equitable," *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

9

*Anderson*, 390 U.S. at 424, and in the best interests of the estate. *In re Trism, Inc.* 282 B.R. at 668. A court's function is not to ensure that the proposed settlement is the best possible settlement obtainable. Rather, the court must determine only whether the settlement falls below the lowest point on the range of reasonableness. *In re Hanson Indus., Inc.*, 88 B.R. 942, 945 (Bankr. D. Minn. 1988); *see also In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). In this instance, consideration of these factors compels the conclusion that the Settlement Agreement should be approved.

On June 24, 2016, the Diocese initiated the Coverage Litigation against Liberty Mutual Insurance Company, Catholic Mutual Relief Society of America, Fireman's Fund Insurance Company, Church Mutual Insurance Company, and Continental (collectively, "the Insurers"). The Coverage Litigation has been complicated with procedural motions and involves interpretation of multiple insurance agreements and litigation of disputed legal positions and defenses.

The Diocese, Parishes, Insurers and Official Committee of Unsecured Creditors participated in three formal mediation sessions. Unfortunately, mediation did not result in a settlement. The parties have been engaged in motion practice, including procedural motions and motions for partial summary judgment and exchanging voluminous discovery. The parties have conferred and determined that if a settlement is not reached and approved by this Court, it may take years to conclude the Coverage Litigation.

In light of (i) the significant costs to the Diocese's estate to litigate its coverage claims against Continental; (ii) the considerable time it would take to obtain a final determination of the Diocese's rights and claims under the Policies; (iii) the risk that the Diocese may not prevail in litigation of the issues; (iv) the likelihood that the losing party would appeal any judgment, thus

10

delaying ultimate resolution of the disputes potentially for years; and (v) the desire to obtain promptly the maximum value from Continental under the Policies, the Diocese has determined that it is in the best interest of its estate and its creditors to reach a negotiated resolution of the dispute with Continental.

### Probability of Success in Litigation

Given the inherent uncertainty with respect to the outcome of the Coverage Litigation, this factor weighs heavily in favor of the approval of the Settlement Agreement. The Coverage Litigation involves interpretation of multiple insurance agreements and litigation of disputed legal theories and defenses. Continental is a well-represented party with the motivation, the resources, and the demonstrated willingness to litigate the multiple significant coverage issues that arise in this complicated legal setting.

Although the Diocese is confident of the merits of its positions, there can be no guarantee that the Diocese would ultimately be successful in any Coverage Litigation. Moreover, there is the prospect that Coverage Litigation could continue for several years including appeals and the possibility that it could produce a mixed result for the Debtor.

### Likely Difficulties in Collection

Absent settlement, it is highly possible that the Abuse Claims for which Debtor contends Continental is responsible to afford coverage would be liquidated and paid over years. Resolution of the Coverage Litigation, including appeals, could take years. This factor weighs in favor of settlement.

### The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay

The Coverage Litigation would involve the interpretation of many historical insurance agreements and requires the adjudication of disputed legal issues. The litigation is complicated,

11

time consuming and expensive.  Moreover, to access coverage, abuse claims would have to be liquidated over years.  In the absence of the Settlement Agreement, Diocese anticipates that there will be a substantial delay in collecting insurance proceeds from Continental.

### Interest of Creditors

The Diocese, the Parishes, the Committee, and Continental all support the Settlement Agreement.  The Settlement Agreement will provide survivors with a necessary mechanism for prompt recovery on their claims, without the expense or delay of proceeding within the tort system.

The Debtor has exercised its business judgment and concludes that it cannot reasonably justify the expense, delay and uncertainty of pursuing Coverage Litigation against Continental. The proposed settlement is well within the range of likely outcomes of the insurance coverage disputes and represents an appropriate compromise and settlement taking into account the costs, risks and potential rewards of litigation.  Far from falling "below the lowest point in the range of reasonableness," *Pacific Gas,* 304 B.R. at 417, payment of $15,000,000 by Continental falls well above the lowest point; moreover, it results in a known outcome for the Diocese and will benefit the holders of all survivors.  For all of these reasons, approval of the Agreement is in the best interest of the estate and creditors.

### <u>CONCLUSION</u>

The factors recognized in the Eighth Circuit for the approval of compromises and settlements weigh in favor of the Court approving the Settlement Agreement.  Therefore, the Diocese respectfully requests that the Court grant the Motion and enter an Order approving the Settlement Agreement.

