# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | |
| Diocese of Duluth, | Case No. 15-50792 |
| Debtor. | Chapter 11 |

**SECOND MODIFIED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF THE DIOCESE OF DULUTH**

**GRAY PLANT MOOTY**
Phillip Kunkel
1010 West Street Germain
Suite 600
St Cloud, MN 56301
320-252-4414
Fax : 320-252-4482
phillip.kunkel@gpmlaw.com

and

**ELSAESSER ANDERSON CHTD**
J. Ford Elsaesser
Bruce A. Anderson
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
208-667-2900
baafiling@eaidaho.com
ford@eaidaho.com

Attorneys for the Diocese of Duluth, Debtor,
and Debtor in Possession

Dated:  August 26, 2019

**STINSON, LLP**
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Andrew J. Glasnovich (#398366)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
drew.glasnovich@stinson.com

Telephone: 612-335-1500
Facsimile: 612-335-1657

Attorneys for the Official Committee of
Unsecured Creditors for the Diocese of Duluth

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................5

ARTICLE I DEFINITIONS AND INTERPRETATION ...........................................................1
    1.1    DEFINED TERMS ..........................................................................................1
    1.2    INTERPRETATION.......................................................................................14
    1.3    TIME PERIODS .............................................................................................15
    1.4    EXHIBITS AND SCHEDULES .....................................................................15

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ....................................................15
    2.1    ADMINISTRATIVE CLAIMS ......................................................................15
    2.2    STATUTORY FEES........................................................................................16
    2.3    PRIORITY TAX CLAIMS .............................................................................16

ARTICLE III CLASSIFICATION OF CLAIMS .....................................................................17
    3.1    SUMMARY....................................................................................................17
    3.2    CLASSIFICATION AND VOTING ..............................................................17

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS ........................................................17
    4.1    PRIORITY CLAIMS (CLASS 1)....................................................................17
    4.2    GOVERNMENTAL UNIT CLAIMS (CLASS 2) ...........................................17
    4.3    TORT CLAIMS OTHER THAN UNKNOWN TORT CLAIMS
           (CLASS 3).......................................................................................................18
    4.4    UNKNOWN TORT CLAIMS (CLASS 4) ......................................................19
    4.5    GENERAL UNSECURED CLAIMS (CLASS 5)............................................20
    4.6    ABUSE RELATED CONTINGENT CLAIMS (CLASS 6A AND CLASS
           6B)    .............................................................................................................21

ARTICLE V MEANS OF IMPLEMENTATION OF THE PLAN ............................................21
    5.1    TRUST FORMATION AND FUNDING...........................................................21
    5.2    PAYMENT OF PROFESSIONAL FEES..........................................................22
    5.3    PAYMENT AND TREATMENT OF CLAIMS OTHER THAN TORT
           CLAIMS ..........................................................................................................23
    5.4    PAYMENTS EFFECTIVE UPON TENDER....................................................23

ARTICLE VI TRUST ..........................................................................................................23
    6.1    ESTABLISHMENT OF TRUST......................................................................23
    6.2    ALLOCATIONS WITHIN AND DISTRIBUTIONS AND PAYMENTS
           FROM THE TRUST.........................................................................................23
    6.3    TAX MATTERS..............................................................................................24
    6.4    APPOINTMENT OF THE TRUSTEE .............................................................24
    6.5    RIGHTS AND RESPONSIBILITIES OF TRUSTEE........................................24
    6.6    SPECIAL DISTRIBUTION CONDITIONS .....................................................25
    6.7    INVESTMENT POWERS; PERMITTED CASH EXPENDITURES.................26
    6.8    REGISTRY OF BENEFICIAL INTERESTS ...................................................26
    6.9    NON-TRANSFERABILITY OF INTERESTS..................................................26

- i -

## TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 6.10 | TERMINATION | 26 |
| 6.11 | IMMUNITY; LIABILITY; INDEMNIFICATION | 26 |
| 6.12 | TREATMENT OF TORT CLAIMS | 28 |

**ARTICLE VII SETTLING INSURERS** ................................................................. 29

| | | |
|---|---|---|
| 7.1 | INSURANCE SETTLEMENT AGREEMENTS | 29 |
| 7.2 | SALE FREE AND CLEAR OF INTERESTS OF SETTLING INSURER ENTITY POLICIES | 30 |
| 7.3 | RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS | 30 |
| 7.4 | THE SETTLING INSURERS' PAYMENTS | 30 |
| 7.5 | JUDGMENT REDUCTION | 30 |
| 7.6 | FURTHER ASSURANCES; NON-MATERIAL MODIFICATIONS | 31 |
| 7.7 | INDEMNIFICATION OBLIGATIONS | 31 |
| 7.8 | WAIVER/ CONSENT/ FEES | 32 |
| 7.9 | SUPPLEMENTAL SETTLING INSURER INJUNCTION | 33 |
| 7.10 | PERMANENT INJUNCTION AGAINST PROSECUTION OF RELEASED AND CHANNELED CLAIMS | 35 |
| 7.11 | INSURANCE INJUNCTIONS | 35 |
| 7.12 | DEBTOR WAIVER AND RELEASE OF CLAIMS | 35 |
| 7.13 | PROTECTED PARTY INJUNCTION DEFENSE COSTS | 35 |

**ARTICLE VIII ESTIMATIONS/ASSESSMENTS** ...................................................... 36

| | | |
|---|---|---|
| 8.1 | ESTIMATIONS/ASSESSMENTS ARE NOT BINDING | 36 |

**ARTICLE IX INSURANCE POLICIES** ................................................................. 36

| | | |
|---|---|---|
| 9.1 | CONTINUATION OF INSURANCE POLICIES | 36 |

**ARTICLE X PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION** ...... 37

| | | |
|---|---|---|
| 10.1 | RESERVATION OF RIGHTS TO OBJECT TO NON-TORT CLAIMS | 37 |
| 10.2 | OBJECTIONS TO NON-TORT CLAIMS | 37 |
| 10.3 | DETERMINATION OF CLAIMS | 37 |
| 10.4 | NO DISTRIBUTIONS PENDING ALLOWANCE | 38 |
| 10.5 | CLAIM ESTIMATION | 38 |

**ARTICLE XI DISTRIBUTIONS UNDER THE PLAN** ............................................. 38

| | | |
|---|---|---|
| 11.1 | PAYMENT DATE | 38 |
| 11.2 | UNDELIVERABLE DISTRIBUTIONS | 38 |
| 11.3 | SETOFFS | 39 |
| 11.4 | NO INTEREST ON CLAIMS | 39 |
| 11.5 | WITHHOLDING TAXES | 39 |

**ARTICLE XII EFFECTIVENESS OF THE PLAN** ................................................... 39

| | | |
|---|---|---|
| 12.1 | CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE | 39 |
| 12.2 | NOTICE OF EFFECTIVE DATE | 40 |
| 12.3 | EFFECT OF NON-OCCURRENCE OF CONDITIONS | 40 |

**ARTICLE XIII EFFECTS OF CONFIRMATION** ................................................... 40

- ii -

# TABLE OF CONTENTS

(continued)

| 13.1 | DISSOLUTION OF UCC | 40 |
|---|---|---|
| 13.2 | DISCHARGE AND INJUNCTION | 40 |
| 13.3 | CHANNELING INJUNCTION | 41 |
| 13.4 | EXCULPATION; LIMITATION OF LIABILITY | 43 |
| 13.5 | TIMING | 43 |
| 13.6 | NO BAR ON CERTAIN CLAIMS | 43 |

ARTICLE XIV INCORPORATION OF CHILD PROTECTION PROTOCOLS .......43

| 14.1 | CHILD PROTECTION PROTOCOLS | 43 |
|---|---|---|

ARTICLE XV THE REORGANIZED DEBTOR .......43

| 15.1 | CONTINUED CORPORATE EXISTENCE | 43 |
|---|---|---|
| 15.2 | VESTING OF ASSETS | 44 |
| 15.3 | IDENTITY OF OFFICERS OF REORGANIZED DEBTOR | 44 |
| 15.4 | FURTHER AUTHORIZATION | 44 |

ARTICLE XVI MISCELLANEOUS PROVISIONS .......44

| 16.1 | RETENTION OF JURISDICTION | 44 |
|---|---|---|
| 16.2 | ASSUMPTION OF EXECUTORY CONTRACTS | 46 |
| 16.3 | INDEMNIFICATION OF MEMBERS, MANAGERS, OFFICERS, AND EMPLOYEES | 47 |
| 16.4 | LEASE CLAIM INDEMNITY | 47 |
| 16.5 | DEFENSE AND INDEMNITY FOR COVERED NON-TORT CLAIMS | 47 |
| 16.6 | RESERVATION OF RIGHTS | 47 |
| 16.7 | NON-APPEALABLE ORDER | 48 |
| 16.8 | AMENDMENTS AND MODIFICATIONS | 48 |
| 16.9 | U.S. TRUSTEE REPORTS | 48 |
| 16.10 | NO WAIVER | 48 |
| 16.11 | TAX EXEMPTION | 48 |
| 16.12 | NON-SEVERABILITY | 48 |
| 16.13 | REVOCATION | 48 |
| 16.14 | CONTROLLING DOCUMENTS | 48 |
| 16.15 | GOVERNING LAW | 49 |
| 16.16 | NOTICES | 49 |
| 16.17 | FILING OF ADDITIONAL DOCUMENTS | 49 |
| 16.18 | POWERS OF OFFICERS | 50 |
| 16.19 | DIRECTION TO A PARTY | 50 |
| 16.20 | SUCCESSORS AND ASSIGNS | 50 |
| 16.21 | CERTAIN ACTIONS | 50 |
| 16.22 | FINAL DECREE | 50 |
| 16.23 | PLAN AS SETTLEMENT COMMUNICATION | 50 |
| 16.24 | OTHER RIGHTS | 50 |

ARTICLE XVII BANKRUPTCY RULE 9019 REQUEST .......51

ARTICLE XVIII CONFIRMATION REQUEST .......51

CORE/3008165.0002/154242261.1

**TABLE OF CONTENTS**

(continued)

## EXHIBITS AND SCHEDULES

EXHIBIT A:       UNKNOWN CLAIMS REPRESENTATIVE'S REPORT AND
                 RECOMMENDATION
EXHIBIT B:       [RESERVED]
EXHIBIT C:       [RESERVED]
EXHIBIT D:       TRUST AGREEMENT AND TRUST DISTRIBUTION PROTOCOL
EXHIBIT E:       TORT CLAIM RELEASE
EXHIBIT F:       UNKNOWN TORT CLAIM RELEASE
EXHIBIT G:       [RESERVED]
EXHIBIT H:       LIST OF CURRENT PARISHES
EXHIBIT I:       KNOWN DIOCESE ENTITY INSURANCE POLICIES
EXHIBIT J:       OFFICERS AND DIRECTORS OF REORGANIZED DEBTOR
EXHIBIT K:       CHILD PROTECTION PROTOCOLS
EXHIBIT K(1):    APPENDIX A
EXHIBIT L:       OTHER INSURED ENTITIES
EXHIBIT M:       LIST OF CATHOLIC ENTITIES

CORE/3008165.0002/154242261.1

## INTRODUCTION

The Official Committee of Unsecured Creditors and the Diocese of Duluth, the debtor and debtor in possession in the above-captioned Chapter 11 case, propose this Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code.

All creditors are encouraged to consult the disclosure statement for the Chapter 11 Plan of Reorganization (the "Disclosure Statement"), before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions of the Diocese of Duluth, events prior to and during this Chapter 11 case, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

# ARTICLE I
## DEFINITIONS AND INTERPRETATION

**1.1** **DEFINED TERMS.** For the purposes of the Plan, except as expressly provided, all capitalized terms not otherwise defined herein have the meanings ascribed to them below:

1.  "Abuse" means (i) any actual or alleged sexual conduct, misconduct, abuse, or molestation, including actual or alleged "sexual abuse" as that phrase is defined in Minnesota Statutes Section 541.073(1); (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

2.  "Administrative Claim" means a Claim for costs and expenses of administration that is allowable and entitled to priority under Sections 503, 507(a)(2), or 507(b) of the Bankruptcy Code, including any post-petition tax Claims, any actual and necessary expenses of preserving the Estate, any actual and necessary expenses of operating the business of the Debtor, all Professional Claims, and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

3.  "Allowed Professional Claim" means a Professional Claim for which the Bankruptcy Court has entered an Order, which has become a Non-Appealable Order allowing the relevant Fee Application.

4.  "Approval Order" means an order of the Bankruptcy Court approving one or more Insurance Settlement Agreement.

5.  "Assets" of the Diocese or the Estate means, collectively, any and all property of the Diocese or the Estate, respectively, of every kind and character, wherever located, whether real or personal, tangible or intangible, and specifically including cash (including the residual balance of any reserves established under the Plan, but not the Trust) and Causes of Action.

6.  "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the disclosure statement provided to each holder of a Claim entitled to vote to accept or reject the Plan.

7.  "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code.

8.  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota.

9.  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as currently promulgated.

- 1 -

10.    "Beneficiary" means a Class 3 Claimant whose Claim is not disallowed by the Bankruptcy Court and whose Claims are payable under the Trust Distribution Plan.

11.    "Canon Law" means the Code of Canon Law of the Roman Catholic Church, as codified in 1983 and as may hereafter be amended, and all binding universal and particular laws of the Roman Catholic Church.

