# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

The Diocese of Duluth,

Debtor.

Case No. 15-50792 (RJK)
Chapter 11

### NOTICE OF HEARING AND MOTION FOR ORDER APPROVING AND AUTHORIZING THE DIOCESE OF DULUTH TO (I) ENTER INTO A NEW LEASE AND (II) INCUR SECURED DEBT

TO: All parties-in-interest specified in Local Rule 9013-3(a)(2).

1. The above-named debtor moves the court for the relief requested below and gives notice of a hearing.

2. The court will hold a hearing on this motion at **10:00 a.m. on Thursday, October 10, 2019**, before the Honorable Robert J. Kressel in Courtroom 8 West at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3. Pursuant to 9006-1(c), any response to this motion must be filed and served not later than **Friday, October 4, 2019**, which is five (5) days before the time set for the hearing (including Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rules 1070-1 and 1073-1. This is a core proceeding. The petition commencing the above-captioned Chapter 11 case was filed on December 7, 2015. The case is currently pending before this court.

5. The motion arises under §§ 363(b)(1) and 364(c) of the Bankruptcy Code. This motion is filed under Fed. R. Bankr. P. 4001 and 9014 and Local Rules 9013-1 to 9013-3.

## GENERAL BACKGROUND

6. On December 7, 2015 (the "Petition Date"), the Diocese filed a petition under chapter 11 of the Bankruptcy Code. The Diocese is authorized to operate its business and manage its properties as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

7. Additional information regarding the circumstances leading to the filing of this chapter 11 case and the Diocese's structure, history and activities are contained in the Affidavit of the Very Reverend Father James B. Bissonette [Doc. No. 8]. The facts set forth below are verified by Franz Hoefferle, Chief Financial Officer of the Diocese, as evidenced by the attached verification.

## BACKGROUND SPECIFIC TO MOTION

8. On August 16, 2019, the Diocese and the Committee filed an amended Joint Disclosure Statement for Chapter 11 Plan of Reorganization (the "**Joint Disclosure Statement**") [Doc. No. 392] and an amended Joint Chapter 11 Plan of Reorganization [Doc. No. 393]. On August 26, 2019, the Diocese and Committee filed a second amended Joint 11 Plan of Reorganization (the "**Joint Chapter 11 Plan**") [Doc. No. 398]. The Joint Disclosure Statement was approved by the court by an Order entered on August 27, 2019. [Doc. No. 400]. The applicable provisions regarding the Diocese's reorganization are set forth in detail in the Joint Disclosure Statement and Joint Chapter 11 Plan and are fully incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Joint Disclosure Statement or the Joint Chapter 11 Plan.

9. A key element of the restructuring contemplated by the proposed Joint Chapter 11 Plan is the requirement of the Diocese to establish and fund a Trust for the benefit of the Tort Claimants (the "**Trust**") shortly after the Confirmation Order becomes final. The Joint Chapter 11 Plan contemplates the Diocese will transfer $8,500,000.00 to the Trust within two business days after the Confirmation Order has become a Non-Appealable Order. Pending court approval, the Diocese anticipates that the Debtor Cash Contribution of $8,500,000.00 will be comprised, in part, by a substantial loan obtained by the Diocese. [Doc. No. 393 at 22].

10. Because the Joint Chapter 11 Plan contemplates funding of the Trust nearly immediately after the Confirmation Order becomes final, a need exists for the Diocese to obtain financing prior to the plan confirmation in order to adequately and timely fund the plan. In addition, approval of the financing prior to confirmation of the Joint Chapter 11 Plan will establish that the Diocese will be able to perform its obligations under the plan. Without such funds, the Diocese will not be able to pay the full Debtor Cash Contribution inasmuch as the Diocese currently does not have the unencumbered funds necessary to meet such requirement. Approval of the financing is, therefore, essential to a successful reorganization.