### [SIGNATURE PAGE TO FOLLOW]

Dated: June 13, 2018

**ELSAESSER ANDERSON**

/s/ *J. Ford Elsaesser*
Bruce A. Anderson (admitted *pro hac vice*)
J. Ford Elsaesser (admitted *pro hac vice*)
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Phone: 208-263-8517
brucea@eaidaho.com
ford@eaidaho.com


-and-

**GRAY PLANT MOOTY MOOTY &
BENNETT, P.A.**

/s/ *Phillip L. Kunkel*
Phillip L. Kunkel (#058981)
Abigail M. McGibbon (#0393263) 101
West St. Germain
Suite 500
St. Cloud, MN 56301
Phone: 320-202-5335
phillip.kunkel@gpmlaw.com
abigail.mcgibbon@gpmlaw.com

*Attorneys for the Diocese of Duluth*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

Case No.: 15-50792

Diocese of Duluth,

Chapter 11

Debtor-in-Possession.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2018, the *Notice of Hearing and Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving Settlement Agreement Between the Diocese, the Parishes, The Continental Insurance Company and the Official Committee of Unsecured Creditors* was filed in the above-captioned matter using the CM/ECF system, which sent a Notice of Electronic Filing to the following person(s):

Nancy D. Adams on behalf of Counter-Claimant and Defendant Liberty Mutual Group, Inc.
ndadams@mintz.com

Nancy D. Adams on behalf of Interested Party Liberty Mutual Insurance Company
ndadams@mintz.com

Jeffrey R Anderson on behalf of Interested Party Certain Personal Injury Creditors
jeff@andersonadvocates.com, therese@andersonadvocates.com;erin@andersonadvocates.com

Phillip J Ashfield on behalf of Creditor Committee Official Committee of Unsecured Creditors
phillip.ashfield@stinsonleonard.com, laura.schumm@stinsonleonard.com

Teri E. Bentson on behalf of Counter-Claimant Liberty Mutual Group
teri.bentson@libertymutual.com

Kristi K. Brownson on behalf of Defendant, Counter-Claimant and Cross Defendant LIBERTY MUTUAL GROUP, INC.
kbrownson@brownsonlinnihan.com, lwaskosky@brownsonlinnihan.com

Kristi K. Brownson on behalf of Interested Party Liberty Mutual Insurance Company
kbrownson@brownsonlinnihan.com, lwaskosky@brownsonlinnihan.com

Edwin H. Caldie on behalf of Creditor Committee Official Committee of Unsecured Creditors
Edwin.Caldie@stinsonleonard.com, laura.schumm@stinsonleonard.com

David C. Christian, II on behalf of Interested Party Continental Insurance Company
dchristian@davidchristianattorneys.com

Benjamin J. Court on behalf of Creditor Committee Official Committee of Unsecured Creditors
benjamin.court@stinson.com, aong.moua@stinson.com;laura.schumm@stinson.com

Everett J Cygal on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
ecygal@schiffhardin.com

Louis T DeLucia on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
ldelucia@schiffhardin.com, jacquaviva@schiffhardin.com;afiedler@schiffhardin.com

Alyson M Fiedler on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
afiedler@schiffhardin.com, jacquaviva@schiffhardin.com

Michael G Finnegan on behalf of Interested Party Certain Personal Injury Creditors
mike@andersonadvocates.com, therese@andersonadvocates.com;erin@andersonadvocates.com

Charles E. Jones on behalf of Defendant, Counter-Claimant and Cross Defendant FIREMAN'S
FUND INSURANCE COMPANY
charles.jones@lawmoss.com, Brenda.murphy@lawmoss.com

John D Kelly on behalf of Interested Party Parishes of Diocese of Duluth
jdk@hanftlaw.com, saw@hanftlaw.com;dar@hanftlaw.com

Jeffrey D Klobucar on behalf of Interested Party Continental Insurance Company
jklobucar@bassford.com, mmooney@bassford.com

Robert T. Kugler on behalf of Creditor Committee Official Committee of Unsecured Creditors
robert.kugler@stinson.com, laura.schumm@stinson.com

Phillip Kunkel on behalf of Debtor 1 Diocese of Duluth
phillip.kunkel@gpmlaw.com

Connie A. Lahn on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
clahn@btlaw.com, tpaulson@btlaw.com;marobinson@btlaw.com;pgroff@btlaw.com