12.    "Catholic Entities" means the Diocesan Parishes and those Persons listed on Exhibit M.

13.    "Catholic Mutual" means Catholic Mutual Relief Society of America.

14.    "Cause of Action" or "Causes of Action" means, except as provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with the Plan, all Claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party Claims, counterclaims, and cross claims of the Diocese or its Estate, the Committees, or the Trust (as successor to the Diocese or its Estate), including an action that is or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Person based on law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, any action brought pursuant to Sections 522, 541–45, 547–51, and 553 of the Bankruptcy Code; provided, however, that any affirmative defense or cross-claim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce, or is offset against, such Claim.

15.    "Channeled Claim(s)" means any Tort Claim, Related Insurance Claim, Medicare Claim, Extra-Contractual Claim, or other Claim against any of the Protected Parties, the Settling Insurer Entities or any Person qualifying as an insured under any Settling Insurer Entity Policy to the extent such Claim arises from the same injury or damages asserted as a Tort Claim against the Protected Parties or Settling Insurer Entities, that directly or indirectly arises out of, relates to, or is in connection with such Tort Claim, Related Insurance Claim, Medicare Claim, Extra-Contractual Claim, or other Claim covered by the Channeling Injunction and Supplemental Settling Insurer Injunction in Articles VII and XIII; provided, however, that Channeled Claims shall not include any rights of a holder of a Class 4 Claim or Class 6B Claim against the Reorganized Debtor, nor any Claim against (i) an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim; or (ii) any religious order, diocese or archdiocese (other than the Diocese itself).

16.     "Channeling Injunction" means the injunction imposed pursuant to Section 13.3 of the Plan.

17.     "Child Protection Protocols" means the document entitled "Child Protection Protocols" and the related "Appendix A" included as Exhibits K and K(1).

18.     "Claim" means any past, present or future Claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party Claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other Claim within the definition of "Claim" in Section 101(5) of the Bankruptcy Code.

19.     "Claims Filing Date" means May 25, 2016.

20.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

21.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code which becomes a Non-Appealable Order.

22.     "Covered Non-Tort Claim" means any Claim, other than Tort Claims, Related Insurance Claims, or Medicare Claims, for which the Diocese, a Catholic Entity or Other Insured Entity would otherwise have coverage under a Settling Insurer Entity Policy but as a result of the sale, transfer, or release by the Debtor, Catholic Entity, or Other Insured Entity of such Settling Insurer Entity Policy in connection with an Insurance Settlement Agreement, the Diocese, Catholic Entity, or Other Insured Entity does not have insurance coverage for such Claim(s).

23.     "Diocesan Insurance Policy(ies)" means a) all policies or certificates of insurance listed on Exhibit I; and b) any and all other known and unknown contracts, binders, certificates, or policies of insurance, including all of the insurance policies mentioned or referred to in any Diocese Insurance Settlement Agreement, in effect on or before the Effective Date that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, the Diocese or any of its predecessors in interest, successors, or assigns, and that actually, allegedly, or could potentially afford coverage with respect to any Tort Claim; provided, however, that if a contract, binder, certificate, or policy of insurance that is

CORE/3008165.0002/154242261.1

not identified on either Exhibit I and was not issued to or allegedly issued to the Diocese insures or covers both the Diocese and any other Person, such contract, binder, certificate, or policy of insurance, as applicable, is a "Diocesan Insurance Policy" to the extent it insures or covers the Diocese but not to the extent it insures or covers any other Person. With respect to the certificates issued by Catholic Mutual, the "Diocesan Insurance Policies" means the certificates issued by Catholic Mutual to the Diocese or the Other Insured Entities listed on Exhibit I to the extent coverages under such certificates are released by the Diocese Insurance Settlement Agreement between Catholic Mutual and the Diocese.

24.    "Diocesan Parishes" means all past and present parishes of or in the Diocese and includes all the parishes identified on Exhibit H.

25.    "Diocesan Settling Insurer Entities" means the Diocesan Settling Insurers and each of their past, present and future parents, subsidiaries, affiliates, divisions, reinsurers, and retrocessionaires, including Persons released pursuant to the Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, including the Persons released pursuant to the respective Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and Claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

26.    "Diocesan Settling Insurer Entity Policies" means any and all Diocesan Insurance Policies issued or allegedly issued by a Diocesan Settling Insurer Entity.

27.    "Diocesan Settling Insurers" means the Persons listed on Exhibit I whose Insurance Settlement Agreements are approved by the Approval Orders and such orders become Non-Appealable Orders.

28.    "Diocese" and "Diocesan" refers to the Diocese of Duluth, which is the diocesan corporation formed pursuant to Minnesota Statutes Section 315.16 that is the public juridic person of the Roman Catholic Diocese of Duluth, as now constituted or as it may have been constituted, and the Estate (pursuant to Section 541 of the Bankruptcy Code).

29.    "Diocese Entity Insurance Policies" mean the insurance policies that are listed on Exhibit I.

30. "Diocese Insurance Settlement Agreements" means the settlement agreements between the Diocese and/or the Diocese Parties and the Diocesan Settling Insurers, which are included as Exhibits D through H to the Disclosure Statement.

31. "Diocese Parties" means collectively the Diocese and, in their capacity as such: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Diocese; (ii) any and all named insureds, insureds, additional insureds, covered party, additional Covered Party(ies), and Protected Person(s) (as such terms are defined in the certificates issued by Catholic Mutual or in the applicable Diocesan Settling Insurer Entity Policy); (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors, and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or Persons bound by monastic vows, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iv) in their capacity as such. Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Diocese or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Diocese Party as to that Tort Claim. No religious order, archdiocese, or diocese, other than the Diocese itself, is a Diocese Party.

32. "Disputed" when used with respect to a Claim against the Diocese or property of the Diocese, means a Claim: (i) designated as disputed, contingent, or unliquidated in the Debtor's Schedules; (ii) which is the subject of an objection, appeal, or motion to estimate that has been or will be timely filed by a party in interest and which objection, appeal, or motion has not been determined by a Non-Appealable Order; or (iii) which during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, is in excess of the amount scheduled as other than disputed, unliquidated, or contingent. The processes for handling "Disputed Claims" do not apply to Class 3 or Class 4 Claims. In the event that any part of a Claim is Disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtor or the Reorganized Debtor, as applicable, and the holder thereof agree otherwise. To the extent the term "Disputed" is used in the Plan with respect to a specified class of Claims or an unclassified category of Claims (i.e., "Disputed [class designation/unclassified Claim category] Claim"), the resulting phrase shall mean a Disputed Claim of the specified class or unclassified category of Claims.

CORE/3008165.0002/154242261.1

33.    "Distribution Plan Claimants" are Tort Claimants who elect to have their Tort Claim treated by the Tort Claims Reviewer pursuant to the Trust Distribution Plan.

34.    "District Court" means the United States District Court for the District of Minnesota.

35.    "Effective Date" means the date upon which the conditions in Article XII of the Plan have been satisfied.

36.    "Estate" means the estate created in this Chapter 11 case pursuant to Section 541 of the Bankruptcy Code.

37.    "Exculpated Parties" means collectively, (i) the Diocese Parties, the Estate, and the UCC; (ii) the respective officers, directors, employees, members, attorneys, financial advisors, members of subcommittees of the board of directors, volunteers, and members of consultative bodies and councils formed under Canon Law of the persons identified in the preceding clause including with respect to their service or participation in an outside board on which they serve at the request of the Diocese or the Bishop, in their capacity as such; (iii) the Settling Insurer Entities with respect to their Settling Insurer Entity Policies; and (iv) professionals of a Person identified in the preceding clause (i) through (iii).

38.    "Extra-Contractual Claim" means any Claim against any of the Settling Insurer Entities based, in whole or in part, on allegations that any of the Settling Insurer Entities acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise before the Effective Date, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair Claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of any of the Settling Insurer Entities of any type for which the claimant seeks relief other than coverage or benefits under a policy of insurance. Extra-Contractual Claims include: (i) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurer Entities' handling of any Claim or any request for insurance coverage, including any request for coverage for any Claim, including any Tort Claim or Class 3 Claim; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurer Entity Policies, or any contractual duties arising therefrom, including any contractual duty to defend any of the Protected Parties against any Claim, and (iii) any Claim that directly or indirectly, arises out of, relates to, or is in connection with the conduct of the Settling Insurer Entities with respect to the negotiation of Insurance Settlement Agreements and the Plan.

39.    "Fee Application" means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for payment of a Professional Claim.

40.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

41.    "Fireman's Fund" means Fireman's Fund Insurance company; each of its past, present and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Person's respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies; each of the foregoing Person's respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, and each of the foregoing Person's respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

42.    "Insurance Coverage Adversary Proceeding" means the Adversary Proceeding against the Liberty Mutual Group and others, commenced by the Diocese in Minnesota Federal District Court and referred to the Bankruptcy Court as Adv. Proceeding No. 16-05012.

43.    "Insurance Settlement Agreements" means (i) the Diocese Insurance Settlement Agreements, and (ii) the settlement agreements between the Diocesan Parishes (including any Catholic Entities) and the Parish Settling Insurers.

44.    "Interest" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

45.    "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind in, upon, or affecting any Asset of the Debtor as contemplated by Section 101(37) of the Bankruptcy Code.

46.    "Medicare Claims" means any and all Claims relating to Tort Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSP, including Claims for reimbursement of payments made to Tort Claimants who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

CORE/3008165.0002/154242261.1

47.     "Medicare Trust Fund" means a U.S. Treasury-held trust fund account from which Medicare is funded or from which Medicare disbursements are paid, including the Hospital Insurance Trust Fund and the Supplementary Medical Insurance (SMI) Trust Fund.

48.     "MMSEA" means § 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173)", which imposes reporting obligations on those Persons with payment obligations under the MSP.

49.     "MSP" means 42 U.S.C. § 1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

50.     "Non-Appealable Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and is final and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which, if such an appeal, writ of certiorari, review, reargument, or rehearing has been timely sought, then no order judgment, or other decree is a Non-Appealable Order until (a) such appeal, certiorari, review, reargument, or rehearing has been denied or dismissed and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; or (b) such order has been affirmed by the highest court to or in which such order was appealed, reviewed, reargued, or reheard, or that granted certiorari, and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Non-Appealable Order."

51.     "Other Insured Entities" means those Persons listed on Exhibit L, insured or covered or allegedly insured or covered under a Diocesan Settling Insurer Entity Policy that was issued or allegedly issued to the Diocese, but only with respect to any Claim that would be covered or alleged to be covered under that Diocese Settling Insurer Entity Policy but for a Diocese Insurance Settlement Agreement, including Tort Claims based on alleged Abuse that occurred in whole or in part during the effective periods of that Diocesan Settling Insurer Entity Policy. Notwithstanding the foregoing, "Other Insured Entities" does not include the Diocese, the Parishes, or the Parish Parties.

52.     "Parish Insurance Policy(ies)" means any and all known and unknown contracts, binders, certificates, or policies of insurance in effect on or before the Effective Date that were issued to, allegedly issued to, or for the benefit

CORE/3008165.0002/154242261.1

of, or that otherwise actually, allegedly, or potentially insure, a Diocesan Parish or any of its predecessors in interest, successors or assigns and that actually, allegedly, or could potentially afford coverage with respect to a Tort Claim; provided, however, that if a contract, binder, certificate, or policy of insurance that was not issued or allegedly issued to a Diocesan Parish insures or covers both a Diocesan Parish and another Person, that contract, binder, certificate, or policy of insurance is a "Parish Insurance Policy" to the extent it insures or covers a Diocesan Parish, but not to the extent it insures or covers any other Person. For the avoidance of doubt, "Parish Insurance Policies" does not include any Diocesan Insurance Policy that was issued or allegedly issued to the Diocese.

53.   "Parish Parties" means collectively the Catholic Entities and, in their capacity as such: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Catholic Entities; (ii) any and all named covered party and additional covered party under the certificates of insurance issued by Catholic Mutual, including every Protected Person (as defined in the parish certificates); (iii) any and all named insured Person, insured Person, additional insured Person, or any other Person claiming coverage under any Diocesan Insurance Policy, including every Protected Person (as defined in such Diocesan Insurance Policy); (iv) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies; (v) each of the foregoing Persons' respective predecessors, successors, and assigns; and (vi) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or Persons bound by monastic vows, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(vi). Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of a Catholic Entity or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Parish Party as to that Tort Claim. No religious order, archdiocese, or diocese is a Parish Party.

54.   "Parish Settling Insurer Entities" means the Parish Settling Insurers and each of their past, present and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies reinsurers, and retrocessionaires, including the Persons released pursuant to the Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and Claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and

CORE/3008165.0002/154242261.1

assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

55. "Parish Settling Insurer Entity Policies" means any and all Parish Insurance Policies issued by a Parish Settling Insurer.

56. "Parish Settling Insurers" means the persons listed on Exhibit I.

57. "Person" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (i) "person" in Section 101(41) of the Bankruptcy Code; or (ii) "entity" in Section 101(15) of the Bankruptcy Code.

58. "Petition Date" means December 7, 2015, the date on which the Diocese commenced the Chapter 11 case.

59. "Plan" means this joint Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

60. "Plan Proponents" means the Diocese and the UCC.

61. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

62. "Pro Rata" means, with respect to any distribution on account of any allowed Claim in any class, the ratio of (i) the amount of such allowed Claim to (ii) the sum of (a) all allowed Claims in such class and (b) the aggregate maximum of all allowed Claims in such class.