11. The Seminarian Endowment Fund of the Diocese of Duluth, a Minnesota diocesan religious corporation (the "**Seminarian Endowment Fund**") has indicated a willingness to provide a loan to the Diocese in the amount of $4,170,000.00 (the "**Loan**") contingent upon the confirmation of the Joint Chapter 11 Plan. The Loan is subject to the key terms and conditions set forth in further detail below and to reasonable commercial terms typical for such documents and transactions (the "**Seminarian Endowment Fund Transaction**").

I. **Approval of the Lease with Holy Rosary Cathedral, Duluth**

12. Under the terms of the Seminarian Endowment Fund Transaction, and subject to this court's approval, the Diocese will enter into a ground lease, as tenant, with Holy Rosary Cathedral, Duluth, a parish within the Diocese of Duluth ("**Holy Rosary**") for a leasehold interest in the underlying real property (the "**Lease**") located at 2830 East 4th Street, Duluth, Minnesota 55812. The Lease will commence upon execution by the parties and run for a term expiring on December 31, 2069. Under the terms of the Lease, the Premises will continue to be used by the Diocese as a pastoral center. The Diocese may make improvements and interior alterations to the Premises, subject to Holy Rosary's reasonable approval. Holy Rosary and the Diocese intend that the Lease will be not expose Holy Rosary to any claims for operating expenses, including insurance, repairs or maintenance during the lease term. Thus, the Diocese will pay a base rent of one (1) dollar and all liabilities, costs, expenses and obligations of any kind relating to the Premises which may arise or become due during the term of the Lease. Upon expiration of the initial lease term, the Diocese will have the exclusive option to purchase the Premises. These terms (as well as those specific terms not discussed herein) are financially favorable to the Diocese. Additionally, any default under the Lease will not impact the feasibility of the Joint Chapter 11 Plan.

II. **Authority to Enter into the Lease under § 363**

13. The court may authorize the Diocese to enter into the Lease pursuant to Section 363 of the Bankruptcy Code, which provides that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1); *see also* 11 U.S.C. § 1107(a) (providing that a debtor in possession has the same rights and powers as a trustee). A debtor's post-petition use of assets,

such as entry into a new lease, should be authorized pursuant to Section 363 of the Bankruptcy Code if a sound business justification exists for doing so. *See, e.g., In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *Inst'l Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.*, 780 F.2d 1223, 1225-26 (5th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval under Bankruptcy Code § 363 requires a showing that the proposed action is fair and equitable, in good faith and supported by a good business reason).

14. The Diocese believes that its decision to enter into the Lease with Holy Rosary represents a sound exercise of its business judgment. Prior to the Petition Date, the Diocese constructed a pastoral center on the real property located at 2830 East 4th Street, Duluth, Minnesota 55812. A major portion of the underlying real property was owned by Holy Rosary. The Diocese's decision to enter into a long-term lease for the underlying real property is based on the fact that entry into the Lease is necessary as a condition of the Seminarian Endowment Fund granting the Diocese a loan. The Diocese must enter into the Lease in order to provide the Seminarian Endowment Fund with a mortgage on the real property and the improvements located on the property. Therefore, without this Lease, the Seminarian Endowment Fund will not provide the Loan to the Diocese, leaving the Diocese unable to make the necessary contribution to the Trust. This Lease is, thus, essential to the Diocese's successful reorganization. Additionally, as stated above, the financial terms of the Lease are very favorable to the Diocese.

15. Lastly, by leasing the property, the Diocese will be able to continue to use the pastoral center (subject to the mortgage in favor of the Seminarian Endowment Fund). This ensures that the Diocese will not need to purchase or lease further real estate for this purpose or construct a new pastoral center. This is of benefit to the estate and the creditors.

16. For all the foregoing reasons, the court should determine that the Diocese's decision to enter into the Lease represents a reasonable exercise of the Diocese's business judgment.