Greta A. Matzen on behalf of Continental Insurance Group
greta.matzen@cna.com

Abigail M McGibbon on behalf of Debtor 1 Diocese of Duluth
abigail.mcgibbon@gpmlaw.com

2

Laura K. McNally on behalf of Interested Party Continental Insurance Company
lmcnally@loeb.com, chdocket@loeb.com;tmcintyre@loeb.com

Brittany Mitchell on behalf of Creditor Committee Official Committee of Unsecured Creditors
brittany.mitchell@stinson.com, laura.schumm@stinson.com

James R. Murray on behalf of Debtor 1 Diocese of Duluth
jmurray@blankrome.com

Christian A. Preus on behalf of Cross Defendant CHURCH MUTUAL INSURANCE
COMPANY
cpreus@bassford.com, pcarter@bassford.com

Christian A. Preus on behalf of Defendant CHURCH MUTUAL INSURANCE COMPANY
cpreus@bassford.com, pcarter@bassford.com

Beth A. Jenson Prouty on behalf of Defendant CHURCH MUTUAL INSURANCE COMPANY
bprouty@bassford.com, dpelzel@bassford.com

Robert Raschke on behalf of U.S. Trustee US Trustee
robert.raschke@usdoj.gov

Andrea E. Reisbord on behalf of Continental Insurance Company
areisbord@bassford.com

Daniel J Schufreider on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
dschufreider@schiffhardin.com

David M Spector on behalf of Interested Party CATHOLIC MUTUAL RELIEF SOCIETY OF
AMERICA
dspector@schiffhardin.com,
jacquaviva@schiffhardin.com;ecygal@schiffhardin.com;cmethven@schiffhardin.com

Laura B Stephens on behalf of Counter-Claimant Liberty Mutual Group
lbstephens@mintz.com

Laura B Stephens on behalf of Interested Party Liberty Mutual Insurance Company
lbstephens@mintz.com

Scott E. Turner on behalf of Continental Insurance Group
scott.turner@cna.com
US Trustee
ustpregion12.mn.ecf@usdoj.gov

Jeanne H. Unger on behalf of Counter-Claimant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

3

Jeanne H. Unger on behalf of Cross-Claimant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Jeanne H. Unger on behalf of Defendant The Continental Insurance Company
junger@bassford.com, mmooney@bassford.com

Darin J Van Thournout on behalf of Interested Party Continental Insurance Company
dvanthournout@dca.law

Kevin J Walsh on behalf of Counter-Claimant Liberty Mutual Group
kwalsh@mintz.com, jcannata@mintz.com

Sarah J Wencil on behalf of U.S. Trustee US Trustee
Sarah.J.Wencil@usdoj.gov

Jared Zola on behalf of Debtor 1 Diocese of Duluth
jzola@blankrome.com, nylitigationdocketing@blankrome.com;jcarter@blankrome.com

Mary F. Sieling on behalf of Bankruptcy Trustee
mary@mantylaw.com

AND I FURTHER CERTIFY that on June 13, 2018, I served the same on the Non-ECF parties listed below by U.S. mail, postage prepaid:

IRS DISTRICT COUNSEL
380 JACKSON STREET, SUITE 650
SAINT PAUL, MN 55101

INTERNAL REVENUE SERVICE
WELLS FARGO PLACE
30 7TH STREET
MAIL STOP 5700
ST PAUL MN 55101

MN DEPARTMENT OF REVENUE
COLLECTION ENFORCEMENT
551 BANKRUPTCY SECTION
600 NORTH ROBERT STREET
SAINT PAUL, MN 55101

OFFICE OF THE U.S. ATTORNEY
600 US COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415

Dated:  June 13, 2018

*/s/ Abigail M. McGibbon*
Abigail M. McGibbon

5

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

In re:

                                 Case No.:  15-50792

Diocese of Duluth,

                                 Chapter 11

        Debtor-in-Possession.

---

**ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DIOCESE, THE PARISHES, THE CONTINENTAL INSURANCE COMPANY AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

This case came before the Court on the debtor's Motion for an Order Approving the Settlement Agreement, Release, and Certificate Buyback between Debtor, The Parishes, The Continental Insurance Company and the Official Committee of Unsecured Creditors.

Based on the Motion, all files, records and proceedings herein:

IT IS HEREBY ORDERED:

    1.      The Motion is granted.

    2.      The Settlement Agreement, attached as **Exhibit A** to the Motion, is hereby approved.

<br/>

                                 _____

                                   United States Bankruptcy Judge