63. "Professional" means any professional employed or to be compensated pursuant to §§ 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

64. "Professional Claim" means a Claim for compensation for services and/or reimbursement of expenses pursuant to §§ 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 case.

- 10 -

65.     "Proof of Claim" means a proof of Claim filed in the Chapter 11 case pursuant to § 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

66.     "Protected Party" means any of the Diocese Parties, the Reorganized Debtor, and the Parish Parties and, solely to the extent of and in their capacity as such, their respective predecessors and successors, and all of the foregoing Persons' past, present, and future members, shareholders, trustees, officers, directors, officials, employees, agents, representatives, servants, contractors, consultants, volunteers, attorneys, professionals, insiders, subsidiaries, merged or acquired companies or operations, and their successors and assigns; but an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Protected Party for that Tort Claim. Protected Party also includes (a) the Other Insured Entities and (b) solely to the extent of and in their capacity as such, the Other Insured Entities' respective predecessors and successors, and all of the foregoing Person's, past, present, and future members, shareholders, trustees, officers, directors, officials, employees, agents, representatives, servants, contractors, consultants, volunteers, attorneys, professionals, insiders, subsidiaries, merged or acquired companies or operations, and their successors and assigns. For the avoidance of doubt, and as more fully set forth in the definition of "Other Insured Entities," such "Other Insured Entities," are Protected Parties only as to certain Claims, including only certain Tort Claims. No religious order, archdiocese or diocese other than the Diocese itself is a Protected Party.

67.     "Related Insurance Claim" means (i) any Claim by any Person against any Protected Party or a Settling Insurer Entity, including an Extra-Contractual Claim, that, directly or indirectly, arises from, relates to, or is in connection with a Tort Claim, including any such Claim for defense, indemnity, contribution, subrogation, or similar relief or any direct action or Claim, including an action or Claim under Minn. Stat. § 60A.08, subd. 8, and (ii) any Extra-Contractual Claim that, directly or indirectly, arises out of , relates to, or is in connection with any Tort Claim, including any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurer Entities' handling of any Tort Claim. However, Related Insurance Claim does not include any Unknown Tort Claim against the Reorganized Debtor.

68.     "Reorganization Assets" means, collectively, all Assets of the Debtor and the Estate. For the avoidance of doubt, the Reorganization Assets do not include the Trust Assets.

69.     "Reorganized Debtor" means the Diocese, on and after the Effective Date.

70.     "Settling Insurer Entities" means the Diocesan Settling Insurer Entities and the Parish Settling Insurer Entities.

CORE/3008165.0002/154242261.1

71.   "Settling Insurer Entity Policies" mean the Diocesan Settling Insurer Entity Policies and the Parish Settling Insurer Entity Policies.

72.   "Settling Insurers" means the Diocesan Settling Insurers and the Parish Settling Insurers.

73.   "Supplemental Plan Documents" means, collectively, the documents included (or to be included) in the supplemental appendix to the Plan and filed with the Bankruptcy Court at least 14 days prior to the confirmation hearing.

74.   "Supplemental Settling Insurer Injunction" means the injunction imposed pursuant to Section 7.9 of the Plan.

75.   "Tort Claim" means any Claim against any of the Protected Parties or any of the Settling Insurer Entities that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, any of the Settling Insurer Entities or any other Person for whom any of the Protected Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with the Reorganization Case. Tort Claim includes any Unknown Tort Claim.

76.   "Tort Claimant" means the holder of a Tort Claim.

77.   "Tort Claims Reviewer" means the Person, including the designee of such person or entity, who will assess Class 3 and Class 4 Claims under the Trust Distribution Plan.

78.   "Trust" means the trust created for the benefit of Tort Claimants in accordance with the Plan and Confirmation Order and the Trust Agreement.

79.   "Trust Agreement" or "Trust Documents" shall mean the trust agreement establishing the Trust, as may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

80.   "Trust Assets" means the cash and other assets to be transferred to the Trust under Article V of the Plan.

CORE/3008165.0002/154242261.1

81. "Trust Distribution Plan" means the Trust Distribution Plan established under the Trust Agreement.

82. "Trustee" means the Person appointed as Trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order, and the Trust Agreement, or any successor appointed in accordance with the terms of the Plan, Confirmation Order, and the Trust Agreement.

83. "UCC" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 case, as such committee may be constituted from time to time.

84. "Unimpaired" means, with respect to a class of Claims, that such class is not impaired.

85. "Unknown Claims Representative" means Judge Michael R. Hogan in accordance with the Bankruptcy Court's dated January 4, 2018, Doc. 328, and any successor or such other person appointed by the Bankruptcy Court or otherwise.

86. "Unknown Tort Claim" means any Tort Claim that was neither filed, nor deemed filed by the Claims Filing Date, and is held by (i) an individual who was at the time of the Petition Date under a disability recognized by Minn. Stat. § 541.15, subds. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) an individual who experienced Abuse prior to and including the Effective Date and whose Claim is timely under Minn. Stat. § 541.073 subd. 2 as amended in 2013; (iii) an individual who has a Tort Claim that was barred by the statute of limitations as of the Claims Filing Date but is no longer barred by the applicable statute of limitations for any reason as of the Effective Date, including the enactment of legislation that revises previously time-barred Tort Claims; (iv) Tort Claims that the holder was incapable of knowing of the existence of his or her Tort Claim as of the Effective Date for any reason, including memory repression or memory suppression; or (v) any other individual or class of individuals the Unknown Tort Claim Representative can identify that would have a Tort Claim on or prior to the Effective Date.

87. "Unknown Tort Claim Reserve Fund" means the reserve established for the benefit of Unknown Tort Claimants pursuant to Section 6.2(b) of the Plan.

88. "Unknown Tort Claimant" means the holder of a Unknown Tort Claim, the estate of a deceased individual who held a Unknown Tort Claim, or the personal executor or personal representative of the estate of a deceased individual who held a Unknown Tort Claim, as the case may be.

CORE/3008165.0002/154242261.1

89.    "Unsecured Claims" means Claims which are not secured by any property of the Debtor's Estate and which are not part of any other class defined in this Plan.

90.    "U.S. Trustee" means the Office of the United States Trustee for Region 12, which includes the District of Minnesota.

**1.2    INTERPRETATION**. For purposes of the Plan:

**(a)**    any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

**(b)**    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "include(s), but is not limited to";

**(c)**    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

**(d)**    the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

**(e)**    unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

**(f)**    any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

**(g)**    any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

**(h)**    unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules" and "Exhibits" are references to Articles, Sections, Schedules and Exhibits of or to the Plan;

**(i)**    the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

**(j)**    captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

CORE/3008165.0002/154242261.1

**(k)**      the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

**1.3      TIME PERIODS**. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4      EXHIBITS AND SCHEDULES**.

**(a)**      All Exhibits and Schedules to the Plan (including any Supplemental Plan Documents) (with the Plan, the "Plan Documents") are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

**(b)**      The Exhibits to the Plan include the following:

| | |
|---|---|
| Exhibit A: | Unknown Claims Representative's Report and Recommendation |
| Exhibit B: | [RESERVED] |
| Exhibit C: | [RESERVED] |
| Exhibit D: | Trust Agreement and Trust Distribution Protocol |
| Exhibit E: | Tort Claim Release |
| Exhibit F: | Unknown Tort Claim Release |
| Exhibit G: | [RESERVED] |
| Exhibit H: | List of Current Parishes |
| Exhibit I: | Known Diocese Entity Insurance Policies |
| Exhibit J: | Officers and Directors of Reorganized Debtor |
| Exhibit K: | Child Protection Protocols |
| Exhibit K(1): | Appendix A |
| Exhibit L: | Other Insured Entities |
| Exhibit M: | List of Catholic Entities |

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1      ADMINISTRATIVE CLAIMS**. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims including Professional Claims, and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article.

**(a)      Treatment**. Each holder of an allowed Administrative Claim, excluding Professional Claims, against the Diocese shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, an amount from the Reorganized Debtor equal to the allowed amount of such Administrative Claim, unless the holder agrees in writing to other treatment of such Claim. Each holder of an allowed Professional Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, an amount from

- 15 -

the Reorganized Debtor equal to the allowed amount of such Professional Claim, unless the holder agrees in writing to other treatment of such Claim and subject to the provisions of Section 5.2 of this Plan.

**(b)** **Administrative Filing Deadline**.

(1)     Except as otherwise set forth in this Plan, requests for allowance and payment of Administrative Claims must be filed and served no later than thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court (the "Administrative Claims Filing Deadline"). Administrative Claims holders, excluding Professional Claims, that do not file a request for payment by the Administrative Claims Filing Deadline shall be forever barred from asserting such Claims against the Diocese, the Reorganized Debtor, any Settling Insurer Entity (to the extent applicable), the Trust, or any of their property.

(2)     All objections to the allowance of Administrative Claims (excluding Professional Claims) must be served and filed by any parties-in-interest no later than fourteen (14) days after the Administrative Claim Filing Deadline (the "Administrative Claim Objection Deadline"). If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim will be deemed allowed. For the avoidance of doubt, the Administrative Claim Objection Deadline established by this subparagraph shall control over any contrary deadline set forth in any requests for payment of Administrative Claims.

**(c)** **Professional Claim Filing Deadline**.

All Professionals or other Persons holding a Professional Claim for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 case) shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than thirty (30) days after a notice of the Effective Date is filed (the "Professional Claim Filing Deadline").

**2.2**     **STATUTORY FEES**. All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid by the Reorganized Debtor as soon as practicable after the Effective Date. After the Effective Date, the Trust shall pay quarterly fees to the U.S. Trustee until the Chapter 11 case is closed. The Reorganized Debtor shall file post-Confirmation Date quarterly reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and its Estate. The Reorganized Debtor shall remain responsible for any unpaid fees and reports.

**2.3**     **PRIORITY TAX CLAIMS**. With respect to each allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (i) pay such Claim in cash as soon as practicable after the Effective Date from its ongoing operations, or (ii) provide such other

CORE/3008165.0002/154242261.1

treatment agreed to by the holder of such allowed Priority Tax Claim and the Diocese or Reorganized Debtor, as applicable, in writing, provided such treatment is no less favorable to the Diocese than the treatment set forth in clause (i) of this sentence.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

3.1     **SUMMARY**. The categories of Claims listed below classify Claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of the Plan, and distribution pursuant to the Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|-------|-------------|------------|--------|
| 1 | Priority Claim | Unimpaired | No |
| 2 | Governmental Unit Claims | Unimpaired | No |
| 3 | Tort Claims Other Than Unknown Tort Claims | Impaired | Yes |
| 4 | Unknown Tort Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6A | Abuse Related Contingent Claims | Impaired | Yes |
| 6B | Abuse Related Contingent Claims | Impaired | Yes |

3.2     **CLASSIFICATION AND VOTING**. The Claims against the Debtor shall be classified as specified above (other than Administrative Claims and Priority Tax Claims, which shall be unclassified and treated in accordance with Article II). Consistent with Section 1122 of the Bankruptcy Code, a Claim is classified by the Plan in a particular class only to the extent the Claim is within the description of the class, and a Claim is classified in a different class to the extent it is within the description of that different class.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS

4.1     **PRIORITY CLAIMS (CLASS 1)**.

(a)     **Definition**. A Class 1 Claim means an allowed Claim described in, and entitled to priority under Sections 507(a) and 503(b)(9) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

(b)     **Treatment**. Unless the holder of an allowed Class 1 Claim and the Diocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such allowed Class 1 Claim in full, in cash, without interest, from ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 1 Claim becomes an allowed Claim (or as soon thereafter as is practicable).

4.2     **GOVERNMENTAL UNIT CLAIMS (CLASS 2)**.

(a)     **Definition**. A "Class 2 Claim" means an allowed Claim of Governmental Units not otherwise included in Article II or Section 4.1 above.

(b)     **Treatment**. Unless the holder of an allowed Class 2 Claim and the Diocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such allowed Class 2 Claim in full, in cash, without interest, from ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 2 Claim becomes an allowed Claim (or as soon thereafter as is practicable).

## 4.3     TORT CLAIMS OTHER THAN UNKNOWN TORT CLAIMS (CLASS 3).

(a)     **Definition**. A Class 3 Claim means a Tort Claim other than an Unknown Tort Claim ("Class 3 Claim").  A "Class 3 Claimant" shall mean a holder of a Class 3 Claim.

(b)     **Summary**. The Plan creates a Trust to fund payments to Class 3 Claimants entitled to such payments under the Plan, Trust Agreement and Trust Distribution Plan. Class 3 Claimants' share of the Trust Assets as provided by the Trust Distribution Plan is the only amount, if any, they will be entitled to receive from the Protected Parties and Settling Insurer Entities. Distribution from the Trust does not preclude Claims or recoveries by Tort Claimants against Persons who are not Protected Parties or Settling Insurer Entities for the liability of such Persons not attributable to the causal fault or share of liability of Protected Parties or Settling Insurer Entities under the Settling Insurer Entity Policies. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall not be liable for any Protected Party's share of causal liability or fault.