### III. Approval of the Seminarian Endowment Fund Transaction

17. The Loan from the Seminarian Endowment Fund will be evidenced by a Promissory Note (the "**Note**"), which will bear interest at 4% per annum amortized with equal monthly installments of principal and interest until paid in full over a twenty (20) year term. The Note will be secured by a mortgage in the Diocese's leasehold interest in the real property. The Diocese will also grant a mortgage and security interest to the Seminarian Endowment Fund in: (a) the buildings, improvements and fixtures of every kind and nature located on the Property; and (b) all leases, rents, insurance claims and proceeds, and condemnation claims and proceeds related to the Property as collateral for the Loan.

18. When determining whether to allow post-petition financing under 11 U.S.C. § 364(c), bankruptcy courts consider a variety of factors, including:

    a. That the proposed financing is an exercise of sound and reasonable business judgment;

    b. That no alternative financing is available on any other basis;

    c. That the financing is in the best interests of the estate and its creditors;

    d. As a corollary to the foregoing three factors, that no better offers, bids, or timely proposals are before the court;

    e. That the credit transaction is necessary to preserve the assets of the estate;

    f. That the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender;

    g. That the financing is necessary, essential, and appropriate for the continued operation of the debtors' businesses and the preservation of the estates; and

    h. That the financing agreement was negotiated in good faith and at arm's length between the debtors, on the one hand, and the agents and the lenders on the other hand.

*In re Farmland Indus., Inc.*, 294 B.R. 855, 879-880 (Bankr. W.D. Mo. 2003). "Quite clearly, all of the enumerated factors are factors that should be considered by a bankruptcy court in determining whether an initial § 364 post-petition financing agreement should be approved." *Id*. at 880; *see also Bland v. Farmworker Creditors (In re Bland)*, 308 B.R. 109, 113-14 (Bankr. S.D. Ga. 2003) (citing *In re Farmland Indus., Inc.*, for the foregoing factor test).

    19. When considering the factors enumerated above, the motion should be approved. The proposed financing is a sound and reasonable exercise of the Diocese's business judgment, is in the best interest of the Diocese's estate and creditors, is necessary to preserve the estate's assets, and is necessary to the Diocese's proposed Joint Chapter 11 Plan. The Joint Chapter 11 Plan is based on two groups of settlements. One group of settlements is among the Diocese, the Diocese Parties, and the Settling Insurer Entities and amounts to $30,700,000.00. The other group of settlements is among the Diocese, the Diocese Parties, and the Committee and amounts to $8,500,000.00. All settlements together provide that the Tort Claimants will receive a total sum of $39,200,000.00. As mentioned above, the Diocese is expected to contribute $8,500,000.00 based upon an agreement with the Committee. Without the Seminarian Endowment Fund Transaction, the Diocese will not be able to make this contribution. Repayment of the Note by the Diocese is supported by the cash flow projections of the Diocese and will not affect the feasibility of the Joint Chapter 11 Plan.

    20. Additionally, the Joint Chapter 11 Plan contemplates broad-based financing from the entire Catholic community in Northeastern Minnesota. Every Catholic parish located in the Diocese of Duluth is making a voluntary contribution in some amount to the Diocese to ensure

proper funding of the plan. Several other Catholic entities affiliated with the Diocese are making similar voluntary contributions. Individual members of the clergy have contributed to the funding of the Joint Chapter 11 Plan.

21.     Lastly, the proposed transaction is fair, reasonable and the product of good faith negotiations between the Seminarian Endowment Fund, represented by independent counsel, and the Diocese.

22.     Pursuant to Local Rule 9013-2(a), this motion is verified and is accompanied by a memorandum of law, proposed order and proof of service.

23.     Pursuant to Local Rule 9013-2(c), the Diocese gives notice that it may, if necessary, call Father James B. Bissonette, the Vicar General of the Diocese, and Franz Hoefferle, the Chief Financial Officer of the Diocese, to testify regarding the facts set forth in this motion.