(c)     **Reservation**. Except with respect to the Protected Parties and the Settling Insurer Entities, nothing in the Plan is intended to affect, diminish, or impair the rights of any Tort Claimant against any Person named or that could be named as a defendant in a lawsuit based on the Abuse that forms the basis for his or her Tort Claim except that the rights of Tort Claimants against third-parties, including joint tortfeasors, does not include the right of Tort Claimants to collect or to obtain a reallocation of the share of any judgment initially allocated to a Protected Party to any third-party based on the causal fault or share of liability of Protected Parties.  Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Tort Claim shall not be liable for any Protected Party's share of liability or fault. Under no circumstances will the reservation of such Tort Claimant's rights against any other Person impair the discharge, Channeling Injunctions, or Supplemental Settling Insurer Injunction with respect to any Protected Party, the Reorganized Debtor or Settling Insurer Entities.

(d)     **Treatment**. The Protected Parties' and Settling Insurer Entities' liability for and obligation to pay, if any, Class 3 Claims shall be assigned to and assumed by the Trust. Each Class 3 Claim will be estimated solely for purposes of voting. The Protected Parties and the Settling Insurer Entities shall have no further liability in connection with Class 3 Claims.

CORE/3008165.0002/154242261.1

**(e)    Release and Certification**. No Class 3 Claimant shall receive any payment on any award unless and until such Class 3 Claimant has executed the Release attached as <u>Exhibit E</u> to this Plan. Notwithstanding the foregoing, nothing in this Article requires any Tort Claimant to release any Claims against any joint tortfeasor who is not a Protected Party, and such Claims are reserved. But in no event may a Tort Claimant collect on that portion of any judgment or obtain any reallocation of any judgment based on the causal fault or share of liability of any Protected Parties.  Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall be provided by the Trustee with a copy of the executed Release upon reasonable request and provision of an appropriate, executed confidentiality agreement and shall not be liable for any Protected Parties' share of liability or fault. The release of these Class 3 Claims is pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). The Trust shall be obligated to provide copies of the Tort Claimants' releases and certifications to any of the Protected Parties or Settling Insurer Entities upon request.

**4.4    UNKNOWN TORT CLAIMS (CLASS 4)**.

**(a)    Definition**. A Class 4 Claim means an Unknown Tort Claim ("Class 4 Claim"). A "Class 4 Claimant" shall mean a holder of a Class 4 Claim.

**(b)    Summary**. The Plan requires that the Reorganized Debtor fund payments to Class 4 Claimants entitled to such payments under the Plan and Trust Distribution Plan. Class 4 Claimants will not receive any distributions from the Trust or from any Trust Assets as such payments will be made by the Reorganized Debtor. Payment by the Reorganized Debtor does not preclude Claims or recoveries by Tort Claimants against Persons other than the Protected Parties and Settling Insurer Entities for the liability of such other Persons not attributable to the causal fault or share of liability of Protected Parties or Settling Insurer Entities under the Settling Insurer Entity Policies. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall not be liable for any Protected Party's share of liability or fault.

**(c)    Reservation**. Except with respect to the Protected Parties (other than the Reorganized Debtor) and the Settling Insurer Entities, nothing in the Plan is intended to affect, diminish, or impair the rights of any Unknown Tort Claimant against any Person named or that could be named as a defendant in a lawsuit based on the Abuse that forms the basis of his or her Unknown Tort Claim except that the rights of Unknown Tort Claimants against third-parties, including joint tortfeasors, does not include the right of Unknown Tort Claimants to collect or to obtain a reallocation of the share of any judgment initially allocated to a Protected Party to any third-party based on the causal fault or share of liability of Protected Parties.  Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of an Unknown Tort Claim shall not be liable for any Protected Party's share of liability or fault. Under no circumstances will the reservation of such Unknown Tort Claimant's rights against any other Person (including the Reorganized Debtor) impair the Supplemental Settling Insurer Injunction.

- 19 -

(d)    **Treatment**. The Protected Parties' and Settling Insurer Entities' liability for and obligation to pay, if any, Class 4 Claims shall be assumed by the Reorganized Debtor. The maximum amount of the Reorganized Debtor's obligation to pay Class 4 Claimants shall be determined by the Unknown Claims Representative in his report and recommendation which is incorporated by reference and attached to this Plan as **Exhibit A**. With the exception of the Reorganized Debtor, the Protected Parties and the Settling Insurer Entities shall have no further liability therefor. The Diocese will submit all potential Class 4 Claimants' information to the Unknown Claims Representative for determination of the potential claimant's inclusion as a Class 4 Claimant. Individuals determined to hold a Class 4 Claim shall provide sufficient information to allow the Tort Claims Reviewer to make an evaluation of the Class 4 Claim pursuant to the factors in the Trust Distribution Plan, before any payment shall be made on a Class 4 Claim by the Reorganized Debtor.

(e)    **Determination of Class 4 Claims**. Class 4 Claims will not be channeled to the Trust. Class 4 Claims will be determined by the Tort Claims Reviewer in accordance with the Trust Distribution Plan.

(f)    **Release and Certification**. No Class 4 Claimant shall receive any payment on any award unless and until such Class 4 Claimant has executed the Release attached as Exhibit F to this Plan. Notwithstanding the foregoing, nothing in this Article requires any Unknown Tort Claimant to release any Claims against any joint tortfeasor who is not a Protected Party (excluding the Reorganized Debtor) or a Settling Insurer Entity and such Claims are reserved. But in no event may a Class 4 Claimant collect on that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with an Unknown Tort Claim shall be provided by the Reorganized Debtor with a copy of the executed Release upon reasonable request and provision of an appropriate, executed confidentiality agreement and shall not be liable for any Protected Parties' share of liability or fault. The release of these Class 4 Claims against Protected Parties (excluding the Reorganized Debtor) and Settling Insurer Entities is pursuant to the principles set forth in _Pierringer v. Hoger_, 124 N.W.2d 106 (Wis. 1963) and _Frey v. Snelgrove_, 269 N.W.2d 918 (Minn. 1978). The Reorganized Debtor shall be obligated to provide copies of the Tort Claimants' releases and certifications to any of the Protected Parties or Settling Insurer Entities upon request.

## 4.5    GENERAL UNSECURED CLAIMS (CLASS 5).

(a)    **Definition**. A Class 5 Claim means (1) any Claim arising out of the rejection of any executory contract, or (2) any Unsecured Claim that is not included in another class under the Plan and is not listed as disputed, contingent or unliquidated on the Debtor's schedules filed in connection with this Chapter 11 case ("Debtor's Schedules") or as to which the holder of such Claim timely filed a Claim.

(b)    **Treatment**. The holders of Class 5 Claims shall receive, directly from the Reorganized Debtor, payment in full of such allowed Class 5 Claim, without interest, in two equal installments. The first installment shall be due within 90 days following the

Effective Date. The second installment shall be due and payable within 180 days following the Effective Date.

**4.6      ABUSE RELATED CONTINGENT CLAIMS (CLASS 6A and CLASS 6B).**

(a)      **Class 6A Definition**. A Class 6A Claim means (i) any Claim for contribution, indemnity or reimbursement arising out of or related to the Diocese's liability to pay or defend any Class 3, and (ii) the Claim of any insurers or other Persons who are subrogated to the Claims identified in Section 4.6(a) clause (i).

(b)      **Class 6A Treatment**. Claims in Class 6A shall be allowed or disallowed in accordance with Section 502(e)(1) of the Bankruptcy Code, and Class 6A Claims will receive no distribution under the Plan and will be channeled to the Trust.  The treatment of Class 6A Claims shall include the release and certification procedures contemplated under Sections 4.3 and 4.4 above. The Plan does not allow Tort Claimants to collect that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Tort Claim shall not be liable for any Protected Party's share of liability or fault.

(c)      **Class 6B Definition**. A Class 6B Claim means (i) any Claim for contribution, indemnity or reimbursement arising out of or related to the Diocese's liability to pay or defend any Class 4 Claim, and (ii) the Claim of any insurers or other Persons who are subrogated to the Claims identified in Section 4.6(b) clause (i).

(d)      **Class 6B Treatment**. Claims in Class 6B shall be allowed or disallowed in accordance with Section 502(e)(1) of the Bankruptcy Code, and Class 6B Claims will receive no distribution under the Plan and will be assumed by the Reorganized Debtor.  The treatment of Class 6B Claims shall include the release and certification procedures contemplated under Sections 4.3 and 4.4 above. The Plan does not allow Tort Claimants to collect that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Tort Claim shall not be liable for any Protected Party's share of liability or fault.

**ARTICLE V**
**MEANS OF IMPLEMENTATION OF THE PLAN**

**5.1      TRUST FORMATION AND FUNDING**.

(a)      **Purpose, Formation, and Assets**. The Trust shall be established for the purposes of assuming liability of Protected Parties and Settling Insurer Entities for Channeled Claims and receiving, liquidating, and distributing Trust Assets in accordance with this Plan and the Trust Distribution Plan. The proposed Trust Agreement is attached hereto as Exhibit D.

(b)      **Funding**.

- 21 -

(1)     **Summary**. This Plan will be funded from the sources and in the manner set forth in this Section. In addition to the contributions described herein, the Catholic Entities, and Other Insured Entities will waive certain Claims against the Diocese and Settling Insurer Entities, including the Related Insurance Claims and contribution and indemnity Claims referenced in Section 4.6.

(2)     **Contributions**. Cash and other assets with an expected value of $39,200,000.00 (the "Settlement Amount") will be paid or transferred, as applicable, to the Trust Account as provided in the Plan and as described herein.

(i)     **Debtor Cash Contribution**. The Debtor will transfer $8,500,000.00 to the Trust Account within two business days after the Confirmation Order has become a Non-Appealable Order (the "Debtor Cash Contribution"). The Debtor Cash Contribution will be primarily comprised of funds from the following sources:

1.     non-restricted cash accounts held by the Diocese;

2.     an account established to hold the proceeds derived from the sale of Diocese properties during the course of this Chapter 11 case; and

3.     the contributions of third parties, including the Debtor anticipates selling certain real property, using available cash savings, taking out a substantial loan, and the balance coming from the Catholic faithful, via contributions from the various Parishes, missions, and programs within the Diocese.

(ii)     **Settling Insurer Contributions**. Each Diocese Settling Insurer and Parish Settling Insurer shall pay to the Trust the sums set forth in their respective Insurance Settlement Agreement (the "Insurance Settlement Amounts") within the time set forth in their respective Insurance Settlement Agreements. In addition, all rights to receive payment of the Insurance Settlement Amounts under the Insurance Settlement Agreement shall be assigned to the Trust. The total amount that will be paid to the Trust by the Diocese Settling Insurers and the Parish Settling Insurers is $30,700,000.00.

(c)     **Vesting**. On the Effective Date, all Trust Assets shall vest in the Trust, and the Diocese and other Protected Parties shall be deemed for all purposes to have transferred all Interests in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor or any other Protected Party, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of control of Trust Assets in accordance with this paragraph, the Diocese and other Protected Parties shall have no further interest in or with respect to the Trust Assets.

**5.2     PAYMENT OF PROFESSIONAL FEES**. The Reorganized Debtor shall pay all unpaid Allowed Professional Claims within (i) seven (7) days after the later of the Effective Date

or the Bankruptcy Court's order on such Claims, or (ii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between such holder of an Allowed Administrative Claim and the Debtor, and shall pay costs and expenses of publication of the notices of insurance settlement and plan confirmation within seven (7) days after the Effective Date. The Debtor acknowledges and agrees that, pursuant to its unanticipated request that Committee counsel draft this Joint Plan, the caps and limitations upon the fees and costs of Committee counsel, as set forth in in the Order granting the employment of Committee Counsel in this Chapter 11 case, shall not apply to fees specifically incurred in connection with the drafting of this Joint Plan. The entirety of Committee counsel's fees and costs shall, however, remain subject in all respects to the review and approval of the Bankruptcy Court and/or the objection of parties in interest other than the Debtor, including but not limited to the Office of the United States Trustee.

**5.3    PAYMENT AND TREATMENT OF CLAIMS OTHER THAN TORT CLAIMS.** Payments due to creditors on account of Allowed Non-Tort Claims will be paid pursuant to the terms of the Plan.

**5.4    PAYMENTS EFFECTIVE UPON TENDER.** Whenever the Plan requires payment to be made to a creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Debtor, or the Reorganized Debtor to the creditor to whom payment is due. If any creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Debtor, or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to Claim interest or other charges or to exercise any other rights which would be enforceable by the creditor, if the Trust, the Debtor, or the Reorganized Debtor failed to pay the tendered payment.

## ARTICLE VI
## TRUST

**6.1    ESTABLISHMENT OF TRUST.** On or before the Confirmation Date, the Trust shall be established in accordance with the Trust Documents. The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

**6.2    ALLOCATIONS WITHIN AND DISTRIBUTIONS AND PAYMENTS FROM THE TRUST.**

    **(a)    General Corpus.** The following distributions and payments will be made from the general corpus of the trust:

(1)    **Distributions**. Distributions on Class 3 Claims as determined by the Tort Claims Reviewer in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan.

(2)    **Tort Claims Reviewer and Unknown Claims Representative**. The Trustee shall retain the Tort Claims Reviewer. Fees payable to the Tort Claims Reviewer for review of Class 3 Claims shall be paid from the Trust. Fees payable to the Tort Claims Reviewer for review of Class 4 Claims shall be paid by the Reorganized Debtor.

(3)    **Trust Administrative Fees**. All fees, costs, and expenses of administering the Trust as provided in the Plan and the Trust Agreement shall be paid by the Trust, including: (i) as reasonably necessary to meet current liabilities and to maintain the value of the respective Assets of the Trust; (ii) to pay reasonable administrative expenses (including any taxes imposed on the Trust and any professional fees); and (iii) to satisfy other liabilities incurred by the Trust in accordance with the Plan or the Trust Agreement.