WHEREFORE, the Diocese respectfully requests that the court enter an order (i) approving the Seminarian Endowment Fund Transaction between the Diocese, the Holy Rosary Cathedral, Duluth and the Seminarian Endowment Fund; (ii) approving the Lease between the Diocese and Holy Rosary Cathedral, Duluth; and (iii) granting such other and further relief as the court deems just and equitable.

[Signature page to follow on next page]

Dated: September 17, 2019

**ELSAESSER ANDERSON**

*/e/ Bruce A. Anderson*
Bruce A. Anderson (admitted *pro hac vice*)
J. Ford Elsaesser (admitted *pro hac vice*)
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Phone: 208-263-8517
brucea@eaidaho.com
ford@eaidaho.com

-and-

**GRAY PLANT MOOTY MOOTY & BENNETT, P.A**.

*/e/ Lauren J. O'Neil Funseth*
Phillip L. Kunkel (#058981)
Lauren J. O'Neil Funseth (#0396644)
1010 West St. Germain
Suite 500
St. Cloud, MN 56301
Phone: 320-202-5335
phillip.kunkel@gpmlaw.com
Lauren.ONeilFunseth@gpmlaw.com

*Attorneys for the Diocese of Duluth*

GP:4838-7603-2678 v1

## VERIFICATION

I, Franz Hoefferle, am the Chief Financial Officer of the Diocese of Duluth. Based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Notice of Hearing and Motion for Order Approving and Authorizing the Diocese to (1) Enter into a New Lease; and (2) Incur Secured Debt, are true and correct, according to the best of my knowledge, information and belief.

Dated: September 17, 2019

_____
Franz Hoefferle
Chief Financial Officer, Diocese of Duluth

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

The Diocese of Duluth,

Debtor.

Case No. 15-50792 (RJK)
Chapter 11

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER APPROVING AND AUTHORIZING THE DIOCESE OF DULUTH TO (I) ENTER INTO A NEW LEASE AND (II) INCUR SECURED DEBT**

---

**INTRODUCTION**

The Diocese of Duluth (the "Diocese") respectfully submits this memorandum of law in support of its motion for an order approving and authorizing the Diocese to enter into a new lease and to incur secured debt.

**BACKGROUND**

The facts relevant to this memorandum are set forth in the motion. The applicable provisions regarding the Diocese's reorganization are set forth in detail in the Joint Disclosure Statement and Joint Chapter 11 Plan and are fully incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Joint Disclosure Statement and/or the Joint Chapter 11 Plan.

**DISCUSSION**

**I. The Court Should Authorize the Diocese to Enter into a Lease Pursuant to § 363.**

The Court may authorize the Diocese to enter into a Lease pursuant to Section 363 of the Bankruptcy Code, which provides that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. §

1

363(b)(1); *see also* 11 U.S.C. § 1107(a) (providing that a debtor in possession has the same rights and powers as a trustee). A debtor's post-petition use of assets, such as entry into a new lease, should be authorized pursuant to Section 363 if a sound business justification exists for doing so. *See, e.g., In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *Inst'l Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.*, 780 F.2d 1223, 1225-26 (5th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval under Bankruptcy Code § 363 requires a showing that the proposed action is fair and equitable, in good faith and supported by a good business reason). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

The Diocese has determined in its sound business judgment that entry into the Lease with Holy Rosary is appropriate and necessary and the terms of the agreement are fair and reasonable. The decision to enter into the long-term lease was not made arbitrarily. Prior to the Petition Date, the Diocese constructed a pastoral center on the real property located at 2830 East 4th Street, Duluth, Minnesota 55812. A major portion of the underlying real property was owned by Holy Rosary. The Diocese's decision to enter into a lease for the underlying real property is based on the fact that such lease is necessary to ensure sufficient funding of the Joint Chapter 11 Plan. The Diocese must enter into the Lease in order to provide the Seminarian Endowment Fund with a mortgage on the real property and the improvements located on the property. Without court approval of this Lease, the Seminarian Endowment Fund will not provide the Loan to the Diocese, leaving the Diocese unable to make the necessary contribution to the Trust or adequately fund the

Joint Chapter 11 Plan. As explained in the motion, the Loan is essential to the Debtor Cash Contribution of $8,500,000.00 and, without it, the Diocese will not be able to make the contribution or successfully reorganize.