(4)    **Indemnity**. The Trust's obligations, if any, to defend, indemnify, or hold harmless any Person expressly set out in the Plan shall be made from the corpus of the Trust.

(b)    **UNKNOWN TORT CLAIM RESERVE FUND**. The Reorganized Debtor shall establish the Unknown Tort Claim Reserve Fund in the amount provided for in the Unknown Claims Representative's Report and Recommendation, which is attached as Exhibit A. The Reorganized Debtor shall maintain the Unknown Tort Claim Reserve Fund until the later of (i) fifteen days after the Reorganized Debtor provides written notice to the Trustee that the Unknown Tort Claim Reserve Fund has been exhausted or (ii) the occurrence of the sixth (6th) anniversary of the Effective Date.

6.3    **TAX MATTERS**. The Trust shall not be deemed to be the same legal entity as the Diocese, but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Minnesota law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.

6.4    **APPOINTMENT OF THE TRUSTEE**. The initial Trustee has been identified in Exhibit D to this Plan. The Trustee shall commence serving as the Trustee on the Confirmation Date; provided, however, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Diocese and the UCC, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

6.5    **RIGHTS AND RESPONSIBILITIES OF TRUSTEE**.

CORE/3008165.0002/154242261.1

**(a)**     The Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights, powers, authority, responsibilities, and benefits specified in the Plan and the Trust Agreement, including the powers of a trustee under Sections 704, 108 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting Claims, defenses, offsets and privileges). If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to Trustee's authority to act, the provisions of the Trust Agreement shall control. Among other things, the Trustee:  (1) shall liquidate and convert to cash the Trust Assets, make timely distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under Section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

**(b)**     Notwithstanding the foregoing, the Diocese, the Reorganized Debtor, and the Trust acting for itself and on behalf of the Estate, shall be deemed to have waived, effective upon the Effective Date:

**(1)**     Any and all Claims under Sections 547, 548, 549 and 550 of the Bankruptcy Code for the recovery of any sums paid to any Person who provided goods and services to the Diocese in the ordinary course of business prior to the Effective Date;

**(2)**     Any and all Claims and Causes of Action: (i) seeking the substantive consolidation of the Diocese and any other Person or an order deeming any such Person and the Diocese to be an "alter-ego" of the other or any other similar Claim or Cause of Action; (ii) to avoid, set aside or recover any payment or other transfer made to any Person under Sections 547, 548, 549, and 550 of the Bankruptcy Code; and (iii) any proceeding to avoid or set aside any interest of a Person in property under Section 544 of the Bankruptcy Code.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Bankruptcy Court against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

**6.6     SPECIAL DISTRIBUTION CONDITIONS**.

**(a)**     With respect to Class 3 Claims only, the Trust shall maintain sufficient funds to pay any potential reimbursements to Medicare and shall complete the following "Medicare Procedures":  (i) the Trustee shall determine whether each Tort Claimant with a Date of Injury after December 5, 1980 is eligible to receive, is receiving, or has received Medicare benefits ("Medicare Eligible"); (ii) upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to allow them to perform their own

- 25 -

SSA queries to the extent they wish to do so; (iii) in the event that one or more Tort Claimants with Dates of Injury after December 5, 1980 is/are identified as Medicare Eligible, the Trust shall complete a query to the CMS for each such Tort Claimant to determine whether any payment ("Conditional Payment") made pursuant to Section 1395y(b)(2)(B) of the MSPA has been made to or on behalf of that Tort Claimant arising from or relating to treatment for Abuse; (iv) if any Conditional Payment has been made to or on behalf of that Tort Claimant, the Trustee shall, within the time period called for by the MSPA, reimburse the appropriate Medicare Trust Fund for the appropriate amount, and submit the required information for that Tort Claimant to the appropriate agency of the United States government.

(b)     Compliance with the provisions of this Section 6.6 shall be a material obligation of the Trust in favor of the Settling Insurers under any settlement agreements between any of those insurers and Diocese, which authorizes funding to the Trust.

(c)     With the exception of Unknown Tort Claims, the Trust shall defend, indemnify and hold harmless the Protected Parties and the Settling Insurer Entities from any Medicare Claims, and any Claims related to the Trust's obligations under this Section. The Reorganized Debtor shall defend, indemnify, and hold harmless the Protected Parties and the Settling Insurer Entities from any Claims concerning the Unknown Tort Claims, including Medicare Claims.

6.7    **INVESTMENT POWERS; PERMITTED CASH EXPENDITURES**. All funds held by the Trust shall be invested in cash or short-term highly liquid investments that are readily convertible to known amounts of cash as more particularly described in the Trust Agreement. The Trustee may expend the cash of the Trust.

6.8    **REGISTRY OF BENEFICIAL INTERESTS**. To evidence the beneficial interest in the Trust of each holder of such an interest, the Trustee shall maintain a registry of beneficiaries.

6.9    **NON-TRANSFERABILITY OF INTERESTS**. Any transfer of an interest in the Trust shall not be effective until and unless the Trustee receives written notice of such transfer.

6.10    **TERMINATION**. The Trust shall terminate after its liquidation, administration, and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement. The Trust shall terminate no later than the sixth (6th) anniversary of the Effective Date.

6.11    **IMMUNITY; LIABILITY; INDEMNIFICATION**.

(a)     Neither the Reorganized Debtor or its respective members, designees, or professionals, nor the Trustee or any duly designated agent or representative of the Trustee, nor their respective employees, shall be liable for the acts or omissions of any other member, designee, agent, or representative of such Trustee, except that the Trustee shall be liable for its specific acts or omissions resulting from such Trustee's misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act

CORE/3008165.0002/154242261.1

taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Trustee unless such determination is based on the Trustee's recklessness, gross negligence, willful misconduct, or fraud.

(b)     No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney, accountant, or other professional retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or Trust Agreement whatsoever executed by the Trustee in implementation of this Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

(c)     The Trust shall defend, indemnify, and hold the Trustee, its officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of Minnesota entitled to indemnify and defend its directors, trustees, officers, and employees against any and all liabilities, expenses, Claims, damages or losses incurred by them in the performance of their duties hereunder.

(1)     Additionally, the Reorganized Debtor, and each of its respective agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Trust or Trustee or respective agents, with respect to: (i) the Chapter 11 case and any act or omission undertaken by them prior to the commencement thereof, (ii) the assessment or liquidation of any Class 3 and Class 4 Claims, (iii) the administration of the Trust and the implementation of the Trust Distribution Plan, or (iv) any and all activities in connection with the Trust Agreement, shall be indemnified and defended by the Trust, to the fullest extent that a corporation or trust organized under the laws of Minnesota is from time to time entitled to indemnify and defend its officers, directors, trustees, and employees, against reasonable expenses, costs and fees (including attorneys' fees and costs), judgments, awards, amounts paid in settlement and liabilities of all kinds incurred by the Debtor or Reorganized Debtor, and their respective professionals, officers, and directors, in connection with or resulting from such action, suit or proceeding, provided such expenditures have been approved by the Trust in advance such approval not to be unreasonably withheld.

CORE/3008165.0002/154242261.1

(2)     Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee, the Debtor, the Reorganized Debtor, and their respective agents in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are entitled to be indemnified by the Trust, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Trustee, the Debtor, the Reorganized Debtor, and their respective agents, to repay such amount in the event that it shall be determined ultimately by Non-Appealable Order that such Trustee, the Debtor, the Reorganized Debtor, and their respective professionals, officers, and directors is not entitled to be indemnified by the Trust.

**6.12    TREATMENT OF TORT CLAIMS**.

(a)     **TRUST LIABILITY**. On the Effective Date, the Trust shall automatically and without further act or deed assume: (i) all liability, if any, of the Protected Parties and Settling Insurer Entities in respect of Channeled Claims, subject to Section 16.5; and (ii) the responsibility for preserving and managing Trust Assets and distributing Trust Assets.

(b)     **ASSESSMENT**.

(1)     Each Tort Claim will be assessed by the Tort Claims Reviewer in accordance with the Trust Distribution Plan to determine whether the Tort Claimant is entitled to a distribution under the Trust. The Diocese or the Reorganized Debtor shall reasonably cooperate with the Tort Claims Reviewer and the Trustee as requested by the Tort Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Trust Distribution Plan.

(2)     Each Tort Claimant may elect, in lieu of assessment by the Tort Claims Reviewer, to have his Tort Claim treated pursuant to the convenience Claim process as provided by the Trust Distribution Plan ("Convenience Claim").

(c)     **DISTRIBUTIONS TO TORT CLAIMANTS**. A Tort Claimant electing to be treated as a Distribution Plan Claimant, and who the Tort Claims Reviewer determines to be entitled to a distribution, will receive a distribution from the Trust in the amount(s) and at the time(s) provided for in the Trust Distribution Plan. Any payment on a Tort Claim constitutes payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. For the avoidance of doubt, Tort Claimants' recovery on their Class 3 Claims shall be limited to the distributions they are entitled to, if any, from the Trust under the Trust Distribution Plan, and they shall not be entitled to collect personally or otherwise any additional amounts whatsoever on their Tort Claims from any Protected Party or any Protected Party's assets, or from any Settling Insurer Entities or Settling Insurer Entities' assets, even if they are denied a distribution pursuant to the Trust Distribution Plan. For the avoidance of doubt, the Unknown Tort Claims Reserve Fund established and maintained by the Reorganized Debtor shall be the sole source of payment to Class 4 Claimants on account of Class 4 Claims. Tort Claimants' recovery on their Class 4 Claims shall be limited to the distributions they are entitled to, if any, from Reorganized

- 28 -

Debtor determined under the Trust Distribution Plan, and they shall not be entitled to collect personally or otherwise any additional amounts whatsoever on their Tort Claims from the Trust, any Protected Party (with the exception of the Reorganized Debtor), or any Protected Party's assets (with the exception of the Reorganized Debtor), or from any Settling Insurer Entities or Settling Insurer Entities' assets, even if they are denied a distribution pursuant to the Trust Distribution Plan.

(d)    **DISMISSAL OF PENDING LITIGATION**. Within 21 days after Effective Date, all Claims arising out of, or related to, Tort Claims asserted in any lawsuit against any Protected Party currently pending in state court shall be dismissed with prejudice and without fees or costs being recoverable against any Protected Party or by any Protected Party against the Tort Claimant.

(e)    **RELEASE**. Prior to any Class 3 claimant receiving a payment from the Trust, the claimant shall sign the Release attached as Exhibit E. Prior to any Class 4 claimant receiving a payment from the Reorganized Debtor, the claimant shall sign the Release attached as Exhibit F.

(f)    **OBJECTIONS DEEMED WITHDRAWN**. Any objection asserted by the Diocese to a Tort Claim pending as of the Effective Date is deemed withdrawn without prejudice. Whether and the extent to which any Settling Insurer who filed an objection prior to the Effective Date is entitled to have filed such objection and to continue to assert such objection after the Effective Date shall be determined by the Bankruptcy Court in accordance with applicable procedures.

(g)    **OBJECTIONS AND LITIGATION AFTER THE EFFECTIVE DATE**. As of the Effective Date, the Trustee shall have the sole and exclusive right to object to Class 3 Claims. The Reorganized Debtor shall have no right to object to any Class 3 Claims after confirmation of the Plan. The Trust and the Reorganized Debtor shall each have the right to object to any Class 4 Claims after confirmation of the Plan.

(h)    **CLAIM WITHDRAWAL**. A Tort Claimant may withdraw his or her Tort Claim at any time on written notice to the Trustee. If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted, and such Tort Claimant shall still be subject to the Discharge Injunction, the Channeling Injunctions, and the Supplemental Insurer Injunction as provided by this Plan; and (b) any reserve maintained by the Trust on account of such Tort Claim shall revert to the Trust as a Trust Asset for distribution in accordance with the Plan and Trust Distribution Plan.

## ARTICLE VII
## SETTLING INSURERS

**7.1    INSURANCE SETTLEMENT AGREEMENTS**. The Insurance Settlement Agreements shall automatically be, and hereby are, incorporated by reference and made part of the Plan as if set forth fully herein.  Upon the Confirmation Order becoming a Non-Appealable Order, the Insurance Settlement Agreements are fully binding on the Trust, Protected Parties, the Reorganized Debtor, the UCC, Settling Insurer Entities, the Unknown Claims Representative, the

- 29 -

Tort Claimants, and parties in interest, and any of the foregoing Persons' successors. The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan.

**7.2    SALE FREE AND CLEAR OF INTERESTS OF SETTLING INSURER ENTITY POLICIES**. To the extent provided in each of the Diocese Insurance Settlement Agreements and effective on the later of (i) the Effective Date of the Plan or (ii) the payment by the Settling Insurer of settlement payment due under such agreement, each and every Settling Insurer Entity Policy shall be sold to the issuing Settling Insurer pursuant to Sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens, Claims and Interests of all Diocese Parties, Parish Parties, and Tort Claimants; provided, however, that the certificates of insurance issued by Catholic Mutual to the Diocese shall not be sold.  As set forth in the Diocese Insurance Settlement Agreements and the corresponding Approval Orders, the Settling Insurers are good faith purchasers of such insurance policies and certificates of insurance within the meaning of Section 363(m) of the Bankruptcy Code, the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to each such Settling Insurer Entity Policy and constitutes reasonably equivalent value, the releases in such Diocese Insurance Settlement Agreements and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws, and each such Settling Insurer Entity Policy shall be terminated and be of no further force and effect with the issuing Settling Insurer having fully and completely performed any and all obligations under each such Settling Insurer Entity Policy, including any performance owed to the Diocese Entities and Parish Entities, and all limits of liability of each such Settling Insurer Entity Policy shall be exhausted.