Additionally, while the financial terms of the Lease are very favorable to the Diocese, they have no effect on the feasibility of the Joint Chapter 11 Plan. The feasibility of the Joint Chapter 11 Plan is measured by the Loan, not the lease terms. The Seminarian Endowment Fund will make the Loan to the Diocese upon execution of the Lease, thus allowing the Diocese to sufficiently fund the Trust in accordance with the timeline mandated by the Joint Chapter 11 Plan. The Lease is completely separate from the operations of the Diocese and, as such, a later default of the lease terms (if one were to occur) will not trip a default under the plan. For these reasons, entering into a long-term lease with Holy Rosary is an appropriate and sound exercise of judgment by the Diocese.

Lastly, by leasing the property, the Diocese will be able to continue to use the pastoral center located on the real property. This ensures that the Diocese will not need to purchase or lease further real estate for this purpose or construct a new pastoral center. This is of benefit to the estate and the creditors.

**II. The Court should allow the Diocese to Incur Secured Debt under 11 U.S.C. § 364(c).**

Section 364(c) of the Bankruptcy Code states:

> (c) if the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

>   (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364. When determining whether to allow post-petition financing under 11 U.S.C. § 364(c), bankruptcy courts consider a variety of factors, including:

>   a. That the proposed financing is an exercise of sound and reasonable business judgment;
>
>   b. That no alternative financing is available on any other basis;
>
>   c. That the financing is in the best interests of the estate and its creditors;
>
>   d. As a corollary to the foregoing three facts, that no better offers, bids, or timely proposals are before the court;
>
>   e. That the credit transaction is necessary to preserve the assets of the estate;
>
>   f. That the terms of the transactions are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender;
>
>   g. That the financing is necessary, essential, and appropriate for the continued operation of the debtors' businesses and the preservation of the estates; and
>
>   h. That the financing agreement was negotiated in good faith and at arm's length between the debtors, on the one hand, and the agents and the lenders on the other hand.

*In re Farmland Indus., Inc.*, 294 B.R. 855, 879-880 (Bankr. W.D. Mo. 2003). "Quite clearly, all of the enumerated factors are factors that should be considered by a bankruptcy court in determining whether an initial § 364 post-petition financing agreement should be approved." *Id.* at 880; *see also Bland v. Farmworker Creditors (In re Bland)*, 308 B.R. 109, 113-14 (Bankr. S.D. Ga. 2003) (citing *In re Farmland Indus., Inc.*, for the foregoing factor test).

When considering the factors enumerated above, the motion should be approved. The proposed financing is a sound and reasonable exercise of the Diocese's business judgment, is in the best interest of the Diocese's estate and creditors, is necessary to preserve the estate's assets,

and is necessary to the Diocese's proposed Joint Chapter 11 Plan. The Joint Chapter 11 Plan is based on two groups of settlements. One group of settlements is among the Diocese, the Diocese Parties, and the Settling Insurer Entities and amounts to $30,700,000.00. The other group of settlements is among the Diocese, the Diocese Parties, and the Committee and amounts to $8,500,000.00. All settlements together provide that the Tort Claimants will receive a grand total sum of $39,200,000.00. As mentioned above, the Diocese is expected to contribute $8,500,000.00 based upon an agreement with the Committee. As stated in the Joint Chapter 11 Plan, the Diocese's contribution is conditioned on receiving a substantial loan. Thus, without the Seminarian Endowment Fund Transaction, the Diocese will not be able to provide the necessary contribution. Given the time and costs that have gone into creating, negotiating, and drafting the Joint Chapter 11 Plan, lack of approval of this Loan would cause substantial hardship on all parties involved and impact their ability to develop a workable plan. Additionally, the proposed transaction is fair, reasonable and the product of good faith negotiations between the Seminarian Endowment Fund, represented by independent counsel, and the Diocese.