**7.3    RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS**. The Confirmation Order shall provide that within 20 days of the Effective Date, the Diocese and the Diocesan Settling Insurers shall effect dismissal with prejudice of their Claims against each other in the Insurance Coverage Adversary Proceeding, with each side to bear its own fees and costs.

**7.4    THE SETTLING INSURERS' PAYMENTS**. With the exception of Fireman's Fund (which has already complied with its Settlement Agreement by paying its Settlement Amount directly to the Diocese), the Settling Insurers will pay to the Trust the sums set forth in their respective Insurance Settlement Agreements within the time set forth in their respective Insurance Settlement Agreements.

**7.5    JUDGMENT REDUCTION**.

(a)    In any proceeding, suit, or action to recover or obtain insurance coverage or proceeds for a Tort Claim from an insurer that is not a Settling Insurer Entity ("Other Insurer"), the following shall apply: If the Trust, a Protected Party, a Tort Claimant, or any other Person bound by the Plan obtains a judgment against the Other Insurer, the judgment shall automatically be reduced by the amount, if any, that all Settling Insurer Entities would have been liable to pay such Other Insurer as a result of the Other Insurer's Related Insurance Claim against one or more Settling Insurer Entities.  To ensure that such a reduction is accomplished, (a) the Person pursuing the Related Insurance Claim  (whether the Trust, the Protected Parties, a Tort Claimant, or any other Person bound by the Plan) shall inform the Other Insurer of the existence of this judgment reduction provision at the

time a Claim is first asserted against the Other Insurer; (b) the Other Insurer's Related Insurance Claim against a Settling Insurer Entity may be asserted as a defense in any proceeding, suit, or action to obtain insurance coverage or proceeds from that Other Insurer for a Tort Claim; and (c) to the extent the Other Insurer's Related Insurance Claim against a Settling Insurer Entity is determined to be valid by the court presiding over such action, the liability of the Other Insurer shall be reduced dollar for dollar by the amount so determined.

**(b)** As provided in the Insurance Settlement Agreements, each Settling Insurer Entity agrees that it will not pursue any Related Insurance Claim that it might have against any Other Settling Insurer Entity that does not assert a Related Insurance Claim against a corresponding Settling Insurer Entity. Notwithstanding the foregoing, if a Person pursues a Related Insurance Claim against a Settling Insurer Entity, then such Settling Insurer Entity shall be free to assert its Related Insurance Claims against such Person.

**(c)** As provided in the Insurance Settlement Agreements, the Reorganized Debtor and the Trust shall use their best efforts to obtain, from all Other Insurers, if any, with which they execute a settlement agreement after the Effective Date, agreements similar to those contained in this Section.

**7.6    FURTHER ASSURANCES; NON-MATERIAL MODIFICATIONS**. From and after the Effective Date, the Reorganized Debtor and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Article without further order of the Bankruptcy Court. Subject to the reservation of consent rights in Sections 16.7 and 16.8, the Reorganized Debtor and the Settling Insurers may make technical or immaterial alterations, amendments, modifications, waivers, or supplements to the terms of any Insurance Settlement Agreement. A class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under this Section, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**7.7    INDEMNIFICATION OBLIGATIONS**.

**(a)** From and after the Effective Date, the Trust shall defend, indemnify, and hold harmless the Settling Insurer Entities with respect to any and all Tort Claims (other than Unknown Tort Claims), Medicare Claims, and Related Insurance Claims, including: all Tort Claims (other than Unknown Tort Claims) and Related Insurance Claims made by (i) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under any Settling Insurer Entity Policies; (ii) any Person who has made, will make, or can make a Tort Claim (other than an Unknown Tort Claim) or Related Insurance Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim (other than an Unknown Tort Claim) under any Settling Insurer Entity Policies.

**(b)**    The Reorganized Debtor shall defend, indemnify, and hold harmless the Settling Insurer Entities with respect to any and all Tort Claims subject to the limitations set forth in the Diocesan Insurance Settlement Agreements. The Settling Insurer Entities shall have the right to defend any Claims identified in this section and shall do so in good faith.

**(c)**    The indemnification obligations of the Trust and the Reorganized Debtor includes Tort Claims made by Persons over whom the Diocese or Diocesan Parishes do not have control, including any other Person who asserts Tort Claims against or right to coverage under the Settling Insurer Entity Policies. The Settling Insurer Entities may undertake the defense of any Claim on receipt of such Claim without affecting such indemnification obligations.   The Settling Insurer Entities shall notify the Trust or the Reorganized Debtor, as applicable, as soon as practicable of any Claims identified in this section and of their choice of counsel. The Settling Insurer Entities' defense of any Claims shall have no effect on the obligations of the Trust or the Reorganized Debtor, as applicable, to indemnify the Settling Insurer Entities for such Claims, as set forth in this section. The Trust or Reorganized Debtor, as applicable, is not obligated to indemnify the Settling Insurer Entities for Claims that are or may be made against the Settling Insurer Entities by other insurers. The obligation of the Trust or Reorganized Debtor, as applicable, to indemnify the Settling Insurer Entity under this Section 7.7 shall not exceed the Settlement Amount set forth in the Settlement Agreement payable by the corresponding Settling Insurer. Subject to the limitations above concerning the maximum amounts the indemnifying party must pay, the Trust shall reimburse all reasonable attorneys' fees, expenses, costs, and amounts incurred by the Settling Insurer Entities in defending such Claims (other than Unknown Tort Claims), and the Reorganized Debtor shall reimburse all reasonable attorney's fees, expenses, costs and amounts incurred by the Settling Insurer Entities in defending Tort Claims. In defense of any such Claims, the Settling Insurer Entities may settle or otherwise resolve a Claim consistent with the terms of this Plan and with the prior consent of the indemnifying party, which consent shall not be unreasonably withheld.

**7.8    WAIVER/ CONSENT/ FEES**.

**(a)**    In consideration of the releases and Channeling Injunction, the Supplemental Settling Insurer Injunction, and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Diocese Parties:

(1)    Irrevocably and unconditionally, without limitation, releases, acquit, forever discharge, and waive any Claims and/or Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities with respect to any and all Related Insurance Claims, any contribution, subrogation, indemnification, or other similar Claim arising from or relating to Tort Claims, and any Settling Insurer Entity Policies; and

(2)    Consent to the sale of Diocese Parties' Claims and/or Interests, if any, in the Settling Insurer Entity Policies in accordance with this Insurance

CORE/3008165.0002/154242261.1

Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

**(b)** In consideration of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Catholic Entities:

(1) Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities with respect to any and all Related Insurance Claims, any contribution and indemnity Claims arising from or relating to Tort Claims, and any Settling Insurer Entity Policies; and

(2) Consents to the sale of such Catholic Entity's interests, if any, in the Diocese Settling Insurer Entity Policies in accordance with the Diocese Insurance Settlement Agreements and to the contribution of the proceeds from such sales and settlements to the Trust, as provided in the Plan.

**(c)** In consideration of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Other Insured Entities:

(1) Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities in connection with the Settling Insurer Entity Policies with respect to any and all Related Insurance Claims, and any contribution and indemnity Claims arising from or relating to Tort Claims; and

(2) Consents to the sale of such Other Insured Entity's Interests, if any, in the Diocesan Settling Insurer Entity Policies in accordance with the applicable Diocese Insurance Settlement Agreements and to the contribution of the proceeds from such sales and settlements to the Trust, as provided in the Plan.

**(d)** Nothing in Sections 7.8(a) through 7.8(c) shall be construed to bar either (a) a Claim based on Abuse against a Person who is not a Protected Party or a Settling Insurer Entity or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (a) under an insurance policy other than the Settling Insurer Entity Policies. The indemnifications under Section 7.7(a) through 7.7(c) shall be in addition to the indemnification provided by the Diocese and Diocesan Parishes under the terms of the Insurance Settlement Agreements.

**7.9    SUPPLEMENTAL SETTLING INSURER INJUNCTION**.

**(a)    Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurer Entities. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to the**

- 33 -

Insurance Settlement Agreements, including the Settling Insurers' purchases of insurance policies or Interests in insurance policies from the Diocese, Other Insured Entities, and Catholic Entities pursuant to Section 363(f) of the Bankruptcy Code:

(b)      With the exception of the rights against the Reorganized Debtor retained by the holders of the Unknown Tort Claims, any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, perpetrators, other insurers, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Protected Parties, the Settling Insurer Entities, or any other Person covered or allegedly covered under the Settling Insurer Entity Policies, which directly or indirectly arise from, relate to, or are in connection with any Tort Claims that are covered or alleged to be covered under the Settling Insurer Entity Policies, or any Related Insurance Claims related to such Tort Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurer Entities, the Settling Insurer Entity Policies, or Protected Parties to the extent such Interests arise from the same injury or damages asserted in connection with a Tort Claim including:

(1)      Commencing or continuing in any manner any action or other proceeding against the Settling Insurer Entities or the Protected Parties or the property of the Settling Insurer Entities or Protected Parties;

(2)      Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Settling Insurer Entities or Protected Parties or the property of the Settling Insurer Entities or Protected Parties;

(3)      Creating, perfecting, or enforcing any lien of any kind against the Settling Insurer Entities or Protected Parties or the property of the Settling Insurer Entities or Protected Parties;

(4)      Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurer Entities or Protected Parties or the property of the Settling Insurer Entities or Protected Parties; and

(5)      Taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

(c)      All Claims described in this Section 7.9, except for the rights of holders of Class 4 Claims, Class 5 Claims, and Class 6B Claims against the Reorganized Debtor, shall be channeled to the Trust. This injunction shall not apply to any reinsurance Claim.

CORE/3008165.0002/154242261.1

**7.10    PERMANENT INJUNCTION AGAINST PROSECUTION OF RELEASED AND CHANNELED CLAIMS**. **Except as otherwise expressly provided in this Plan, for the consideration described in the Insurance Settlement Agreements, all Persons who have held, hold, or may hold Channeled Claims or Claims against the Diocese Parties, the Protected Parties, or the Settling Insurance Entities, whether known or unknown, will be permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner, any action or any other proceeding of any kind, including, but not limited to, any Tort Claim or any Unknown Tort Claim against the Settling Insurance Entities or the property of the Settling Insurance Entities with respect to any Claim or Channeled Claim; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Settling Insurance Entities or the property of the Settling Insurance Entities, with respect to any Claim or Channeled Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Settling Insurance Entities or the property of the Settling Insurance Entities with respect to any Claim or Channeled Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Settling Insurance Entities with respect to any Claim or Channeled Claim; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of this Plan or any documents relating to the Plan, including, the Trust Agreement. The foregoing injunctive provisions are an integral part of this Plan and are essential to its implementation**.

**7.11    INSURANCE INJUNCTIONS**. All injunctions and/or stays provided for in the Plan, the injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer Entity that has purchased its policies of insurance or certificates of insurance, free and clear of all liens, Claims, and Interests pursuant to Sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified. The injunctions and releases contained in the Plan shall control notwithstanding any other provision in the Plan or in any Insurance Settlement Agreement.

**7.12    DEBTOR WAIVER AND RELEASE OF CLAIMS**. In consideration of any payments to be made by the Diocesan Settling Insurers and other consideration provided by each Diocesan Settling Insurer, upon payment by the Diocesan Settling Insurers of their respective settlement amounts under the corresponding Diocese Insurance Settlement Agreements, the Diocese Parties irrevocably and unconditionally, without limitation, release, acquit, forever discharge, and waive any Interests they have or might have now or in the future (a) under the Settling Insurer Entity Policies to the extent those Settling Insurer Entity Policies are bought back under any Insurance Settlement Agreement and this Plan; (b) against the Settling Insurer Entities with respect to any Tort Claim; and (c) against the Catholic Entities and Other Insured Entities with respect to any Channeled Claim.

**7.13    PROTECTED PARTY INJUNCTION DEFENSE COSTS**. Subject to Section 7.7(b):

      **(a)**    The Trust will indemnify any Protected Party and Settling Insurer Entity for all reasonable attorneys' fees and costs incurred by such Protected Party or Settling Insurer Entity in upholding, defending, or enforcing the protection of the Channeling Injunction

and Supplemental Settling Insurer Injunction, except as to Covered Non-Tort Claims and the Unknown Tort Claims.

**(b)** The Reorganized Debtor will indemnify any Protected Party and Settling Insurer Entity for all reasonable attorneys' fees and costs incurred by such Protected Party or Settling Insurer Entity in upholding, defending, or enforcing the protection of the Channeling Injunction and Supplemental Settling Insurer Injunction as to Tort Claims.

## ARTICLE VIII
## ESTIMATIONS/ASSESSMENTS

**8.1 ESTIMATIONS/ASSESSMENTS ARE NOT BINDING**. Estimations of Class 3 Claims for purposes of voting, and the determination of qualification, assignment of points, and payment of distributions of Tort Claims under the Trust Distribution Plan:

**(a)** shall not (i) constitute an admission of liability by any Person with respect to such Claims; (ii) have any res judicata or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Claims; (iv) be used by any third-party as a defense to any alleged joint liability; or (v) otherwise prejudice any rights of the Trust, Protected Parties, Settling Insurer Entities, and Tort Claimants in all other contexts or forums;

**(b)** shall not be deemed to constitute a determination of liability of any Person; and

**(c)** The rights of the parties under any Diocese Insurance Settlement Agreements shall be determined exclusively under the applicable Diocese Insurance Settlement Agreements and those provisions of the applicable Approval Order approving such Diocese Insurance Settlement Agreements, and the Confirmation Order.