## CONCLUSION

For all of the foregoing reasons, the Diocese respectfully requests that the Court grant the motion and grant the Diocese such other and further relief as the Court may deem just and equitable.

[Signature page to follow on next page]

Dated: September 17, 2019

**ELSAESSER ANDERSON**

*/e/ Bruce A. Anderson*
Bruce A. Anderson (admitted *pro hac vice*)
J. Ford Elsaesser (admitted *pro hac vice*)
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Phone: 208-263-8517
brucea@eaidaho.com
ford@eaidaho.com

-and-

**GRAY PLANT MOOTY MOOTY & BENNETT, P.A**.

*/e/ Lauren J. O'Neil Funseth*
Phillip L. Kunkel (#058981)
Lauren J. O'Neil Funseth (#0396644)
1010 West St. Germain
Suite 500
St. Cloud, MN 56301
Phone: 320-202-5335
phillip.kunkel@gpmlaw.com
Lauren.ONeilFunseth@gpmlaw.com

*Attorneys for the Diocese of Duluth*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

The Diocese of Duluth,

    Debtor.

Case No. 15-50792 (RJK)
Chapter 11

---

**UNSWORN CERTIFICATE OF SERVICE**

---

I, Valene M. Perpich, certify that on September 17, 2019 the following documents:

- **NOTICE OF HEARING AND MOTION FOR ORDER APPROVING AND AUTHORIZING THE DIOCESE OF DULUTH TO (I) ENTER INTO A NEW LEASE AND (II) INCUR SECURED DEBT**

- **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER APPROVING AND AUTHORIZING THE DIOCESE OF DULUTH TO (I) ENTER INTO A NEW LEASE AND (II) INCUR SECURED DEBT**

- **PROPOSED ORDER**

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to all electronic filing users.

The following entities are not Filing Users, and I certify that a copy of the above-described pleadings were mailed by First Class Mail, postage prepaid, to each entity named below at the address stated below for each entity:

| | |
|---|---|
| IRS DISTRICT COUNSEL<br>380 JACKSON STREET, SUITE 650<br>SAINT PAUL, MN 55101 | INTERNAL REVENUE SERVICE<br>WELLS FARGO PLACE<br>30 7TH STREET, MAIL STOP 5700<br>SAINT PAUL, MN 55101 |
| MN DEPARTMENT OF REVENUE<br>COLLECTION ENFORCEMENT<br>551 BANKRUPTCY SECTION<br>600 NORTH ROBERT STREET<br>SAINT PAUL, MN 55101 | OFFICE OF THE U.S. ATTORNEY<br>DISTRICT OF MINNESOTA<br>600 U.S. COURTHOUSE<br>300 SOUTH FOURTH STREET<br>MINNEAPOLIS, MN 55415 |
| ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA<br>U.S. DEPARTMENT OF JUSTICE<br>950 PENNSYLVANIA AVENUE, NW<br>WASHINGTON, DC 20530-001 | HOLY ROSARY CATHEDRAL, DULUTH<br>2801 EAST 4TH STREET<br>DULUTH, MN 55812 |

Dated:  September 17, 2019

<u>Valene M. Perpich</u>
GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Diocese of Duluth,

Debtor.

Case No. 15-50792 (RJK)
Chapter 11

**ORDER**

This case came before the court on the motion of the Diocese of Duluth for an order approving and authorizing the Diocese of Duluth to enter into a lease and incur secured debt.

IT IS ORDERED:

1. The Diocese of Duluth's motion is granted.

2. The Diocese of Duluth is authorized to enter into the lease described in the motion and to perform thereunder.

3. The Diocese of Duluth is authorized to incur secured debt as described in the motion.

4. Notwithstanding Bankruptcy Rule 6004, this order is effective immediately.

Dated: _____

_____
Robert J. Kressel
United States Bankruptcy Judge