## ARTICLE IX
## INSURANCE POLICIES

**9.1 CONTINUATION OF INSURANCE POLICIES**. Except to the extent any Diocese Entity Insurance Policies are bought back as set forth in and pursuant to any Insurance Settlement Agreements or as otherwise provided by the terms of the Plan, all Diocese Entity Insurance Policies shall, as applicable, either be deemed assumed by the Reorganized Debtor pursuant to Sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code, to the extent such Diocese Entity Insurance Policy is or was an executory contract of the Diocese, or continued in accordance with its terms pursuant to Section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese, such that each of the parties' contractual, legal, and equitable rights under each such Diocese Entity Insurance Policy shall remain unaltered. All such Diocese Entity Insurance Policies are listed on Exhibit I. To the extent that any or all such Diocese Entity Insurance Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Diocese Entity Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to §§ 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in

- 36 -

the best interest of the Debtor, the Estate, and all parties in interest in this Chapter 11 case. Unless otherwise determined by the Bankruptcy Court pursuant to an order which becomes a Non-Appealable Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Diocese Entity Insurance Policy. The Diocese reserves the right to seek rejection of any Diocese Entity Insurance Policy or other available relief prior to the Effective Date.

## ARTICLE X
## PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION

**10.1    RESERVATION OF RIGHTS TO OBJECT TO NON-TORT CLAIMS**. Unless a Claim is expressly described as an allowed Claim pursuant to or under the Plan, or otherwise becomes an allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor or the Trustee, as applicable, shall be deemed to have a reservation of any and all rights, Interests, and objections of the Diocese, the UCC, or the Estate to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured, or unsecured, including any and all rights, Interests and objections to the validity or amount of any and all alleged Claims, Liens, and Interests, whether under the Bankruptcy Code, other applicable law, or contract. The failure to object to any Claim in this Chapter 11 case shall be without prejudice to the Reorganized Debtor's or the Trustee's, as applicable, right to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

**10.2    OBJECTIONS TO NON-TORT CLAIMS**. Prior to the Effective Date, the Diocese shall have the authority to pursue any objection to the allowance of any non-Tort Claim. From and after the Effective Date, the Reorganized Debtor or the Trustee, as applicable, will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to non-Tort Claims (including those Claims that are subject to objection by the Diocese as of the Effective Date); provided, however, that nothing in this Section shall affect the right of any party-in-interest (including the Reorganized Debtor and the Trustee) to object to any non-Tort Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Further, nothing in this Section shall prohibit the Trustee from objecting to or establishing procedures for the allowance or treatment of non-Tort Claims. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections by the Reorganized Debtor or the Trustee to non-Tort Claims will be filed and served not later than thirty (30) days after the later of: (i) the Effective Date, or (ii) the date such Claim is filed. Such deadline or any Bankruptcy Court approved extension thereof, may be extended upon request by the Reorganized Debtor or the Trustee by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Reorganized Debtor's or the Trustee's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

**10.3    DETERMINATION OF CLAIMS**. From and after the Effective Date, any Claim that is not a Tort Claim, and as to which a Proof of Claim or motion or request for payment was timely filed in this Chapter 11 case, or deemed timely filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or

- 37 -

seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Diocese, the Reorganized Debtor, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, Interests, or Causes of Action that the Debtor, the Reorganized Debtor or the Trust may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157.

**10.4   NO DISTRIBUTIONS PENDING ALLOWANCE**. No payments or distributions will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by an order which has become a Non-Appealable Order, and the Disputed Claim has become an allowed Claim.

**10.5   CLAIM ESTIMATION**. To effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 case, with respect to Disputed Claims, the Diocese (if prior to the Effective Date) and the Reorganized Debtor or the Trustee (on and after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to Section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan.

## ARTICLE XI
## DISTRIBUTIONS UNDER THE PLAN

**11.1   PAYMENT DATE**. Whenever any payment or distribution to be made under the Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

**11.2   UNDELIVERABLE DISTRIBUTIONS**. If payment or distribution to the holder of an allowed non-Tort Claim under the Plan is returned for lack of a current address for the holder or otherwise, the Reorganized Debtor or the Trustee, as applicable, shall file with the Bankruptcy Court the name, if known, and last known address of the holder and the reason for its inability to make payment. All allowed Claims paid as provided in this Section shall be deemed addressed to the same extent as if payment or distribution had been made to the holder of the allowed Claim with no recourse to the Reorganized Debtor or the Trustee, as applicable, or property of the

Reorganized Debtor or the Trustee. If, after the passage of six (6) months, the payment or distribution still cannot be made, the Reorganized Debtor or the Trustee, as applicable, shall make the payment to the Trust. All allowed Claims paid as provided in this Section shall be deemed satisfied and released, with no recourse to the Reorganized Debtor or the Trustee, as applicable, or property of the Reorganized Debtor or the Trustee, as applicable, upon payment to the Trust, to the same extent as if payment or distribution has been made to the holder of the allowed Claim.

**11.3    SETOFFS**. The Reorganized Debtor or the Trustee, as applicable, may, to the extent permitted under applicable law, set off against any allowed Claim and the distributions to be made pursuant to the Plan on account of such allowed Claim, the Claims, rights and Causes of Action of any nature that the Reorganized Debtor or the Trustee, as applicable, may hold against the holder of such allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or the Trustee, as applicable, of any such Claims, rights, and Causes of Action that the Reorganized Debtor or the Trustee, as applicable, possesses against such holder.

**11.4    NO INTEREST ON CLAIMS**. Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between a claimant and the Diocese, the Reorganized Debtor, or the Trust, and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and claimant shall not be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order, or Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an allowed Claim.

**11.5    WITHHOLDING TAXES**. The Reorganized Debtor and the Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Reorganized Debtor and the Trust may require that the holder of an allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**ARTICLE XII**
**EFFECTIVENESS OF THE PLAN**

**12.1    CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE**. The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

**(a)    Entry of Confirmation Order**. The Confirmation Order has become a Non-Appealable Order;

**(b)    Plan Documents.** All Schedules and Exhibits to the Plan shall have been duly completed by the Plan Proponents and filed with the Court and all agreements and

CORE/3008165.0002/154242261.1

releases referred to in the Plan shall have been duly executed by all parties thereto and filed with the Court, in each case in form and substance satisfactory to the Debtor, the Committee, and the Settling Insurers.

    **(c)**    **The Trust**. The Trust shall have been formed; and

    **(d)**    **Debtor Payment**. The payments discussed in Subsections 5.1(b)(2)(i) and (iii) shall have been received by the Trust.

**12.2**    **NOTICE OF EFFECTIVE DATE**. The Plan Proponents shall file a Notice of Effective Date with the Bankruptcy Court within three (3) days after the occurrence of the Effective Date. Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

**12.3**    **EFFECT OF NON-OCCURRENCE OF CONDITIONS**. If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the disclosure statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties or the Settling Insurer Entities; (ii) prejudice in any manner the rights of the Protected Parties, the Trust or the Settling Insurer Entities; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or the Settling Insurer Entities in any respect, including but not limited to, in any proceeding or case against the Debtor; or (iv) be admissible in any action, proceeding or case against the Protected Parties or Settling Insurer Entities in any court or other forum.

<strong>ARTICLE XIII<br>EFFECTS OF CONFIRMATION</strong>

**13.1**    **DISSOLUTION OF UCC**. On the Effective Date, the UCC shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in this Chapter 11 case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediator, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Claims.

**13.2**    **DISCHARGE AND INJUNCTION**. Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Diocese shall be discharged from any and all Claims that arose prior to the Effective Date, including all Tort Claims and Related Insurance Claims, and including interest, if any, on any of the foregoing, regardless of whether it is alleged to have accrued before or after the Petition Date (each a "Discharged Claim"). For the avoidance of doubt, Discharged Claim includes any disallowed Claim. All Persons who have held or asserted, hold or assert, or may in the future hold or assert a Discharged Claim shall be permanently stayed, enjoined, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Discharged Claim, including: (i) commencing or continuing in any manner,

any action or any other proceeding of any kind with respect to any Discharged Claim against the Diocese, the Reorganized Debtor, or property of the Reorganized Debtor; (ii) seeking the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Diocese, the Reorganized Debtor, or property of the Reorganized Debtor, with respect to any Discharged Claim; (iii) creating, perfecting, or enforcing any encumbrance or lien of any kind against the Diocese, the Reorganized Debtor, or property of the Reorganized Debtor with respect to any Discharged Claim; (iv) asserting any setoff right of contribution, indemnity, subrogation, or recoupment of any kind against any obligation due to the Reorganized Debtor with respect to any Discharged Claim; and (v) taking any action, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan. In the event any Person takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this injunction, the Plan or confirmation order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Person is asserted will automatically be transferred to the Bankruptcy Court or the District Court for enforcement of the Plan. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing. For the avoidance of doubt, nothing in this Section 13.2 relieves the Reorganized Debtor of its obligations to Class 4 claimants contained in Section 4.4 (which obligations are post-petition obligations and obligations of the Reorganized Debtor under the terms of this Plan) until the later of (i) thirty days after the Reorganized Debtor provides written notice to the Trustee that the Unknown Tort Claim Reserve Fund has been exhausted or (ii) the occurrence of the sixth (6th) anniversary of the Effective Date.

**13.3 CHANNELING INJUNCTION. Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties and Settling Insurer Entities.**

**(a)    In consideration of the undertakings of the Protected Parties and Settling Insurer Entities under the Plan, their contributions to the Trust, and other consideration, and pursuant to their respective settlements with the Debtor and to further preserve and promote the agreements between and among the Protected Parties and any Settling Insurer Entities, and pursuant to Section 105 of the Bankruptcy Code:**

**(1)    any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims; and**

**(2)    all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurer Entities, including:**

- 41 -

     **(i)**     **commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or Settling Insurer Entities or against the property of any of the Protected Parties or Settling Insurer Entities;**

     **(ii)**     **enforcing, attaching, collecting or recovering, by any manner or means, from any of the Protected Parties or Settling Insurer Entities, or the property of any of the Protected Parties or Settling Insurer Entities, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties, Settling Insurer Entities;**

     **(iii)**     **creating, perfecting or enforcing any lien of any kind relating to any Channeled Claim against any of the Protected Parties or the Settling Insurer Entities, or the property of the Protected Parties or the Settling Insurer Entities;**

     **(iv)**     **asserting, implementing or effectuating any Channeled Claim of any kind against:**

     **1.**     **any obligation due any of the Protected Parties or Settling Insurer Entities;**

     **2.**     **any of the Protected Parties or Settling Insurer Entities; or**

     **3.**     **the property of any of the Protected Parties or Settling Insurer Entities.**

     **(v)**     **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan; and**

     **(vi)**     **asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any of the Protected Parties, the Settling Insurer Entities, or the property of the Settling Insurer Entities.**

**The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation.  It is intended that the channeling of the Channeled Claims as provided in this Section 13.3 shall inure to the benefit of the Protected Parties and Settling Insurer Entities. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.**

CORE/3008165.0002/154242261.1

**13.4   EXCULPATION; LIMITATION OF LIABILITY. From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any Claim, Cause of Action or liability to any other Exculpated Party, to any holder of a Claim, or to any other party in interest, for any act or omission that occurred during and in connection with this Chapter 11 case or in connection with the preparation and Filing of this Chapter 11 case, the formulation, negotiation, or pursuit of confirmation of the Plan, the consummation of the Plan, and the administration of the Plan or the property to be distributed under the Plan, except for Claims, Causes of Action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Non-Appealable Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the Committee and the Diocese and their respective officers, board and committee members, employees, attorneys, financial advisors, and other Professionals shall be entitled to and granted the benefits of Section 1125(e) of the Bankruptcy Code and the Channeling Injunction.**

**13.5   TIMING**. The injunctions, releases, and discharges to which any Settling Insurer Entity is entitled pursuant to such Insurance Settlement Agreement, the Plan, the Confirmation Order, the Approval Orders, and the Bankruptcy Code shall only become effective when the Trust receives payment in full from the corresponding Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and the other provisions set forth in Section 12.1 are fully met.

**13.6   NO BAR ON CERTAIN CLAIMS**. Notwithstanding the foregoing, nothing in this Article XIII shall be construed to bar either (a) a Claim based on Abuse against a Person who is not a Protected Party or a Settling Insurer Entity or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing clause (a) under an insurance policy other than the Settling Insurer Entity Policies.

## ARTICLE XIV
## INCORPORATION OF CHILD PROTECTION PROTOCOLS

**14.1   CHILD PROTECTION PROTOCOLS**. The Child Protection Protocols are incorporated into the Plan.

## ARTICLE XV
## THE REORGANIZED DEBTOR

**15.1   CONTINUED CORPORATE EXISTENCE**. The Diocese will, as the Reorganized Debtor, continue to exist after the Effective Date as a separate entity in accordance with Minn. Stat. Section 315.16 having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

CORE/3008165.0002/154242261.1

**15.2    VESTING OF ASSETS**. In accordance with Sections 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Reorganization Assets shall vest in the Reorganized Debtor (or such other entity or entities specified by the Debtor in a Supplemental Plan Document, and subject to approval by the Bankruptcy Court at the confirmation hearing) on the Effective Date free and clear of all liens, Claims, and Interests of creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire, and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**15.3    IDENTITY OF OFFICERS OF REORGANIZED DEBTOR**. In accordance with § 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the corporate Members of the Reorganized Debtor and the persons proposed to serve as directors and officers of the Reorganized Debtor on and after the Effective Date are set forth on Exhibit J.

**15.4    FURTHER AUTHORIZATION**. The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, rulings, and other assistance as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

**ARTICLE XVI**
**MISCELLANEOUS PROVISIONS**

**16.1    RETENTION OF JURISDICTION**.

**(a)**    By the Bankruptcy Court. Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Sections 1334 and 157, on and after the Effective Date, the Bankruptcy Court shall retain: (i) original and exclusive jurisdiction over this Chapter 11 case, (ii) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in this Chapter 11 case, and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to this Chapter 11 case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

(1)    over disputes concerning the ownership of Claims;

(2)    over disputes concerning the distribution or retention of assets under the Plan;

(3)    over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

CORE/3008165.0002/154242261.1

(4)    over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or Trust, or property abandoned or transferred by the Diocese, the Estate, or the Trust;

(5)    over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee;

(6)    over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets;

(7)    the removal of the Trustee and the appointment of a successor Trustee;

(8)    over matters relating to the subordination of Claims;

(9)    to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(10)    to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

(11)    to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to this Plan and any Diocesan Insurance Settlement Agreement;

(12)    over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

(13)    over requests for allowance of payment of Claims entitled to priority under Sections 507(a)(2) and 503(b)(9) of the Bankruptcy Code and any objections thereto;

(14)    over all Fee Applications;

(15)    over matters concerning state, local, or federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(16)    over conflicts and disputes among the Trust, the Reorganized Debtor, and holders of Claims, including holders of Class 3 or Class 4 Claims;

(17)    over disputes concerning the existence, nature, or scope of the Diocese's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit

CORE/3008165.0002/154242261.1

program, regardless of whether such termination occurred prior to or after the Effective Date;

(18)    to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Reorganized Debtor or its property, the Estate or its property, the Trust or its property, Trustee, the Professionals, or the Confirmation Order;

(19)    to enter a Final Decree closing the Chapter 11 case;

(20)    to enforce all orders previously entered by the Bankruptcy Court; and

(21)    over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to this Chapter 11 case or the Plan.

**(b)**    By the District Court. Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Section 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to this Chapter 11 case.

**(c)**    Actions to Collect Amounts Owed Pursuant to the Plan. Notwithstanding anything to the contrary in this Section, the Diocese, the Reorganized Debtor and the Trustee may, but are not required to, commence an adversary proceeding to collect amounts owed pursuant to the Plan for any settlements embodied in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with this Plan. Any such action may be commenced by filing a motion in aid of confirmation with the Bankruptcy Court.

**(d)**    Case Closure. The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing this Chapter 11 case. In an action involving the Trust, any costs incurred in reopening the Chapter 11 case, including any statutory fees will be paid by the Trustee from the Trust Assets in accordance with an order of the Bankruptcy Court.

**16.2    ASSUMPTION OF EXECUTORY CONTRACTS**. On the Effective Date, except for any executory contract: (i) that was previously rejected by an order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; or (ii) that is subject to a pending motion to reject before the Bankruptcy Court, and except as otherwise provided in the Plan, Confirmation Order, or Insurance Settlement Agreements, each executory contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be assumed pursuant to Sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Any cure payment shall be promptly paid by the Reorganized Debtor.

- 46 -

**16.3    INDEMNIFICATION OF MEMBERS, MANAGERS, OFFICERS, AND EMPLOYEES**. The obligation of the Diocese to indemnify any individual serving at any time on or prior to the Effective Date, as one of its officers, employees, council members, or volunteers by reason of such individual's service in such capacity, to the extent provided in any of the Diocese's constituent documents or by a written agreement with the Debtor or under the laws of the State of Minnesota pertaining to the Diocese, will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor, pursuant to the Plan and Bankruptcy Code Section 365 as of the Effective Date. Notwithstanding the foregoing, under no circumstances will the Diocese, the Trust, or the Reorganized Debtor assume or be responsible for any alleged indemnification of any Person against whom the Diocese has determined or may, in the future, determine, that there are credible allegations of Abuse asserted against such Person or such Person has or may have engaged in some other conduct that would excuse the Reorganized Debtor from providing any indemnification to such Person.

**16.4    LEASE CLAIM INDEMNITY**. The Reorganized Debtor will fully indemnify the Debtor's estate, and any successor to the Debtor's estate, including but not limited to any trust formed for the benefit of creditors, from and for any Claim(s) arising out of the breach of the Lease asserted after confirmation, regardless of whether such Claim(s) arise(s) before or after the confirmation of a plan by the Debtor.

**16.5    DEFENSE AND INDEMNITY FOR COVERED NON-TORT CLAIMS**. After the Effective Date, the Reorganized Debtor will defend and indemnify any Catholic Entity or Other Insured Entity with respect to any Covered Non-Tort Claim and will defend and indemnify the Settling Insurer Entities with respect to all Channeled Claims that are not Tort Claims, Related Insurance Claims, or Medicare Claims. As to any Claim against the Trust that qualifies as a Covered Non-Tort Claim, the Reorganized Debtor will also undertake on behalf of the Trust the enforcement of the injunctions set forth in Articles VII and XIII, will defend the Covered Non-Tort Claim, and, if judgment is entered on such Claim, will indemnify the Trust for any liability for such Claim. The Reorganized Debtor may not seek insurance coverage for the Claims defended or indemnified under this Section from the Settling Insurer Entities under any Settling Insurer Entity Policy. Nothing in this provision or any other Plan provision is intended to suggest that any Person is entitled to obtain a judgment on a Covered Non-Tort Claim or other Channeled Claim, that such judgment would be covered under any Settling Insurer Entity Policy, or that any Person is entitled to seek coverage for such judgment against any Protected Party or Settling Insurer Entity in violation of the Discharge, Channeling Injunction, or Supplemental Settling Insurer Injunction. For the avoidance of doubt, nothing contained in this Section or the Plan is intended to provide, expand, modify or add coverage for the Diocese or any other Protected Party under any Diocesan Insurance Policy to cover the Diocese's indemnification of any Covered Non-Tort Claims.

**16.6    RESERVATION OF RIGHTS**. In accordance with the provisions of this Plan, the Diocese reserves the right to sell property of the Estate or compromise Causes of Action on behalf of the Estate at any time prior to the Effective Date, subject to Bankruptcy Court approval. Notice of any such sale or compromise sought as part of the Plan shall be filed as a Supplemental Plan Document, and approval of such sale or settlement shall be considered at the confirmation hearing or as soon thereafter as is practicable.

- 47 -

**16.7   NON-APPEALABLE ORDER**. Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Non-Appealable Order may be jointly waived by the Plan Proponents upon written notice to the Bankruptcy Court provided that Plan Proponents first obtain the consent of all Diocesan Settling Insurers.

**16.8   AMENDMENTS AND MODIFICATIONS**. The Plan Proponents may jointly modify the Plan at any time prior to the confirmation hearing in accordance with Section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may jointly modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding any provision of this Plan to the contrary, the provisions of Article VII and Sections 13.2 through 13.4 are intended to be an integrated set of provisions that implement and supplement the Insurance Settlement Agreements that may not be severed, waived, amended, deleted, or otherwise modified without the prior written approval of all of the Settling Insurers affected by such severance, waiver, amendment, deletion, or modification.

**16.9   U.S. TRUSTEE REPORTS**. From the Effective Date until the case is closed, the Reorganized Debtor shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee, quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines. The Reorganized Debtor will not be required to file monthly operating reports or provide copies of bank account statements.

**16.10   NO WAIVER**. The failure of the Diocese to object to any Claim for purposes of voting shall not be deemed a waiver of the Diocese's, the Reorganized Debtor's, or the Trustee's right to object to such Claim, in whole or in part.

**16.11   TAX EXEMPTION**. Pursuant to Section 1146 of the Bankruptcy Code, the delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including any such acts by the Diocese (if prior to the Effective Date), and the Reorganized Debtor (if on or after the Effective Date), including any subsequent transfers of property by the Reorganized Debtor, and shall not be taxed under any law imposing a stamp tax, transfer tax, state deed tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp, tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

**16.12   NON-SEVERABILITY**. Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents.

**16.13   REVOCATION**. The Plan Proponents reserve the right to revoke and withdraw the Plan prior to the Confirmation Date.

**16.14   CONTROLLING DOCUMENTS**. In the event and to the extent that any provision of the Plan or Trust Agreement is inconsistent with any provision of the disclosure

statement, the provisions of the Plan or Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Agreement (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of this Plan, this Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

**16.15   GOVERNING LAW**. Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), and unless specifically stated, the rights, duties, and obligations arising under the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflicts of law principles.

**16.16   NOTICES**. Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by: (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Diocese or the Reorganized Debtor:

> Father James Bissonette
> Vicar General
> Diocese of Duluth
> 2830 E. Fourth Street
> Duluth, MN  55812
> Telephone No.: 218-724-9111
> Facsimile No.:  218-724-1056

with a copy to:

> Phillip Kunkel
> Gray Plant Mooty
> 1010 West Street Germain
> Suite 600
> St Cloud, MN 56301
> 320-252-4414
> Fax : 320-252-4482

If to the Trust or the Trustee:

> DW Harrow & Assoc., LLC
> 1880 State Highway 309
> Kerens, Texas 75144

**16.17   FILING OF ADDITIONAL DOCUMENTS**. At any time before substantial consummation, the Diocese, the Trust, or the Reorganized Debtor, as appropriate, may file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be

- 49 -

necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

**16.18   POWERS OF OFFICERS**. The officers of the Diocese or the Reorganized Debtor, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**16.19   DIRECTION TO A PARTY**. On and after the Effective Date, the Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**16.20   SUCCESSORS AND ASSIGNS**. The Plan shall be binding upon and inure to the benefit of the Diocese and its successors and assigns, including the Reorganized Debtor. The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator successor, or assign of such entity.

**16.21   CERTAIN ACTIONS**. By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Diocese under the Plan, including: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Diocese or organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Diocese.

**16.22   FINAL DECREE**. Once the Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Reorganized Debtor, Trustee or such other party as the Bankruptcy Court may designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 case.

**16.23   PLAN AS SETTLEMENT COMMUNICATION**. The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and Causes of Action that are Disputed as to validity or amount (including Tort Claims and the Insurance Litigation), except as otherwise provided above. Accordingly, the Plan, the disclosure statement, and any communications regarding the Plan or the disclosure statement are subject in all respects to Federal Rule of Evidence 408 and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Disputed Claim or Cause of Action. Nothing herein or in any Confirmed Plan is intended to constitute a compromise of Tort Claims.

**16.24   OTHER RIGHTS**. Except as expressly set forth in this Plan, nothing in the Plan shall preclude any Person from asserting in any proceeding, or against any award or judgment

- 50 -

entered in such proceeding, any and all rights that may be accorded under Minnesota law, or any other applicable statutory or common law, of contribution, indemnity, reduction, credit, or setoff, arising from the settlement and resolution of the Tort Claims.

## ARTICLE XVII
## BANKRUPTCY RULE 9019 REQUEST

Pursuant to Bankruptcy Rule 9019 and through the Plan, the Plan Proponents request approval of all compromises and settlements included in the Plan.

## ARTICLE XVIII
## CONFIRMATION REQUEST

The Plan Proponents request confirmation of the Plan under Section 1129 of the Bankruptcy Code with respect to any impaired class that does not accept the Plan or is deemed to reject the Plan.

CORE/3008165.0002/154242261.1

[Signature page for Plan of Reorganization]

THE DIOCESE OF DULUTH

_____

Most Rev. Paul D. Sirba, Bishop

GRAY PLANT MOOTY
Phillip Kunkel
1010 West Street Germain
Suite 600
St Cloud, MN 56301
320-252-4414
Fax : 320-252-4482
phillip.kunkel@gpmlaw.com

ELSAESSER ANDERSON CHTD
J. Ford Elsaesser
Bruce A. Anderson
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
208-667-2900
baafiling@eaidaho.com
ford@eaidaho.com

[Signature page for Plan of Reorganization]

THE DIOCESE OF DULUTH

_____

Most Rev. Paul D. Sirba, Bishop

_____
GRAY PLANT MOOTY
Phillip Kunkel
1010 West Street Germain
Suite 600
St Cloud, MN 56301
320-252-4414
Fax : 320-252-4482
phillip.kunkel@gpmlaw.com

_____
ELSAESSER ANDERSON CHTD
J. Ford Elsaesser
Bruce A. Anderson
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
208-667-2900
baafiling@eaidaho.com
ford@eaidaho.com

[Signature page for Plan of Reorganization]

Respectfully submitted,

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

William Weis
Its: Chairperson

and

*/e/ Robert T. Kugler*
**STINSON, LLP**
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Andrew J. Glasnovich (#398366)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
drew.glasnovich@stinson.com

Telephone: 612-335-1500
Facsimile: 612-335-1657

**Attorneys for the Official Committee of
Unsecured Creditors for the Diocese of Duluth**